# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

      Plaintiff,

v.                                    No. CR 18-4176 JB

STERLING ISLANDS, INC.,
AL-ZUNI GLOBAL JEWELRY, INC.,
JAWAD "JOE" KHALAF,
NADER KHALAF,
NASHAT "NASH" KHALAF,
ZAHER MOSTAFA, and
TAHA "TOM" SHAWAR

      Defendants.

## DEFENDANTS' JOINT OPPOSED RULE 12(b) MOTION TO DISMISS COUNTS 2 AND 3, AND TO PARTIALLY DISMISS COUNT 1, OF THE INDICTMENT

## INTRODUCTION

Plaintiff United States of America seeks to impose criminal liability on Defendants for importing and selling certain Native American-style jewelry, arts and crafts "contrary to law" under 18 U.S.C. § 545. But Congress doesn't define in § 545 what constitutes a "law." And the United States didn't base its § 545 charges in the Indictment on violation of a statute enacted by Congress, but rather on a regulation promulgated by the Treasury Department. So that begs the question: may a regulation be a "law" for purposes of the "contrary to law" element under 18 U.S.C. § 545? And, if a regulation may suffice, does 19 C.F.R. § 134.43 constitute such a "law"?

At best, whether a regulation constitutes a "law" under §545 is ambiguous. In relation to 19 C.F.R. § 134.43, however, Congress was unambiguous that violation of failure to mark merchandise as § 134.43 requires subjects you to civil liability only, and not criminal liability.

Congress unambiguously imposes civil liability only for failure to mark imported merchandise in accordance with 19 U.S.C. § 1304, pursuant to which § 134.43 is promulgated. *See* 18 U.S.C. § 1304(i) & (j). And Congress unambiguously imposes criminal liability in § 1304, but only for concealing or removing a required mark on such merchandise. *See id.* § 1304(l). The United States alleges on that Defendants did the former and not the latter. There is not allegation that any Defendant concealed or removed a mark as the law requires before conduct would be subject to criminal penalties.

 The United States Supreme Court held that, in relation to criminal statutes, "[t]he rule of lenity requires ambiguous criminal laws to be interpreted in favor of the defendants subjected to them." *United States v. Santos*, 553 U.S. 507, 514 (2008). And this rule "applies not only to interpretations of the substantive ambit of criminal prohibitions, but also to the penalties they impose." *Bifulco v. United States*, 447 U.S. 381, 387 (1980). Under these circumstances, the Court properly should conclude that, under the rule of lenity, § 134.43 fails to qualify as "law" for purposes of 18 U.S.C. § 545.

Accordingly, the Indictment in Counts 2 and 3, and Count 1 to the extent that it is based on a conspiracy to violate § 545, fail "to state an offense" against Defendants. Fed. R. Crim. P. 12(b)(3)(B)(v). The Defendants, therefore, move the Court to dismiss entirely Counts 2 and 3, and dismiss Count 1 to the extent that it's premised on the violation of § 545.

## **BACKGROUND**

As alleged, Counts 2 and 3, and part of Count 1, of the Indictment [Doc. 2], fail to state an offense against Defendants, which failure requires those counts' dismissal. To illustrate this failure, Defendants set out the Indictment's allegations here. But Defendants contest adamantly the truth of, and criminal liability premised on, the allegations.

The Indictment alleges a conspiracy against Defendants that spans "[f]rom at least as early as 2009 to October 2015." Indictment ¶ 5. The Government alleges that Sterling Islands Inc. ("Sterling Islands"), imported and distributed "Native American-style jewelry, arts, and crafts," manufactured in the Philippines by "Fashion Accessories 4U" ("FA4U"), and received them "without permanent markings on the merchandise indicating their country of origin." *Id.* ¶¶ 6(a) & (d). The Government alleges that Al-Zuni Global Jewelry, Inc. ("Al-Zuni Global"), received and then distributed wholesale imported "Native American-style jewelry , arts, and crafts," manufactured by FA4U. *Id.* ¶ 6(b). The Government's allegations include that the method and means to violate the law included "[p]roviding wholesale customers with Native American-style jewelry, arts, and crafts with removable stickers indicating the items were made in the Philippines, but not indelible markings indicating their country of origin." *Id.* ¶ 6(f).

The Government alleges, as overt acts, instances in which Sterling Islands imported what the Government classifies as "Native American-style" or "Indian-style" jewelry without indelible markings, and two instances in which sellers of that jewelry allegedly misrepresented that it was made by American Indians. *See* Indictment ¶¶ 7-31.

The Government alleges that this conduct establishes a conspiracy to violate two criminal statutes: 18 U.S.C. § 545, and 18 U.S.C. § 1159. *See id.* ¶¶ 5, 32-35. Aside from the Conspiracy charged in Count 1, the Government alleges in Count 2 that Defendants Sterling Islands, Jawad Khalaf and Nader Khalaf violated 18 U.S.C. § 545 by willfully, fraudulently, and knowingly importing and bringing into the United States "Native American-style jewelry, arts, and crafts, contrary to law, in that the merchandise was not indelibly marked with the country of origin" by some permanent method, as the federal regulation 19 C.F.R. § 134.43 requires. *Id.* ¶ 32.

The Government alleges in Count 3 that Defendants Al-Zuni Global, Nashat Khalaf, and

Zaher Mostafa "did willfully, fraudulently, and knowingly receive, conceal, buy, sell, and

facilitate the transportation, concealment, and sale of merchandise imported contrary to law, that

is Native American-style jewelry, arts, and crafts, after importation thereof, the defendants then

knowing that said merchandise had been imported and brought into the United States contrary to

law, in that the merchandise was not indelibly marked with the country of origin" by some

permanent method, as the federal regulation 19 C.F.R. § 134.43 requires. *Id.* ¶ 33.

## RELEVANT LAW

## I.     LAW REGARDING RULE 12(b) OF THE FEDERAL RULES OF CRIMINAL PROCEDURE.

"The Federal Rules of Criminal Procedure permit defendants . . . to assert defects other

than evidentiary insufficiency before trial . . . ." *United States v. Olivas-Perea*, 297 F. Supp. 3d

1191, 1204 (D.N.M. 2017) (Browning, J.) (citing Fed. R. Crim. P. 12(b)). Rule 12(b) allows

parties to "raise by pretrial motion any defense, objection, or request that the court can determine

without a trial on the merits," including that the indictment "fail[s] to state an offense." Fed. R.

Crim. P. 12(b)(1) & (b)(3)(B)(5). Under Rule 12(b), "courts 'may entertain motions that require

it to answer only pure questions of law.'" *Olivas-Perea*, 197 F. Supp. 3d at 1204 (quoting *United

States v. Pope*, 613 F.3d 1255, 1260 (10th Cir. 2010) (Gorsuch, J.)).

## II.    LAW REGARDING THE RULE OF LENITY.

"The rule of lenity requires ambiguous criminal laws to be interpreted in favor of the

defendants subjected to them." *United States v. Santos*, 553 U.S. 507, 514 (2008) (citing cases).

*Cf. United States v. Tapia*, No. CR 12-3012 JB, Second Amended Memorandum Opinion and

Order, at 38 (D.N.M. Dec. 14, 2017) (Browning, J.) ("'The rule of lenity requires courts to

interpret ambiguous statutes . . . in favor of criminal defendants.'" (quoting *United States v. Gay*,

240 F.3d 1222, 1232 (10th Cir. 2001)). The United States Supreme Court explained that the rule of lenity "is founded on two policies that have long been part of our tradition." *United States v. Bass*, 404 U.S. 336, 348 (1971). "First, 'a fair warning should be given to the world in language that the common world will understand, of what the law intends to do if a certain line is passed. To make the warning fair, so far as possible the line should be clear.'" *Id.* (quoting *McBoyle v. United States*, 283 U.S. 25 (1931) (Holmes, J.)). The second policy on which the rule of lenity is founded is that, "because of the seriousness of criminal penalties, . . . legislatures and not courts should define criminal activity. This policy embodies 'the instinctive distastes against men languishing in prison unless the lawmaker has clearly said they should.'" *Id.* (citation omitted).

The rule of lenity "applies not only to interpretations of the substantive ambit of criminal prohibitions, but also to the penalties they impose." *Bifulco v. United States*, 447 U.S. 381, 387 (1980) (citing, as *e.g.* cites, *United States v. Batchelder*, 442 U.S. 114, 121 (1979); *Simpson v. United States*, 435 U.S. 6, 14-15 (1978)). "'This policy of lenity means that the Court will not interpret a federal criminal statute so as to increase the penalty that it places on an individual when such an interpretation can be based on no more than a guess as to what Congress intended.'" *Id.* (quoting *Whalen v. United States*, 445 U.S. 684, 695, n.10 (1980); citing *Simpson*, 435 U.S. at 15). Thus, when a statute is ambiguous, "the tie must go to the defendant." *Santos*, 553 U.S. at 514.

In the United States Supreme Court's decision in *Santos*, the defendant filed a collateral attack of his conviction, under 28 U.S.C. § 2255, for violation of the federal money-laundering statute, 18 U.S.C. § 1956, which, at the time, prohibited the use of "proceeds" of criminal activities for various purposes. *See* 553 U.S. at 509-10. The defendant pleaded guilty to the illegal use of proceeds to carry on a lottery which was illegal under state law. *See id.* at 509.

After the United States Court of Appeals for the Seventh Circuit held in *United States v. Scialabba*, 282 F.3d 475 (2002), that "proceeds" was limited to profits, and not gross receipts, the defendant filed his collateral attack, which the district court granted, vacating his conviction, and which the Court of Appeals upheld. *See id.* at 510.

The Supreme Court, after going through the canons of statutory construction, held that the definition of "proceeds" in the money-laundering statute is ambiguous as it relates to profits or receipts, and held that, given the rule of lenity, "proceeds" may refer to profits only. *Id.* at 514. The Supreme Court first noted that Congress did not define "proceeds" in the money-laundering statute. *See id.* at 511. Under principles of statutory construction, the Supreme Court looked to proceeds' "ordinary meaning," but recognized that proceeds' ordinary meaning may refer to either profits or receipts, as both meanings have long been accepted in ordinary usage. *Id.* The Court next recognized that "'[p]roceeds,' moreover, has not acquired a common meaning in the provisions of the Federal Criminal Code." *Id.* at 511-12.

Next, the Supreme Court looked to the money-laundering statute's context, reasoning that it "cannot say the money-laundering statute is truly ambiguous until we consider 'proceeds' not in isolation but as it is used in the federal money-laundering statute." *Santos*, 553 U.S. at 512. The Supreme Court held that the context of "proceeds" in the statute did not resolve the ambiguity, because substitution of profits or receipts for "proceeds" makes "sense under either definition." *Id.* Thus, the Supreme Court concluded that the statute was ambiguous, as, "[u]nder either of the word's ordinary definitions, all provisions of the federal money-laundering statute are coherent; no provisions are redundant; and the statute is not rendered utterly absurd." *Id.* at 513-14. Left with this situation in which, "[f]rom the face of the statute, there is no more reason to think that 'proceeds' means 'receipts' than there is to think that 'proceeds' means 'profits,'"

the Supreme Court held that there was a "tie" between the two possible meanings, and that, under the rule of lenity, "the tie must go to the defendant." *Id.* at 514.

Thus, the Supreme Court in *Santos* held that, "[b]ecause the 'profits' definition of 'proceeds' is always more defendant-friendly than the 'receipts' definition, the rule of lenity dictates that it should be adopted." *Id.* The Supreme Court noted that the conclusion "proceeds" must mean the more defendant-friendly of the two definitions is based on the "venerable rule" of lenity that "vindicates the fundamental principle that no citizen should be held accountable for a violation of a statute whose commands are uncertain, or subjected to punishment that is not clearly proscribed." *Id.* The Supreme Court recognized that its conclusion also finds support in that the rule of lenity "places the weight of inertia upon the party that can best induce Congress to speak more clearly and keeps courts from making criminal law in Congress's stead." *Id.*

## III.    LAW REGARDING 18 U.S.C. § 545.

Section 545 of Title 18 of the United States Code makes it a crime to, among other things, "fraudulently or knowingly import[] or bring into the United States, any merchandise contrary to law," or to receive, conceal, buy, sell, or in any manner facilitate "the transportation, concealment, or sale of such merchandise after importation, knowing the same to have been imported or brought into the United States contrary to law." Any violation of this statute subjects a defendant to up to 20 years imprisonment. *See id.*[1]

Section 545 doesn't define what it means to bring into the United States merchandise contrary to law. *See* 18 U.S.C. § 545. *Black's Law Dictionary* defines "law" both narrowly, as

---

[1] The other method to violate 18 U.S.C. § 545 is to "knowingly and willfully, with intent to defraud the United States, smuggles, or clandestinely introduces or attempts to smuggle or clandestinely introduce into the United States any merchandise which should have been invoiced, or makes out or passes, or attempts to pass, through the customhouse any false, forged, or fraudulent invoice, or other document or paper." The Government does not allege a violation based on this language, and, indeed, all the merchandise that the Government contends is "illegal" passed through customs, with all importation fees and duties fully paid.

"[a] statute <Congress passed a law>," and broadly, as "[t]he aggregate of legislation, judicial precedents, and accepted legal principles; the body of authoritative grounds of judicial and administrative action; esp., the body of rules, standards, and principles that the courts for a particular jurisdiction apply in deciding controversies brought before them <the law of the land>." *Black's Law Dictionary* 962 (9th Ed. 2009).

The United States Court of Appeals for the Eleventh Circuit recently held in *United States v. Izurieta*, 710 F.3d 1176, 1184 (11th Cir. 2013), that, given the ambiguity of the word "law" in § 545, "contrary to law" does not include regulations that provide for strictly civil penalties, and not criminal penalties. In *Izurieta*, the defendants were charged with seven crimes (six substantive crimes and a conspiracy charge) related to violation of 18 U.S.C. § 545 for failing to redeliver, export, and destroy certain food items under FDA supervision, as 19 C.F.R. § 141.113(c) required. *See* 710 F.3d at 1178. The Eleventh Circuit noted that, the § 545 unlawful smuggling charge "was based on violations of a Customs regulation," 19 C.F.R. § 141.113(c), and that "[f]ailure to comply with the regulation typically gives rise to a civil remedy of liquidated damages in the amount of three times the value of the goods." *Id.* at 1179 (citing 19 C.F.R. § 141.113(c)(3)). In analyzing whether violation of this regulation constitutes smuggling goods "contrary to law" under § 545, the Eleventh Circuit pointed out "there appears to be a circuit split," whether regulations constitute "law[s]" under § 545. *Id.* at 1179 (citing *United States v. Place*, 693 F.3d 219, 228-29 n.12 (1st Cir. 2012)).

Addressing this circuit split, the Eleventh Circuit first discussed the most recent case interpreting § 545's contrary to law provision: the Ninth Circuit Court of Appeals' 2008 decision in *United States v. Alghazouli*, 517 F.3d 1179 (9th Cir. 2008)). *See Izurieta*, 710 F.3d at 1180. The Eleventh Circuit noted that the Ninth Circuit in *Alghazouli* concluded that "regulations are

8

included within the definition of 'law' for purposes of . . . § 545 only 'if there is a statute ( a 'law') that specifies that violation of that regulation is a crime.'" *Id.* (quoting *Alghazouli*, 517 F.3d at 1187; citing *United States v. Lawson*, 377 F. App'x 712, 716 (9th Cir. 2010)). As the Eleventh Circuit explains in *Izurieta*, the Ninth Circuit reached its conclusion in *Alghazouli* by pointing out that Congress amended § 545 at the same time that it enacted 18 U.S.C. § 554, which prohibited certain conduct "contrary to law *or regulation*," (emphasis added), but Congress did not amend § 545's "contrary to law" only language, consciously rejecting the inclusion of the word "regulation." *Izurieta*, 710 F.3d at 1180 (citing *Alghazouli*, 514 F.3d at 1186-87). *Alghazouli* also relied on that, not only did Congress leave undisturbed § 545's "contrary to law" only language while simultaneously enacting § 554 with the "contrary to law or regulation" language, Congress left that language undisturbed in the face of two United States Supreme Court cases that held violation of a regulation does not constitute violation of law under Title 18 of the United States Code. *See id.* at 1180-81 (citing *Alghazouli*, 514 F.3d at 1184-86 (citing *United States v. Eaton*, 144 U.S. 677 (1892); *United States v. Grimaud*, 220 U.S. 506 (1911))).

The Eleventh Circuit then discussed the more distant-in-time Fourth Circuit Court of Appeals' 1994 decision addressing whether a regulation may constitute a "law" under § 545 in *United States v. Mitchell*, 39 F.3d 465 (4th Cir. 1994). *See Izurieta*, 710 F.3d at 1181. The Eleventh Circuit pointed out that *Mitchell,* relying on the Supreme Court's civil-law decision *Chrysler Corp. v. Brown*, 441 U.S. 281, 295-96 (1979), concluded that "§ 545 criminalizes importation in violation of any regulation 'having the force and effect of law.'" *Izurieta*, 710 F.3d at 1181 (quoting *Mitchell*, 39 F.3d at 470). The Eleventh Circuit notes the three-part

*Chrysler* test that the Fourth Circuit adopted to determine whether a regulation has the force and effect of law. *id.*

After analyzing these two circuit decisions, the Eleventh Circuit pointed out that the *Mitchell* decision's "general interpretation of 'law' appears consistent with the precedent of the former Fifth Circuit, which is binding on this court." *Id.* (citing *Babb v. United States*, 252 F.2d 702, 707 (5th Cir. 1958)). But the Eleventh Circuit nevertheless declined to follow the Fourth Circuit in *Mitchell*, because the decision's reliance on civil decision from the Supreme Court was inconsistent with the rule of lenity, particularly given the problems associated with trying to criminalize conduct that is addressed in a regulation with only civil remedies:

> We are concerned, however, with the breadth of the Fourth Circuit's three-prong approach, derived from a non-criminal context. In contrast, lenity remains an important concern in criminal cases, especially where a regulation giving rise to what would appear to be civil remedies is said to be converted into a criminal law. As the Supreme Court has explained: "The rule of lenity is premised on two ideas: First, a fair warning should be given to the world in language that the common world will understand, of what the law intends to do if a certain line is passed; second, legislatures and not courts should define criminal activity." When ambiguity exists, "the ambit of criminal statutes should be resolved in favor of lenity."

*Id.* at 1181-82 (internal citations omitted) (quoting *Babbitt v. Sweet Home Chapter of Cmtys. for a Great Or.*, 515 U.S. 687, 704 n.18 (1995); *United States v. Bass*, 404 U.S. 336, 347 (1971)).

The Eleventh Circuit pointed out that the rule of lenity applies "only where there is a 'grievous ambiguity or uncertainty' in the statute," and concluded that § 545 creates grievous ambiguity "where the text or the history of the regulation [on which the charge is based] creates a strong perception that a violation of the regulation will give rise to civil remedies only." *Id.* at 1182 (citing *Chapman v. United States*, 500 U.S. 453, 456 (1991)). The Eleventh Circuit reasoned that "the problem . . . here [is] a regulation that appears to be exclusively civil and that is said to be also a criminal law by operation of an unrelated statute." *Id.* at 1182 n.9.

Under this test, the Eleventh Circuit looked to the regulation on which the § 545 smuggling charges were based: 19 C.F.R. § 141.113(c). *See id.* at 1182. The Eleventh Circuit looked at the background of the statutory authority under which the regulation was promulgated. *See id.* at 1182-83. The Eleventh Circuit pointed out that "none of these provisions that authorize the conditional release system establish criminal liability for a failure to comply with the provision itself." *Id.* at 1183. And whereas the enabling statutes included references to criminal penalties, the Eleventh Circuit noted that those references to criminal penalties don't involve the conduct on which the defendants' § 545 violation was based: failure to hold, redeliver, export, and/or destroy the goods. *See id.* (citing 21 U.S.C. § 381(q)(6) which references criminal penalties "in connection with falsification of entry documents," and 21 U.S.C. § 331 which "lays out dozens of prohibited acts in violation of the Federal, Food, Drug, and Cosmetics act subject to criminal penalties," but "does not specify as a crime the simple failure to hold, redeliver, export, and/or destroy" the goods). The Eleventh Circuit pointed out that penalty for the "specific[] . . . failure" charged -- failure to redeliver goods -- "specifies only liquidated damages, not criminal punishment, for the failure." *Id.*

Taking these facts into consideration, the Eleventh Circuit held: "The regulation fails to qualify as a 'law' for purposes of criminal liability under 18 U.S.C. § 545 not because it has no effect as a law but because that law is civil only, and in particular reflects contractual requirements." *Izurieta*, 710 F.3d at 1184. Given that the regulation imposed only civil liability for its violation, the Eleventh Circuit reasoned that its violation "certainly indicate[s] to the average person that liability is strictly civil and monetary, . . . and is not aimed at punishment." *Id.* Thus, the Eleventh Circuit vacated the defendants' convictions, concluding that, under lenity principles, the § 545 charges based on this civil regulation could not stand:

> [T]he statutory and regulatory structure and the history of the regulation
> demonstrate the vagueness and ambiguity of both the statute and regulation in
> terms of defining criminal liability. We disagree with the conclusion of our sister
> circuit in Mitchell that 18 U.S.C. § 545 is not grievously ambiguous, at least with
> respect to its effect of criminalizing conduct in violation of 19 C.F.R. §
> 141.113(c). Rather there is, at a minimum, great doubt as to whether violation of
> this regulation per se gives rise to criminal liability. Under principles of lenity,
> charges of violations of this regulation under 18 U.S.C. § 545 do not charge a
> crime, and the protections intended by Grand Jury indictment were not afforded
> the Izurietas. Accordingly, the convictions of both of the Izurietas on Counts 2–7
> are vacated.

*Id.* (internal citation omitted).

## IV.     LAW REGARDING 19 C.F.R § 134.43.

Title 19 of the Code of Federal Regulations covers regulations regarding customs duties.

Part 134 of Title 19 falls within the Treasury Department's regulations, and covers "country of

origin" marking. Section 134.0 of Title 19 sets out Part 134's scope, and provides that Part 134

"sets forth regulation implementing the country of origin marking requirements and exceptions

of section 304 of the Tariff Act of 1930, as amended (19 U.S.C. § 1304), together with certain

marking provisions of the Harmonized Tariff Schedule of the United States (19 U.S.C. 1202)."

### A.     Section 1304 of Title 19 of the United States Code.

Congress originally enacted 19 U.S.C. § 1304 on June 17, 1930, as part of the Tariff Act

of 1930. *See* 19 U.S.C. § 1304; *see also* 46 Stat. 687-88. As it now stands (and as originally

enacted), Congress set forth a specific remedy when a person imports merchandise without the

required markings "in accordance with . . . this section": the merchandise must be "exported or

destroyed or . . . marked after importation" and the levy, collection, and payment of "a duty of 10

per centum ad velorem." § 1304(i). *See also* 46 Stat. 687 (laying out as subsection (b) of Section

304 of the Tariff Act of 1930  an additional levy of "a duty of 10 per centum of the value" for

merchandise not marked and not exported under customs supervision). Notably, Congress

specifically intends that this 10% ad valorem duty for failure to mark "shall not be construed to be penal." § 1304(i). Indeed, Congress is specific in § 1304 in relation to when conduct related to country-of-origin marking requirements is penal, as it sets forth criminal liability explicitly for a person who, "with intent to conceal the information given thereby or contained therein, defaces, destroys, removes, alters, covers, obscures, or obliterates any mark required under the provisions of this chapter." *Id.* § 1304(l); *see also* 46 Stat. 688 (laying out as subsection (d) of Section 304 of the Tariff Act of 1930  the penalty for defacing, destroying, removing, altering, covering, obscuring, or obliterating any mark with the intent to conceal the information).

### B.     Section 134.43 of Title 19 of the Code of Federal Regulations.

Section 134.43 of 19 C.F.R. Part 134 regulates the requirements for methods of marking certain articles in accordance with § 1304. Subsection *d* of § 134.43 governs the marking requirements for "Native American-style arts and crafts," including the definition of such Native American-style arts and crafts and the requirements and exceptions for marking them:

> (1) *Definition*. For the purpose of this provision, Native American-style arts and crafts are arts and crafts, such as pottery, rugs, kachina dolls, baskets and beadwork, which incorporate traditional Native American design motifs, materials and/or construction and therefore look like, and could possibly be mistaken for, arts and crafts made by Native Americans.

> (2) *Method of Marking*. Except as provided for in 19 U.S.C. 1304(a)(3) and § 134.32 of this part, Native American-style arts and crafts must be indelibly marked with the country of origin by means of cutting, die-sinking, engraving, stamping, or some other equally permanent method. On textile articles, such as rugs, a sewn in label is considered to be an equally permanent method.

> (3) *Exception*. Where it is technically or commercially infeasible to mark in the manner specified in paragraph (d)(2) of this section, or in the case of a good of a NAFTA country, the article may be marked by means of a string tag or adhesive label securely affixed, or some other similar method.

19 C.F.R. § 134.43(d).

The Treasury Department in 19 C.F.R. Part 134 imposes the same civil remedies and procedural requirements that § 134.43's enabling statute, 19 U.S.C. § 1304, provides when an article is not properly marked. *See* 19 C.F.R. §§ 134.2, 134.3. Also like the enabling statute, Part 134 imposes criminal penalties only for "[a]ny intentional removal, defacement, destruction, or alteration of a marking of the country of origin required by section 304, Tariff Act of 193, as amended (19 U.S.C. 1304), and this part in order to conceal this information." 19 C.F.R. § 134.4. The Indictment doesn't allege that any Defendant violated this sole criminal penalty provision in Part 134 for removal, defacement, or alteration of a required country of origin mark.

## ANALYSIS

Section 545 of Title 18 of the United States Code, on which the Indictment bases the smuggling charges in Counts 1, 2, and 3, punishes the willful, fraudulent, and knowing smuggling of goods, or willful, fraudulent, and knowing receipt of smuggled goods, "in violation of law." But § 545 is ambiguous whether a regulation constitutes a "law." And here, the Government is trying to commandeer a plainly civil regulation into the foundation for felony criminal charges, contrary to Congress's intent. Congress unambiguously provides civil liability only, and not criminal liability, for failures to mark as § 1304 requires, which the Government alleges Defendants did here by failing to comply with § 134.43. Given this clear imposition of civil liability only for Defendants alleged conduct, and the clear criminal liability for conduct in which Defendants are not alleged to have engaged, the Court should dismiss, under Rule 12(b), Counts 2-3 of the Indictment, and Count 1 of the Indictment to the extent it's based on § 545, because it fails to state an offense.

I.    **SECTION 134.43 OF TITLE 19 OF THE CODE OF FEDERAL REGULATIONS, ON WHICH THE UNITED STATES BASES ITS § 545 CHARGES HERE, IS NOT A "LAW" UNDER § 545, BECAUSE CONGRESS AND THE TREASURY DEPARTMENT SPECIFICALLY PROVIDE THAT A VIOLATION OF THE REGULATION SUPPORTS CIVIL LIABILITY ONLY.**

The United States Code provision on which the United States bases the smuggling charges in this case IS grievously ambiguous, because the text, structure, history, and the purpose of the statute leave the Court with nothing but a guess what Congress to support a conclusion that "contrary to law" in 18 U.S.C. § 545 extends to regulations, and particularly to regulations that provide civil remedies only.

A.    **The Plain Meaning of "Law" for Purposes of § 545 is Grievously Ambiguous in Relation to Whether it Includes Regulations and Statutes as Opposed to Statutes Only.**

Section 545 doesn't define the term "law," in "contrary to law." 18 U.S.C. § 545. Thus, the Court must construe that term in the statute's context. When interpreting the word "law" in § 545, the Court first looks to the plain language. *See Carter v. United States Dep't of Defense*, No. CIV 16-0786 JB/SMV, Memorandum Opinion and Order, at 18 (D.N.M. Feb. 28, 2017) (Browning, J.) ("When interpreting statutes, the Court must start with the plain language." (Citing, as an *e.g.* cite, *Been v. O.K. Industries, Inc.*, 495 F.3d 1217, 1227 (10th Cir. 2007)). The plain-language meaning of "law" does not unambiguously refer to either statutes enacted by Congress (or other legislative acts) or to both statutes and regulations. *See Webster's Third New International Dictionary* 1279 (16th ed. 1971) (defining law to include statutes or rules). *See also Place*, 693 F.3d at 227-28; *Alghazouli*, 517 F.3d at 1183-84.

**B.  The Legal Meaning of Law for Purposes of § 545 is Grievously Ambiguous in Relation to Whether it Includes Regulations and Statutes as Opposed to Statutes Only.**

Because it's unclear whether the plain meaning of law includes only statutes or statutes and regulations, the Court next looks to the meaning of "law" in the legal context. *See Santos*, 553 U.S. at 511 (because the plain meaning of proceeds may include profits or receipts, the Supreme Court next looked to whether proceeds gained a common meaning in the Federal Criminal Code); *Place*, 693 F.3d at 227-28 (looking to *Black's Law Dictionary* for the meaning of law); *Alghazouli*, 517 F.3d at 1183-84 (same). As with the plain meaning of law, so in the legal context, "law" has not clearly acquired a meaning that includes regulations promulgated by Congress, as *Black's Law Dictionary* defines "law" both narrowly, as "[a] statute <Congress passed a law>," and broadly, as "[t]he aggregate of legislation, judicial precedents, and accepted legal principles; the body of authoritative grounds of judicial and administrative action; esp., the body of rules, standards, and principles that the courts for a particular jurisdiction apply in deciding controversies brought before them <the law of the land>." *Black's*, *supra*, 962.

**C.  Given the Grievous Ambiguity Whether § 545's "Contrary to Law" Language Includes Statutes and Regulations, the Government Cannot Commandeer the Civil Liability Imposed by 19 C.F.R. § 134.43 to Impose Criminal Liability as a "Law" under § 545.**

Given this ambiguity in relation to whether "law" for § 545's purposes may include regulations as well as statutes, courts split over whether and what regulations "law" may include. *See Izurieta*, 710 F.3d at 1181-82; *Place*, 693 F.3d at 228-29 n.12. But only the Eleventh Circuit in *United States v. Izurieta*, 710 F.3d 1176 (11th Cir. 2013), addressed this question in the context of a regulation that, like 19 C.F.R. § 134.43 here, provides civil liability only for its violation. And the Eleventh Circuit concluded that, given the ambiguity in "law" under § 545, and given the clarity with which the regulation at issue in that case provided civil liability only

for the defendants' alleged conduct, § 545 was grievously ambiguous in relation to whether such

civil regulations may be "laws" under which § 545 may convert their violation into a basis for

criminal liability. Thus, the Eleventh Circuit concluded in *Izurieta* that, in the criminal context,

faced with the rule of lenity, § 545's "contrary to law" provision does not include such civil

regulations.

The Eleventh Circuit in *Izurieta* reached this conclusion in the face of a split between the

Ninth Circuit's 2008 *Alghazouli* decision and the Fourth Circuit's 1994 *Mitchell* decision as to

whether and what regulations may constitute a law -- the Ninth Circuit concluding that only

regulations promulgated pursuant to laws that provide criminal liability may be treated as a

"law" for this purpose, while the Fourth Circuit concluded more broadly that all regulations that

have the force and effect of law may suffice.  Even recognizing that *Mitchell* was more in line

with controlling Eleventh-Circuit precedent, the Eleventh Circuit declined to follow that case.

*See Izurieta*, 710 F.3d at 1181-82. It did so because *Mitchell* was based on a civil-law decision --

*Chrysler Corp. v. Brown*, 441 U.S. 281, 295-96 (1979) -- that did not include the constitutional

notice requirements that are required in the criminal-law context:

> We are concerned, however, with the breadth of the Fourth Circuit's three-
> prong approach, derived from a non-criminal context. In contrast, lenity remains
> an important concern in criminal cases, especially where a regulation giving rise
> to what would appear to be civil remedies is said to be converted into a criminal
> law. As the Supreme Court has explained: "The rule of lenity is premised on two
> ideas: First, a fair warning should be given to the world in language that the
> common world will understand, of what the law intends to do if a certain line is
> passed; second, legislatures and not courts should define criminal activity." When
> ambiguity exists, "the ambit of criminal statutes should be resolved in favor of
> lenity."

*Izurieta*, 710 F.3d at 1181-82 (internal citations and quotations omitted).[2]

---

[2] The Eleventh Circuit departed from the Fourth Circuit's reliance on a civil-law deference to regulations in
*Chrysler*. Notably, the Eleventh Circuit made this departure in 2013. Today, the Supreme Court has made clear that
courts should be less deferential to agency-made regulations, even in the civil context. Indeed, a majority of the

As the Eleventh Circuit points out in *Izurieta* when it declined to follow *Mitchell*, whatever basis there is to follow the Supreme Court's conclusion that "law" may include regulations that have the force and effect of law in the civil context, that basis is not sound in the criminal context. And that is especially true when a regulation provides a civil, and not a criminal, remedy for the regulation's violation. *Id.* at 1181-84. Whereas application of the rule of lenity requires not only ambiguity, but grievous ambiguity, the Eleventh Circuit reasoned that "[t]he lack of reference in 18 U.S.C. § 545 to violations of regulations does create some ambiguity and such ambiguity should be considered grievous where the text or history of the regulation creates a strong perception that a violation of the regulation will give rise to civil remedies only." *Id.* at 1182. *Accord United States v. Rentz*, 777 F.3d 1105, 1125 (10th Cir. 2015) ("[T]he rule of lenity applies only if there is 'grievous ambiguity or uncertainty in the statute.'" (quoting *Dean v. United States*, 556 U.S. 568, 577 (2009)). Because the regulation on which the § 545 smuggling charge was based in *Izurieta* provided "contractual terms between Customs and the importer regarding temporary release and storage of the imported goods, along with agreed-upon liquidated damages for non-compliance," it failed to qualify as a "law" under § 545. *Id.* at 1183-84. *Accord* 19 C.F.R. § 134.54 (imposing virtually identical contractual terms of liquidated damages for failure to redeliver goods not properly marked with the country of origin).

Here, 19 C.F.R. § 134.43, the regulation on which the United States bases the § 545 smuggling charges against Defendants, provides for civil liability only, and "charges of violations of this regulation under 18 U.S.C. § 545 do not charge a crime." *Id.* at 1184. Section

---

Supreme Court during its last term called for the demise of *Chevron* deference. *See Pereira v. Sessions*, 585 U.S. ___, 138 S. Ct. 2105, slip op. at 25 (June 21, 2018) (Kennedy, J., concurring) (writing the concurrence to note specifically his "concern with the way in which . . . . *Chevron U.S.A. Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837 (1984), has come to be understood and applied," and concluding that, "[g]iven the concerns raised by some Members of this Court, it seems necessary and appropriate to reconsider . . . the premises that underlie *Chevron* and how courts implemented that decision." (citations omitted)). With the elevation of Justice Kavanaugh to the bench, *Chevron* deference almost certainly will be reconsidered.

134.43 is a Treasury Regulation that imposes certain requirements on items on importers of arts and crafts articles -- the contractual requirement to mark certain arts and crafts that are classified as "Native American-style" under the definition in § 134.43(d)(1). The Eleventh Circuit in *Izurieta* concluded that the regulation at issue was civil as it imposed the civil remedy of damages only for its violation: "liquidated damages . . . unless the port director has prescribed a bond equal to the domestic value." *Id.* § 141.113(c)(3). Violations of § 134.43 result in the same civil remedy; § 134.54 likewise imposes liquidated damages for failures to redeliver as required. *See* 19 C.F.R. § 134.54.

Moreover, aside from the contractual liquidated-damages term § 134.54 imposes, Congress and the Treasury Department expressly provide that the civil liability for violation of § 134.43 "is not aimed at punishment," which was dispositive of *Izurieta*'s conclusion that the regulation relied on was not a law under § 545. 710 F.3d at 1184 ("While some regulations may fall under the criminal prohibitions of 18 U.S.C. § 545, the text of 19 C.F.R. § 114.113(c) along with the comments issued during its promulgation certainly indicate to the average person that liability . . . is not aimed at punishment."). In support of its conclusion that liability for violation of § 114.113 "is not aimed at punishment," the Eleventh Circuit pointed to the rule's 2001 enactment in which the agency noted "that the liquidated damages claimed for failure to redeliver is not intended to be punitive." *Id.* (citation omitted).

The Court here need not go to the lengths to which the Eleventh Circuit in *Izurieta* went to conclude that § 134.43's remedy isn't "aimed at punishment." *Id.* Congress made that clear in the enabling statute for § 134.43; 19 U.S.C. § 1304(i)  makes plain that the duty imposed for failures to mark "*shall not be construed to be penal*." (Emphasis added).

The second basis on which the Eleventh Circuit in *Izurieta* concluded that § 114.113 couldn't be a proper basis for criminal liability under § 545, was that § 114.113's text "indicate[s] to the average person" that "liability is strictly civil and monetary." 710 F.3d at 1184. The Eleventh Circuit pointed out that § 114.113(c)'s language "sets forth the terms of the contract . . . delineating the obligations of the importer upon conditional release and the damages for a breach of those contractual obligations." *Id.* Here, 19 C.F.R. Part 134, which includes § 134.43, likewise indicates to the average person that liability is strictly civil and monetary, because it sets forth terms of the contract delineating the obligations of the importer upon a breach of § 134.43's requirements.

Part 134 provides civil remedies, and not criminal penalties, for importing "[a]rticles not marked as required by" § 134.43: the obligations of the withholding of delivery until they are properly marked or the 10 percent duties or adequate security are deposited. 19 C.F.R. § 134.2. And whereas the Eleventh Circuit in *Izurieta* also relied on the message delivered to the average person by the monetary obligations of liquidated damages for breach of the contractual obligations in 19 C.F.R. § 114.113, Part 134 here likewise delivers to the average person that the person will be liable for the monetary payment of "additional duties of 10 percent of the final appraised value unless exported or destroyed under Customs supervision prior to liquidation of the entry." 19 C.F.R. § 134.3. Thus, the contractual obligations that Part 134 imposes for violation of § 134.43, and the monetary liability for breach of those obligations, support that Part 134's plain text "indicate[s] to the average person" that violation of § 134.43 results in "liability [that] is strictly civil and monetary." 710F.3d at 1184.

Indeed, any question whether mistaken violation of § 134.43's required markings on Native American-style arts and crafts imposes criminal liability is put to rest by the procedures

that Part 134 imposes on such failures to mark. Subpart F of Part 134 speaks directly to articles found not marked. And it advises importers that violation is an administrative, and not a criminal, matter. Section 134.51 provides that, when merchandise is found "not to be legally marked, the Center director shall notify the importer on Customs Form 4647, . . . to arrange with the Center director's office to properly mark the article or containers, or to return all released articles to Customs custody for marking, exportation, or destruction." 19 C.F.R. § 134.51(a). That wasn't done in this case. So Defendants weren't provided the *legally required* opportunity to mark their jewelry as required. That makes the imposition of criminal penalties under any criminal provision here more grievously ambiguous than the criminal penalties in *Izurieta*, where the defendant was charged with failing to redeliver goods as Customs required. Whereas the defendant in *Izurieta* was provided notice that the defendant would face some government penalties for the alleged violations, the Government provided no such notice to Defendants here. The only notice Defendants had was the notice in 19 U.S.C. § 1304 and 19 C.F.R. Part 134. That notice makes clear that failures to mark merchandise subjects the importer to administratively-supervised re-marking and possible imposition of a 10% additional duty. Under those circumstances in which the Government violated its own notice and administrative requirements, the Court should dismiss Counts 1, 2, and 3 based on violation of a legal provisions that clearly contemplate only civil remedies.

Congress in § 545 does not define what constitutes a "law" such that the average person is on notice that violation of such a "law" subjects them to criminal liability. But Congress defines clearly the penalty imposed for violation of § 134.43's requirements to mark: civil liability of withholding of the goods, remarking under Customs supervision, and an additional 10% duty. 19 U.S.C. §§ 1304(i) & (j). And that stands in stark contrast to Congress's equally

clear language imposing criminal penalties for other conduct, namely, obfuscation or removal of the required marking. *See id.* § 1304(l). Given Congress's clarity in relation to country-of-origin requirements, the Court properly should conclude that the Government commandeer a civil regulation such as § 134.43 to impose criminal liability by labeling it a "law" under § 545, properly should dismiss Counts 2 and 3, and Count 1 to the extent it is based on § 545, because it fails to state an offense against Defendants.

## II. THE PLAIN LANGUAGE OF § 1304, THE RULE OF LENITY, AND THE CANONS OF STATUTORY CONSTRUCTION, SUPPORT THAT 19 C.F.R. § 134.43 IS NOT A "LAW" UNDER § 545.

The rule of lenity is premised on the policy that, in criminal proceedings, "'a fair warning should be given to the world in language that the common world will understand, of what the law intends to do if a certain line is passed. To make the warning fair, so far as possible the line should be clear.'" *Bass*, 404 U.S. at 348 (quoting *McBoyle*, 283 U.S. at 27 (Holmes, J.)). Both 19 U.S.C. § 1304 and 19 C.F.R. Part 134, the regulations that effectuate Congress's delegation in § 1304(a) of country-of-origin marking requirements, warn in language that the world will understand that the line for criminal liability is drawn at removal or obfuscation of a mark to conceal the country of origin. *See* § 1304(l); 19 C.F.R. § 134.4. Even if regulations may be a "law" under § 545, the fair warning that 19 C.F.R. Part 134 provides to the common world for violation of § 134.43 is that the failure to abide by its marking requirements for imported "Native American-style arts and crafts" is administratively-supervised remarking, *see* § 134.51, and possible civil, contractual liquidated damages for failure to remark them, *see* § 134.54. *See also Izurieta*, 710 F.3d at 1184 (holding 19 C.F.R § 114.113(c)'s liquidated-damages requirements for failure to redeliver goods "reflects contractual requirements").

There is no fair warning that failures to mark articles "as required by this part [134, including § 134.43" may subject a person to criminal liability. To the contrary, the regulation specifies that the penalty for such conduct is civil liability only: withholding of the articles until properly marked, administrative supervision of that marking, contractual damages for failure to do so, and an additional duty. 19 U.S.C. §§ 1304(i) & (j); 19 C.F.R. §§ 134.2, 134.3, 134.51. 134.54. The Court properly should, therefore, conclude that § 134.43 cannot be a "law" for purposes of the Government's § 545 charges here.

The canons of statutory construction support this conclusion. The general/specific canon of statutory construction provides that, "'[i]f there is a conflict between a general provision and a specific provision, the specific provision prevails.'" *United States v. Porter*, 745 F.3d 1035, 1049 (10th Cir. 2014) (quoting Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* 184 (2012)). Here, the more specific provisions of liability imposed for failures to mark "Native American-style arts and crafts" as the Government alleges are those found in 19 U.S.C. § 1304, the enabling statute pursuant to which § 134.43 was promulgated.

Section 1304(i) imposes the civil liability of a duty for the specific conduct the Government alleges: "[I]mportation [of] any article . . . not marked in accordance with the requirements of this section." Likewise, 19 C.F.R. § 134.2 subjects to that additional civil duty "[a]rticles not marked as required by this part," which includes § 134.43. There can be no doubt that those specific provisions of civil liability that Congress imposes for importation of merchandise not "indelibly marked with the country of origin," 19 C.F.R. §§ 143.43(c), (d), are more specific than possible criminal liability for the general importation of "any merchandise contrary to law," 18 U.S.C. § 545. Given these specific liability provisions, the canons of statutory construction support that the Court should conclude that § 134.43 fails to qualify as a

"law" for § 545's purposes. *Cf. Izurieta*, 710 F.3d at 1184 ("[19 C.F.R § 114.113(c)] fails to qualify as a 'law' for purposes of criminal liability under 18 U.S.C. § 545 not because it has no effect as a law, but because that law is civil only, and in particular reflects contractual requirements.").

Additionally, § 1304, pursuant to which § 134.43 was promulgated, demonstrates that Congress clearly knew how to, and, indeed, specifically did, subject certain violations of § 1304 and Part 134's marking requirements to criminal liability. Section 1304 indeed imposes criminal penalty for "[a]ny person who, with the intent to conceal the information given thereby or contained therein, defaces, destroys, removes, alters, covers, obscures, or obliterates any mark required." § 1304(l). *Accord* 19 C.F.R. § 134.4. But the Government doesn't allege Defendants engaged in this criminal activity. Given this articulation of criminal liability in § 1304 -- the exact same statute as that in which Congress provided for civil liability only for failures of a country-of-origin marking -- the Court should conclude that Congress clearly intended to impose civil liability only for *failures to mark* merchandise.

Thus, the general/specific canon of statutory construction weighs heavily against the conclusion that § 545's "contrary to law" element may be based on § 134.43 -- a regulation promulgated pursuant to § 1304 in which Congress specifically articulates civil liability as the remedy for Defendants' alleged conduct. The Court should conclude that the general/specific canon of construction leads to the conclusion § 134.43 can't be a "law" under § 545. And that conclusion finds support criminal-law policy that the Supreme Court pointed out underlies the rule of lenity: "[B]ecause of the seriousness of criminal penalties, and because criminal punishment usually represents the moral condemnation of the community, legislatures and not courts should define criminal activity." *Bass*, 404 U.S. at 348. Rather than moral condemnation

for a person who "import[s] any article . . . not marked in accordance with the requirements of" § 1304, including § 134.43's Native American-style arts and crafts marking requirements, Congress imposed a 10% duty which it states "*shall not be construed as penal*." § 1304(i) (emphasis added). Compare that clear articulation of failures to mark as civil activity with the ambiguous condemnation of "import[ing] or bring[ing] into the United States any merchandise contrary to law." 18 U.S.C. § 545. The rule of lenity and the canons of construction support that, given Congress's clear definition of civil liability for failures to mark merchandise with country of origin, and its clear definition of criminal liability for obfuscations of country-of-origin markings, the Court should decline to act directly contrary to Congress's intent by defining failures to mark as criminal activity under the ambiguous "contrary to law" definition in § 545.

Section 545 is ambiguous whether "contrary to law" refers to statutes only, or may be broad enough to include regulations. It's ambiguous, to the extent that it may include some regulations, which regulations it may include. *See Izurieta*, 710 F.3d at 1184 ("law" under § 545 does not include regulations that are "civil only, and in particular reflect[] contractual requirements"); *Algazouli*, 517 F.3d at 1187 ("law" under § 545 includes regulations "only if there is a statute (a 'law') that specifies that violation of the regulation is a crime"); *Mitchell*, 39 F.3d at 470 ( "law" under § 545 includes regulations "having the force and effect of law" only). If Congress intended § 545's "contrary to law" language to cover regulations as well as laws, then this Court properly should require Congress explicitly to "define [such] criminal activity." *Bass*, 404 U.S. at 348. As the Supreme Court notes in *Santos*, this "places the weight of inertia upon the party that can best induce Congress to speak more clearly and keeps courts from making criminal law in Congress's stead." 553 U.S. at 514.[3] In *Santos*, when faced with the

---

[3] The Supreme Court's adherence to this policy of sticking to the more defendant-friendly construction of ambiguous criminal statutes in *Santos* resulted in the effect that the policy intends: Congress immediately clarified

ambiguous term of "proceeds", the Supreme Court held that courts in the criminal context must adopt the "definition . . . [that] is always more defendant-friendly." *Id.* The Court properly should, therefore, follow the Supreme Court's direction in *Santos* and limit § 545's "law" definition to the more defendant-friendly definition of statutes only. *See Black's*, *supra*, at 962.

The canons of statutory construction support that § 134.43 cannot be a basis of criminal liability under § 545's "contrary to law" language. So too do the policies that the United States Supreme Court recognized underpin the rule of lenity. Given the specific language Congress used in 19 U.S.C. § 1304, including the clear articulation of criminal activities for conduct in Defendants aren't alleged to have engaged, and equally clear articulation of civil liability for the Defendants' alleged conduct, the Court properly should that the § 545 charges that the United States brings here based on § 134.43 fail to state an offense against Defendants.

## III. THE COURT PROPERLY SHOULD DISMISS, UNDER RULE 12(b) OF THE FEDERAL RULES OF CRIMINAL PROCEDURE, COUNTS 2 AND 3, AND COUNT 1 TO THE EXTENT IT'S BASED ON ALLEGED VIOLATION OF § 545.

The United States charges Defendants in Count 2 with importing and bringing in merchandise contrary to law, and in Count 3 with concealing and selling merchandise that was imported contrary to law, in violation of 18 U.S.C. § 545. *See* Indictment at 7-8. Additionally, the United States charges Defendants in Count 1 with conspiracy to violate § 545 by not marking merchandise as law requires. But those charges are all premised on that Defendants' alleged conduct was contrary to law, because "the merchandise[, Native American-style jewelry, arts, and crafts,] was not indelibly marked with the country of origin" as 19 C.F.R. § 134.43 requires. *Id.* Section 134.43 is not, however, a "law" for purposes of § 545's "contrary to law"

---

the ambiguity and amended the money-laundering statute at issue to define "proceeds" as "receipts." *See* Fraud Enforcement and Recovery Act of 2009 Pub. L. No. 111-21 § 2, 123 Stat. 1617, 1618 (defining "proceeds" as it appears in 18 U.S.C. § 1956(c) "to include gross receipts"); *see also United States v. Lyons*, 740 F.3d 702, 727 (1st Cir. 2014) (recognizing that this Act amended the definition of "proceeds" in the money-laundering statute at issue in *Santos* as "a response to *United States v. Santos*, 553 U.S. 507").

requirement. Counts 2 and 3, therefore, "fail[] to state an offense" against Defendants. Fed. R. Crim. P. 12(b)(3)(B)(v). Accordingly, the Court properly should dismiss Counts 2 and 3. *Id.*

## CONCLUSION

The civil regulation 19 C.F.R. § 134.43, on which the United States' Counts 1, 2, and 3, are based, is not a "law" for purposes of 18 U.S.C. § 545. Congress was unambiguous in the enabling statute pursuant to which § 134.43 is promulgated, 19 U.S.C. § 1304, that failures to mark merchandise in violation of § 134.43 subjects a person to civil liability only. The United States' Indictment, therefore, fails to allege an offense against Defendants under § 545. The Court properly should dismiss, under Rule 12(b), Counts 2 and 3, and Count 1 to the extent that it's based on the violation of 18 U.S.C. § 545.

Respectfully submitted,

RODEY, DICKASON, SLOAN, AKIN & ROBB, P.A.

By ___*/s/ Matthew M. Beck*___
          Matthew M. Beck
P.O. Box 1888
Albuquerque, New Mexico  87103
Telephone: (505) 765-5900
Facsimile:  (505) 768-7395
Email: mbeck@rodey.com

*Attorneys for Defendant Zaher Mostafa*

FREEDMAN, BOYD, HOLLANDER, GOLDBERG, URIAS & WARD, P.A.

By ___*/s/ Nancy Hollander*___
          John Boyd
          Nancy Hollander
          Molly Schmidt-Nowara
P.O. Box 25326
Albuquerque, New Mexico 87125-0326
Telephone: 505.842.9960
Facsimile: 505.842.0761

Email: jwb@fbdlaw.com
　　　　nh@fbdlaw.com
　　　　msn@fbdlaw.com

*Attorneys for Defendants Nashat Khalaf and Al-Zuni Global Jewelry, Inc.*

PEIFER, HANSON & MULLINS, P.A.

By    */s/ Mark T. Baker*   
　　　　Mark T. Baker
　　　　Carter B. Harrison IV
P.O. Box 25245
Albuquerque, New Mexico 87125
Telephone: (505) 247-4800
Facsimile: (505) 243-6458
Email: mbaker@peiferlaw.com
　　　　charrison@peiferlaw.com

*Attorneys for Defendants Sterling Islands, Inc., and Jawad Khalaf*

--and--

AHMAD ASSED & ASSOCIATES

By    */s/ Ahmad Assed*   
　　　　Ahmad Assed
　　　　Richard Moran
818 5th Street NW
Albuquerque, New Mexico 87102
Telephone: 505-246-8373
Facsimile: 505-246-2930
Email: ahmad@assedlaw.com
　　　　richard@assedlaw.com

*Attorneys for Defendant Nader Khalaf*

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that on February 15, 2019, I filed the foregoing pleading electronically through the CM/ECF system, which caused all parties or counsel to be served by electronic means, as more fully reflected on the Notice of Electronic Filing.

RODEY, DICKASON, SLOAN, AKIN & ROBB, P.A.

By _____*/s/ Matthew M. Beck*_____
        Matthew M. Beck