# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

      Plaintiff,

vs.                                          No. CR 18-4176 JB

STERLING ISLANDS, INC.;
AL-ZUNI GLOBAL JEWELRY, INC.;
JAWAD "JOE" KHALAF;
NADER KHALAF;
NASHAT "NASH" KHALAF;
ZAHER MOSTAFA, and
TAHA "TOM" SHAWAR,

      Defendants.

## <u>MEMORANDUM OPINION AND ORDER</u>

**THIS MATTER** comes before the Court on the Defendants' Joint Opposed Rule 12(b) Motion to Dismiss Counts 2 and 3, and to Partially Dismiss Count 1, of the Indictment, filed February 15, 2019 (Doc. 34)("Motion"). The primary issues are: (i) whether, under 18 U.S.C. § 545, a regulation promulgated by the United States Department of the Treasury (the "Treasury Department") constitutes a law for the purposes of 18 U.S.C. § 545's "contrary to law" element, 18 U.S.C. § 545; (ii) whether, if a regulation can constitute a law for the purposes of 18 U.S.C. § 545's contrary-to-law element, 19 C.F.R. § 134.43 constitutes such a law; and (iii) whether the Indictment, filed December 19, 2018 (Doc. 1), in Counts 2 and 3 and Count 1 to the extent it is based on a conspiracy to violate 18 U.S.C. § 545, fails to state an offense against Defendants Sterling Islands Inc., Al-Zuni Global Jewelry, Inc., Jawad Khalaf ("J. Khalaf"), Nader

Khalaf, Nashat Khalaf, Zaher Mostafa, and Taha "Tom" Shawar (collectively, the "Defendants"), as required by rule 12(b)(3)(B)(v) of the Federal Rules of Criminal Procedure, because 19 C.F.R. § 134.43 fails to qualify as a law which the Defendants may be charged with violating.  The Court concludes that (i) a Treasury Department regulation constitutes a law for the purposes of 18 U.S.C. § 545's contrary-to-law element, because the plain meaning of the word law in 18 U.S.C. § 545 includes both statutes and regulations; (ii) Treasury Department regulation 19 C.F.R. § 134.43 constitutes a law for 18 U.S.C. § 545's purposes; and (iii) the Indictment states an offense against the Defendants in Counts 1, 2, and 3.  The Court denies the Motion.

## FACTUAL BACKGROUND

The Court takes its facts from the Indictment.  See generally Indictment.  The Court does not set forth these facts as findings or the truth.  The Court recognizes that the Indictment is largely the United States' version of events and that the Defendants are presumed innocent.  Indictment at 1.

Sterling Islands is a corporation registered in the Commonwealth of Virginia, with its primary business office in Albuquerque, New Mexico.  See Indictment ¶ 1, at 1.  Sterling Islands imports Native American-style jewelry, arts, and crafts, from a factory in the Republic of the Philippines -- a manufacturer called Fashion Accessories 4 U ("Fashion Accessories") -- into the United States, and sells the imported merchandise to wholesale and retail businesses in the State of New Mexico and elsewhere.  See Indictment ¶ 1, at 1.  J. Khalaf is Sterling Islands' owner and president, and Nader Khalaf is a manager.  See Indictment ¶ 1, at 1.  Al-Zuni Global is a registered corporation in New Mexico, operating as a wholesale business in Gallup, New Mexico,

"specializing in Native-American style jewelry, arts, and crafts."  Indictment ¶ 2, at 1-2.  Nashat Khalaf is Al-Zuni Global's owner and president, and Mostafa is its vice-president.  See Indictment ¶ 2, at 2.  Shawar owns Bullion Jewelers, Inc., "a retail store in Breckenridge, Colorado, specializing in the sale of Native American-style jewelry."  Indictment ¶ 3, at 2.

The Indictment charges that the Defendants imported Native American-style jewelry, arts, and crafts from the Philippines into the United States without legally required indelible markings, and sold the imported merchandise to customers, falsely representing that Native Americans made the merchandise.  See Indictment ¶ 4, at 2.  According to the Indictment, from approximately 2009, to October, 2015, Sterling Islands, Al-Zuni Global, J. Khalaf, Nader Khalaf, Nashat Khalaf, Mostafa, and Shawar

> knowingly, unlawfully, and willfully combined, conspired, confederated, agreed, and acted interdependently with one another and with others known and unknown to the Grand Jury to commit the offenses of smuggling goods into the United States, contrary to 18 U.S.C. § 545, and violating the Indian Arts and Crafts Act, contrary to 18 U.S.C. § 1159.

Indictment ¶ 5, at 2.

Sterling Islands allegedly purchased and received large shipments of Native American-style jewelry, arts, and crafts from Fashion Accessories and imported them into the United States.  See Indictment ¶ 6a, at 3.  Al-Zuni Global received and distributed wholesale large quantities of the imported merchandise.  See Indictment ¶ 6b, at 3.  The imported merchandise bore no permanent country-of-origin markings, and the Defendants sold the imported merchandise to wholesale and retail customers in New Mexico and elsewhere, including to customers who placed orders to "copy and reproduce jewelry, arts, and crafts made by Indian artists."  Indictment ¶¶ 6c-

e, at 3.  The Defendants provided wholesale customers with Native American-style jewelry, arts, and crafts "with removable stickers indicating the items were made in the Philippines," but not with permanent country-of-origin markings, and the Defendants deceived retail customers by "misrepresenting Native American-style jewelry, arts, and crafts imported from the Philippines as made by Native Americans in the United States."   Indictment ¶¶ 6f-g, at 3.   The Defendants received millions of dollars in revenue from their sales of the imported merchandise.   See Indictment ¶ 6h, at 3.

Regarding the Indictment's Count 1, charging the Defendants with violation of 18 U.S.C. § 371, Conspiracy to Defraud the United States, by committing the offenses of smuggling goods into the United States in violation of 18 U.S.C. § 545 and violating the Indian Arts and Crafts Act contrary to 18 U.S.C. § 1159, the Indictment charges that the Defendants "committed and caused to be committed" several overt acts, which the Indictment's paragraphs 7-31 outline. Indictment ¶¶ 7-31, at 4-7.  On or about August 30, 2009, Shawar signed a check from his store, Bullion Jewelers, to J. Khalaf for $10,000.00.  See Indictment ¶ 8, at 4.  On or about March 16, 2012, Shawar sent Nader Khalaf an email about a jewelry order, in which he asked him, "If I send you some samples do you think you could make them for us in the Philippines?" and told him, "I don't want the guy I get them from to freak" because "they are 'his designs.'"  Indictment ¶ 9, at 4 (internal quotation marks for emphasis and not for quotation).  On or about May 29, 2012, Sterling Islands received from Fashion Accessories a shipment of Native American-style jewelry, including silver bracelets, without any permanent country-of-origin markings, which were "engraved with the letters 'CR.'"  Indictment ¶ 10, at 4.  On or about July 23, 2013, Shawar emailed

- 4 -

Nader Khalaf regarding a jewelry order, and asking Nader Khalaf to "make sure they ship the item with the letters E.Y."  Indictment ¶ 16, at 6.  Then, on or about July 23, 2013, Nader Khalaf emailed Fashion Accessories, stating in the message, "please make but be sure to make initials E.Y.  Not urgent, just send with next shipment."  Indictment ¶ 17, at 5.  Shawar then displayed imported, Native American-style necklaces, rings, and bracelets for sale at Bullion Jewelers, and, on or about August 5, 2014, in Breckenridge, Shawar sold a necklace engraved with the letters "E.Y.," but bearing no permanent country-of-origin markings, to undercover investigators posing as customers.  Indictment ¶¶ 19-20, at 5.  Shawar "falsely stated to the customer, in sum and substance, that 'Edison Yazzie,' a Navajo artist, made the necklace in the United States."  Indictment ¶ 20, at 6.  On the same day, Shawar sold a bracelet lacking permanent country-of-origin markings to undercover investigators posing as customers and falsely stated that a Zuni artist in the United States made the bracelet.  See Indictment ¶ 21, at 6.

Sterling Islands received another shipment from Fashion Accessories on or about July 30, 2012, containing a pendant and ring, both without permanent country-of-origin markings, inside packaging labeled "Al-Zuni Sample."  Indictment ¶ 11, at 4.  On or about August 3, 2012, Mostafa sent a note to Nader Khalaf, requesting that Nader Khalaf ask "Uncle Joe" to make some silver canteens for Al-Zuni Global.  Indictment ¶ 12, at 4.  On or about August 3, 2012, Nader Khalaf sent an email to Fashion Accessories, attaching Mostafa's note requesting production of silver canteens along with a photograph depicting three Native American-style canteens.  See Indictment ¶ 13, at 5.  On or about September 10, 2012, Sterling Islands received a shipment from Fashion Accessories, containing approximately sixty Native American-style canteens lacking permanent

country-of-origin markings. <u>See</u> Indictment ¶ 14, at 5. On or about October 13, 2012, Nader Khalaf emailed Fashion Accessories, attaching photographs pursuant to an email request from J. Khalaf. <u>See</u> Indictment ¶ 15, at 5. Nashat Khalaf signed a check from Al-Zuni Global to Sterling Islands, on or about June 6, 2014, for $96,607.00. <u>See</u> Indictment ¶ 18, at 5. On August 29, 2014, Nashat Khalaf signed a check for $48,940.00 from Al-Zuni Global to Sterling Islands, and on August 22, 2014, signed a check for $70, 219.00 from Al-Zuni Global to Sterling Islands. <u>See</u> Indictment ¶¶ 22-23, at 6. Al-Zuni Global displayed the imported miniature, Navajo-style canteens, lacking permanent country-of-origin markings, for sale in its shop in Gallup. <u>See</u> Indictment ¶ 24, at 6. On November 24, 2014, Al-Zuni Global sold four of the canteens to a customer, falsely stating that they were Navajo-made. <u>See</u> Indictment ¶ 25, at 6. Nashat Khalaf then signed several more checks from Al-Zuni Global to Sterling Islands: (i) on January 22, 2015, for $54,275.00, <u>see</u> Indictment ¶ 26, at 6; (ii) on February 12, 2015, for $90,000.00, <u>see</u> Indictment ¶ 27, at 6; (iii) on July 15, 2015, for $58,166.00, <u>see</u> Indictment ¶ 28, at 6; and (iv) on August 1, 2015, for $62,770.00, <u>see</u> Indictment ¶ 29, at 7. On or about October 2, 2015, Mostafa signed a check for $62,770.00 from Al-Zuni Global to Sterling Islands. <u>See</u> Indictment ¶ 30, at 7. On or about October 28, 2015, Nashat Khalaf "attempted to mislead law enforcement by falsely stating

to federal agents that the designs for [the] imported canteens" came from "jewelry books."

Indictment ¶ 31, at 7.

In Count 2, the Indictment charges that, from approximately August 30, 2009, until

approximately October 28, 2015, Sterling Islands, J. Khalaf, and Nader Khalaf

> did willfully, fraudulently, and knowingly import and bring into the United States certain merchandise, that is Native American-style jewelry, arts, and crafts, contrary to law, in that the merchandise was not indelibly marked with the country of origin by cutting, die-sinking, engraving, stamping, and some other permanent method . . . [i]n violation of 18 U.S.C. § 545 and 18 U.S.C. § 2 and 19 C.F.R. § 134.43.

Indictment ¶ 32, at 7.  In Count 3, the Indictment charges that, from approximately August 3, 2012,

until approximately October 28, 2015, Al-Zuni Global, Nashat Khalaf, and Mostafa

> did willfully, fraudulently, and knowingly receive, conceal, buy, sell, and facilitate the transportation, concealment, and sale of merchandise imported contrary to law, that is Native American-style jewelry, arts, and crafts, after the importation thereof, the defendants then knowing that said merchandise had been imported and brought into the United States contrary to law, in that the merchandise was not indelibly marked with the country of origin by cutting, die-sinking, engraving, stamping, and some other permanent method . . . [i]n violation of 18 U.S.C. § 545 and 18 U.S.C. § 2 and 19 C.F.R. § 134.43.

Indictment ¶ 33, at 7-8.  Counts 4 and 5 are levied against all of the Defendants with the exception

of Shawar (the "Sterling and Al-Zuni Defendants").  See Indictment ¶¶ 34-35, at 8-9.  Count 4

charges that the Sterling and Al-Zuni Defendants

> did knowingly display and offer for sale, and did sell, goods, specifically: Native American-style jewelry, arts, and crafts, in a manner that suggested that the goods were Indian produced, an Indian product, and the product of a particular Indian and Indian tribe, resident within the United States, when in truth and in fact, as defendants there and then well knew and believed, the goods were not Indian

produced, an Indian product, and the product of a particular Indian and Indian tribe . . . [i]n violation of 18 U.S.C. § 1159 and 18 U.S.C. § 2.

Indictment ¶ 34, at 8.  Count 5 charges that the Sterling and Al-Zuni Defendants:

did knowingly display and offer for sale, and did sell for $1000 or more, a good, specifically: Native-American style jewelry, arts, and crafts, in a manner that suggested that the goods were Indian produced, an Indian product, and the product of a particular Indian and Indian tribe, resident within the United States, when in truth and in fact, as defendants there and then well knew and believed, the goods were not Indian produced, an Indian product, and the product of a particular Indian and Indian tribe . . . [i]n violation of 18 U.S.C. § 1159 and 18 U.S.C. § 2.

Indictment ¶ 35, at 8-9.  The Indictment also includes a forfeiture allegation, pursuant to 18 U.S.C. § 981(a)(1)(c) and 28 U.S.C. § 2461.  See Indictment at 9-10.

## PROCEDURAL BACKGROUND

The Defendants filed the Motion, arguing that, under the rule of lenity, 19 C.F.R. § 134.43, a Treasury Department regulation, does not qualify as a law for 18 U.S.C. § 545's purposes, and, that, accordingly, the Court should dismiss entirely Counts 2 and 3 of the Indictment, and should dismiss Count 1 to the extent it is premised on a conspiracy to violate 18 U.S.C. § 545.  See Motion at 1-2.  The United States responded, asking the Court to deny the Motion.  See generally United States Response to Defendants' Motion to Dismiss (Doc. 34), filed March 11, 2019 (Doc. 41)("Response").  The Defendants replied.  See generally Defendants' Reply in Support of Their Rule 12(b) Motion to Dismiss Counts 2 and 3, and to Partially Dismiss Count 1, of the Indictment [Doc. 34], filed March 25, 2019 (Doc. 47)("Reply").

### 1.    The Motion.

The Motion's primary issues are: (i) whether, under 18 U.S.C. § 545, a Treasury Department regulation constitutes a law for the purposes of 18 U.S.C. § 545's "contrary to law"

element, 18 U.S.C. § 545; (ii) whether, if a regulation can constitute a law for the purposes of 18 U.S.C. § 545's contrary-to-law element, 19 C.F.R. § 134.43 constitutes such a law; and (iii) whether the Indictment, in Counts 2 and 3, and in Count 1 to the extent it is based on a conspiracy to violate 18 U.S.C. § 545, fails to state an offense against the Defendants, as rule 12(b)(3)(B)(v) requires.  See Motion at 1-2.

The Defendants argue that 18 U.S.C. § 545 is ambiguous, because the statute's text, structure, history, and purpose do not illuminate whether Congress intended 18 U.S.C. § 545's contrary-to-law element to extend to regulations and, specifically, to regulations providing only civil remedies.  See Motion at 15.  The Defendants argue that it is unclear whether the word law's plain meaning includes regulations or only statutes, so the Court should look to the word's meaning in the legal context, in which "law" is not generally defined to include agency-promulgated regulations.  See Motion at 16.  The Defendants aver that courts split how to resolve the ambiguity related to law's definition for 18 U.S.C. § 545's purposes.  See Motion at 16.  The Defendants contend that only the United States Court of Appeals for the Eleventh Circuit has addressed the question in the context of a regulation providing only civil liability for its violation.  See Motion at 16.  The Defendants aver that the Eleventh Circuit, concluding that § 545 is ambiguous regarding whether, pursuant to § 545, civil regulations may constitute laws, concluded that, in the criminal context, "faced with the rule of lenity, § 545's 'contrary to law' provision does not include such civil regulations."  Motion at 16-17 (quoting 18 U.S.C. § 545).  The Defendants aver that the Eleventh Circuit's decision followed a split between the United States Court of Appeals for the Fourth Circuit and the United States Court of Appeals for the Ninth Circuit.  See Motion at 17.

The Defendants contend that the Ninth Circuit concluded only regulations providing criminal liability for their violation may constitute laws for § 545's purposes, whereas the Fourth Circuit concluded that any regulation with the force and effect of law may constitute a law for § 545's purposes.  See Motion at 17.  The Defendants aver that the Eleventh Circuit declined to follow the Fourth Circuit's broad interpretation because it was "derived from a non-criminal context," and, in a criminal context, the rule of lenity renders the Fourth Circuit's approach untenable.  Motion at 17 (internal quotation marks omitted)(quoting United States v. Izurieta, 710 F.3d 1176, 1181-82 (11th Cir. 2013)("Izurieta")).  The Defendants, in a footnote, advance an argument that the changing composition of the Supreme Court of the United States suggests that Chevron U.S.A. Inc. v. Natural Resources Defense Council, Inc., 467 U.S. 837 (1984)("Chevron"), deference "almost certainly will be reconsidered," and, per the Defendant's prognostication, eliminated in favor of less deference to agency-made regulations -- even civil ones.  See Motion at 17 n.2.

The Defendants argue that 19 C.F.R. § 134.54 is an exclusively civil regulation, because, like the civil regulation at issue in Izurieta, which the Eleventh Circuit concluded was not a law: (i) it contains a contractual liquidated damages term; (ii) Congress and the Treasury Department expressly provided that it is not aimed at punishment; (iii) its text indicates to the average person that liability is strictly civil and monetary, "because it sets forth terms of the contract delineating the obligations of the importer upon a breach of § 134.43's requirements"; and (iv) the regulation

provides violators with an opportunity to correct their violation under administrative supervision. Motion at 19-21.

The Defendants argue that Congress provided fair warning that removal or obfuscation of a legally required country-of-origin marking would result in criminal liability, whereas Congress provided no warning that failing to add a country-of-origin marking would result in criminal liability.  See Motion at 22.  The Defendants argue, therefore, that the rule of lenity counsels that 19 C.F.R.§ 134.43 cannot be a law, because it provides that the penalty for failure to add country-of-origin markings where required is only civil liability: "withholding of the articles until properly marked, administrative supervision of that marking, contractual damages for failure to do so, and an additional duty."  Motion at 23.  The Defendants argue that the canons of statutory construction support their conclusion.  See Motion at 23.   Namely, the Defendants contend that specific provisions prevail over general provisions, and that 19 U.S.C. § 1304, "the enabling statute pursuant to which § 134.43 was promulgated," imposes civil liability for specific conduct, prevailing over the "possible criminal liability for the general importation of 'any merchandise contrary to law,'" which 18 U.S.C. § 545 imposes.  Motion at 23 (quoting 18 U.S.C. § 545).  The Defendants also contend that 19 U.S.C. § 1304 demonstrates that "Congress clearly knew how to, and, indeed, specifically did, subject certain violations of § 1304 and Part 134's marking requirements to criminal liability," but that the "Government doesn't allege Defendants engaged in this criminal activity."  Motion at 24.  The Defendants conclude that, because the charges in Counts 2 and 3, and in Count 1 in part, are based on the assertion that the Defendants' alleged conduct was contrary to law, the Court should dismiss those Counts, because the rule of lenity and

the canons of statutory construction support resolving § 545's ambiguous contrary-to-law language in favor of the Defendants -- in other words, the Court should conclude that 19 C.F.R. § 134.43 cannot be a basis for criminal liability under 18 U.S.C. § 545.  See Motion at 26-27.

      **2.**      **The Response.**

The United States responds that "there is no question" that defendants charged with violating certain federal regulations can act contrary to law within 18 U.S.C. § 545's meaning, when several federal courts have previously concluded that, for 18 U.S.C. § 545's purposes, federal regulations may qualify as laws.  See Response at 2 (citing Izurieta, 710 F.3d at 1184; United States v. Place, 693 F.3d 219, 228-29 (1st Cir. 2012); United States v. Alghazouli, 517 F.3d 1179, 1181 (9th Cir. 2008)("Alghazouli"), and United States v. Mitchell, 39 F.3d 465, 576 (4th Cir. 1994)("Mitchell")).  The United States argues that, contrary to the Defendants' analysis of the meaning of the word "law," the word "law" "is commonly defined to include administrative regulations."  Response at 3 (internal quotation marks omitted)(quoting Mitchell, 39 F.3d at 468). The United States contends that the Defendants, by concluding that a federal regulation may not constitute a law, undercut their own argument to apply the rule of lenity based on 18 U.S.C. § 545's plain language, because the Defendants recognize that one legitimate interpretation of the word "law" includes federal regulations.  See Response at 3.

The United States argues that the Court should look to Chrysler Corp. v. Brown, 441 U.S. 281 (1979)("Chrysler"), and Mitchell, and conclude, based on Chrysler's and Mitchell's guidance, that the Indictment properly charges the Defendants with violating 18 U.S.C. § 545.  See Response

at 3.  The United States urges the Court to adopt the Fourth Circuit's formulation, whereby regulations having the force and effect of law, and passing a three-part test that Chrysler articulates, are "proper predicates for criminal prosecutions under 18 U.S.C. § 545."  Response at 4.  The United States avers that Chrysler's three-part test states that, to be properly promulgated, regulations must: (i) be substantive or legislative rules affecting individual rights and obligations; (ii) arise from a legislative grant of quasi-judicial authority; and (iii) conform with Congressionally imposed procedural requirements such as the Administrative Procedure Act, Pub. L. 79-404, 60 Stat. 237 (1946)("APA")'s notice and comment provisions.  See Response at 3-4.

The United States contends that 19 C.F.R. § 134.43 passes Chrysler's test and meets Mitchell's requirements.  The United States argues that 19 C.F.R. § 134.43 passes the Chrysler test's first part, because

> this regulation is substantive in mandating Native American-style jewelry, arts, and crafts must be "indelibly marked with the country of origin by means of cutting, die-sinking, engraving, stamping, or some other equally permanent method."  This regulation imposes an obligation on importers and subsequent recipients to deal in properly marked goods.  This affects their individual rights with respect to importation and possession.

Response at 4 (quoting 19 C.F.R. § 134.43).  The United States argues that 19 C.F.R. § 134.43 passes the Chrysler test's second requirement and that the Treasury Department promulgated it pursuant to a Congressional grant of quasi-judicial immunity, where it "specifically references 19 U.S.C. § 66, which gives the Secretary of the Treasury the power and authority to 'prescribe . . . rules and regulations . . . relating to raising revenue from imports, or to duties on imports[.]'"  Response at 4 (quoting 19 U.S.C. § 66).  The United States contends that 19

C.F.R. § 134.43 passes the <u>Chrysler</u> test's third requirement, because it

> was promulgated in conformity with congressionally imposed procedural requirements.  The entries from the Federal Register for the amendments to 19 C.F.R. § 134.43 pertaining to Native American-style jewelry (attached as Exhibit 1) and Native American-style arts and crafts (attached as Exhibit 2) show these amendments were adopted following public notice and opportunity for comment.

Response at 4.

The United States argues that the Court should, like the court in <u>Mitchell</u>, decline to apply the rule of lenity, because the Defendants had fair warning as "importers and distributors of Native American-style jewelry, arts, and crafts that their alleged criminal conduct could lead to criminal prosecution under 18 U.S.C. § 545."  Response at 5.  The United States argues that 18 U.S.C. § 545's text alerted the Defendants that they could not import goods or receive imported goods contrary to law, and that, because at least one plain meaning of the word "law" encompasses federal regulations, the Defendants had fair warning that they should consult applicable federal regulations and ensure their businesses' compliance with those regulations.  <u>See</u> Response at 5.  The United States contends that no "other statute or regulation so directly on point" exists such that "it would have confused them into thinking 'contrary to law' meant anything other than importing these goods without indelible markings of their country of origin."  Response at 5 (quoting 18 U.S.C. § 545).  The United States argues, furthermore, that "it is appropriate to presume" Congress adopted the <u>Chrysler</u> and <u>Mitchell</u> test as 18 U.S.C. § 545's criminal liability definition, because Congress amended 18 U.S.C. § 545 in 2006, after <u>Mitchell</u>, and "Congress is presumed to be aware of . . . judicial interpretation of a statute and to adopt that interpretation

when it enacts a statute without change."  Response at 6 (internal quotation marks omitted)(quoting

Lorillard, a Div. of Loew's Theatres, Inc. v. Pons, 434 U.S. 575, 580 (1978)("Lorillard")).

The United States also argues that the Defendants' reliance on Izurieta is misplaced,

because, in Izurieta, the Eleventh Circuit acknowledged that instances exist in which a federal

regulation may constitute a law and provide a proper basis for criminal prosecution.  See Response

at 6-7.  The United States contends that, in Izurieta, the Eleventh Circuit's conclusion that the

regulation at issue did not constitute a law was "not because it has no effect as a law but because

that law is civil only, *and in particular reflects contractual requirements*."  Response at 7

(emphasis added by Response)(quoting Izurieta, 710 F.3d at 1184).  The United States argues that

Izurieta did not resolve whether federal regulations unrelated to contractual matters may support

criminal prosecutions.  See Response at 7.

The United States argues that, to argue that Congress' failure to establish criminal penalties

within 19 U.S.C. § 1304 indicates Congress' intent to preclude criminal prosecution for violations

of 19 C.F.R. § 134.43, the Defendants "would need to show that Congress repealed 18

U.S.C. § 545 by implication when it made the relevant amendments to 19 U.S.C. § 1304," because

of the following timeline of the enactment of the states and regulations at issue:

> Congress originally enacted 18 U.S.C. § 545 in 1948.  The Department of the
> Treasury amended 19 C.F.R. § 134.43 to add the provision about Native American-
> style jewelry in 1989 and the provision about Native American-style arts and crafts
> in 1990.  Congress originally enacted 19 U.S.C. § 1304 in 1930 and amended it
> most recently in 2016.

Response at 8.  The United States argues that there are compelling reasons to conclude that

Congress intended for 18 U.S.C. § 545, 19 U.S.C. § 1304, and 19 C.F.R. § 134.43 to complement

each other, because, together, they create an effective scheme of punishment to deter conduct that Native American handicraft industry representatives reported of jewelry and craft dealers, and wholesalers, removing country-of-origin labels from imported goods and selling them as authentic Native American products. See Response at 8. The United States argues that "[o]nly the prospect of meaningful criminal punishment . . . would discourage such an offender from breaking the 'law,' and, therefore, it is fair to conclude that Congress intended to criminally punish conduct such as that which the Indictment's Counts 1, 2, and 3 describe." Response at 9 (quoting 18 U.S.C. § 545).

    **3.**     **The Reply.**

      The Defendants argue that, since the Fourth Circuit decided Mitchell, no other Court of Appeals has adopted the "force and effect of law" test for determining when a regulation constitutes a law for 18 U.S.C. § 545's purposes. Reply at 2 (internal quotation marks omitted)(quoting Mitchell, 39 F.3d at 468). The Defendants argue that, rather than follow the Fourth Circuit's approach, the Court should consider that Alghazouli accords with the United States Court of Appeals for the Tenth Circuit's precedent in United States v. Baldwin, 745 F.3d 1027 (10th Cir. 2014)(Gorsuch, J.)("Baldwin"), in which the Tenth Circuit "concluded that a regulation may be a basis for imposition of criminal penalties, but only if Congress delegates explicitly to the agency the ability to impose criminal penalties." Reply at 2. The Defendants argue that the Court should disregard Mitchell, because the Fourth Circuit also did not consider canons of statutory construction, and because 19 C.F.R. § 134.43's surrounding statutory and regulatory framework indicate that it is exclusively civil. See Reply at 2-3. The Defendants argue

that, in 19 U.S.C. § 1304 and in 19 U.S.C. § 66, Congress included no delegation to an agency to prescribe criminal penalties for violating country-of-origin marking regulations.  See Reply at 6. The Defendants also argue that, whereas in Baldwin, "agency-imposed criminal penalties were included within the same subpart as the regulations on which the charges were based," 19 C.F.R. § 134 imposes criminal penalties for obfuscating or removing a country-of-origin marking but imposes only civil remedies for failure to add a country-of-origin marking.  Reply at 8.

The Defendants argue that the Mitchell majority[1] improperly inquired -- contrary to statutory construction canons, the rule of lenity, and the vagueness doctrine -- whether Congress clearly intended 18 U.S.C. § 545's contrary-to-law provision should be limited to statutory violations, as opposed to inquiring whether contrary to law may objectively be read to include only statutory violations.  See Reply at 11-12.  The Defendants also note that the Mitchell dissent,[2] which the Defendants assert accords with Ninth and Tenth Circuit precedent, suggests that the cases on which the majority relied constitute further evidence of contrary-to-law's phrasal ambiguity, because the cited precedent does not provide "definitive guidance in the choice between

---

[1]The Honorable William Walter Wilkins, then-United States Circuit Judge for the United States Court of Appeals for the Fourth Circuit wrote the majority opinion, in which the Honorable Karen J. Williams, then-United States Circuit Judge for the United States Court of Appeals for the Fourth Circuit, joined.  See Mitchell, 39 F.3d at 467.

[2]The Honorable Francis Dominic Murnaghan Jr., wrote a dissenting opinion and, concluding that § 545's meaning is grievously ambiguous, advocated for applying the rule of lenity in Mitchell's favor.  See Mitchell, 39 F.3d at 476-79.

'contrary to law' on the one hand and 'law and regulations' on the other."  Reply at 12 (quoting Mitchell, 39 F.3d at 478 (Murnaghan, J., dissenting).

The Defendants next argue that 19 C.F.R. § 134.43's surrounding statutory and regulatory framework create an "exclusively civil remedial scheme," composed of statutes and regulations including 19 U.S.C. § 1484, Customs Form 4647, 19 C.F.R. § 134.51-134, and 18 U.S.C. § 1001. Reply at 15-19.  The Defendants argue that they could not have had fair warning that their conduct could lead to criminal prosecution, where 19 U.S.C. § 66, 19 U.S.C. § 1304, and 19 C.F.R. Part 134 prescribe exclusively civil remedies for their conduct.  See Reply at 20.  The Defendants also note that the United States cites no authority in support of its proposition that Congress intended for 18 U.S.C. § 545, 19 U.S.C. § 1304, and 19 C.F.R. § 134.43 to complement each other.  See Reply at 21.

## LAW REGARDING CONSTRUCTION OF FEDERAL CRIMINAL STATUTES

"The Supreme Court has long recognized a 'presumption' grounded in our common law tradition that a mens rea requirement attaches to 'each of the statutory elements that criminalize otherwise innocent conduct.'"  United States v. Games-Perez, 695 F.3d 1104, 1119 (10th Cir. 2012)(quoting United States v. X-Citement Video, Inc., 513 U.S. 64, 72 (1994), and citing Staples v. United States, 511 U.S. 600, 610-12 (1994); United States v. U.S. Gypsum Co., 438 U.S. 422, 437-38 (1978); Morissette v. United States, 342 U.S. 246, 250-53 (1952)).  "To be sure, a longstanding precept of criminal law is that, except in the case of 'public welfare' or 'regulatory' offenses, criminal statutory provisions should not be read to impose strict liability and should instead be construed as carrying a mens rea element when they are silent."  United States v. Ray,

704 F.3d 1307, 1312 (10th Cir. 2013)(quoting Staples v. United States, 511 U.S. at 605-06).

Observance of this principle helps to avoid "criminaliz[ing] a broad range of apparently innocent

conduct." Staples v. United States, 511 U.S. at 610.  See United States v. Apollo Energies, Inc.,

611 F.3d 679, 685-86 (10th Cir. 2010)("The Court in Staples held that strict liability crimes

'generally are disfavored,' and suggested some indicia of congressional intent, 'express or

implied,' is necessary before courts can dispense with the traditional mens rea requirement."

(quoting Staples v. United States, 511 U.S. at 606)).  The Tenth Circuit follows "a common-

law presumption against penalizing defendants who have 'knowledge only of traditionally lawful

conduct.'"  United States v. Saavedra, 523 F.3d 1287, 1289 (10th Cir. 2008)(quoting Staples v.

United States, 511 U.S. at 617).   "When interpreting a criminal statute, 'it must be strictly

construed, and any ambiguity must be resolved in favor of lenity.'"  United States v. Garcia, 939

F. Supp. 2d 1216, 1227 (D.N.M. 2013)(Browning, J.)(quoting Scheidler v. Nat'l Org. for Women,

Inc., 537 U.S. 393, 408 (2003)).  See United States v. Peshlakai, 618 F. Supp. 2d 1295, 1320

(D.N.M. 2007)(Browning J.)("[T]he rule of lenity suggests that the Court employ the more narrow

interpretation.")(citing  United States v. Timbers, 232 F. App'x 820, 823 (10th Cir.

2007)(unpublished)[3]("It is true, when there are two rational readings of the law, one harsher than

_____

[3]United States v. Timbers is an unpublished opinion, but the Court can rely on an unpublished opinion to the extent its reasoned analysis is persuasive in the case before it. See 10th Cir. R. 32.1(A) ("Unpublished decisions are not precedential, but may be cited for their persuasive value").  The Tenth Circuit has stated:

> In this circuit, unpublished orders are not binding precedent, . . . and we have generally determined that citation to unpublished opinions is not favored. However, if an unpublished opinion or order and judgment has persuasive value

the other, the courts are to choose the harsher only when Congress has made its intentions clear.")).

The rule of lenity's application, however, "'is limited to cases where, after reviewing all available

relevant materials, the court is still left with an ambiguous statute.'"  United States v. Fillman, 162

F.3d 1055, 1058 (10th Cir. 1998)(quoting United States v. Wilson, 10 F.3d 734, 736 (10th Cir.

1993)).

"[D]etermining the mental state required for commission of a federal crime requires

'construction of the statute and . . . inference of the intent of Congress.'"  Staples v. United States,

511 U.S. at 605 (citation omitted).  The Supreme Court has stated that, normally, "a phrase in a

criminal statute that introduces the elements of a crime with the word 'knowingly'" applies "to

each element" in the statute.  Flores-Figueroa v. United States, 556 U.S. 646, 652 (2009)(quoting

United States v. X-Citement Video, Inc., 513 U.S. at 79).  For example, in Liparota v. United

States, 471 U.S. 419 (1985), the Supreme Court construed a federal food stamp statute that said

"whoever knowingly uses, transfers, acquires, alters, or possesses coupons or authorization cards

in any manner not authorized by [law]" is subject to imprisonment, to criminalize only a person

who both knowingly "uses, transfers, acquires, alters, or possesses," and knowingly does so "in

any manner not authorized by [law]."  471 U.S. at 423.  The Supreme Court construed the statute

---

with respect to a material issue in a case and would assist the court in its disposition,
we allow a citation to that decision.

United States v. Austin, 426 F.3d 1266, 1274 (10th Cir. 2005)(citations omitted).  The Court
concludes that United States v. Timbers has persuasive value as to material issues and will assist
the Court in its preparation of this Memorandum Opinion and Order.

in this manner, notwithstanding the general premise that "ignorance of the law is no excuse." Flores-Figueroa v. United States, 556 U.S. at 652 (citing Liparota v. United States, 471 U.S. at 433). The Supreme Court explained that to not require a person's knowledge that the law does not authorize his or her use, transfer, acquisition, alteration, or possession would criminalize a wide swath of innocent conduct, including, for example, imposing criminal liability upon a person for that person's inadvertent receipt of food stamps through administrative error. See Liparota v. United States, 471 U.S. at 426-27. The Supreme Court additionally explained that requiring a mens rea of illegality is consistent with its "longstanding recognition of the principle that 'ambiguity concerning the ambit of criminal statutes should be resolved in favor of lenity.'" Liparota v. United States, 471 U.S. at 427 (quoting Rewis v. United States, 401 U.S. 808, 812 (1971)).

The Supreme Court has applied these principles to interpret 18 U.S.C. § 1028A, which criminalizes aggravated identity theft. See Flores-Figueroa v. United States, 556 U.S. at 647-48. The statute reads: "Whoever, during and in relation to any felony violation enumerated in subsection (c), knowingly transfers, possesses, or uses, without lawful authority, a means of identification of another person shall, in addition to the punishment provided for such felony, be sentenced to a term of imprisonment of 2 years." 18 U.S.C. § 1028A(a)(1). The Supreme Court interpreted 18 U.S.C. § 1028A to require the United States to prove that the defendant "knew that the 'means of identification' he or she unlawfully transferred, possessed, or used, in fact, belonged to 'another person.'" Flores-Figueroa v. United States, 556 U.S. at 647 (emphasis in original)(quoting 18 U.S.C. § 1028A(a)(1)). The Supreme Court reasoned that, "[a]s a matter of

- 21 -

ordinary English grammar, it seems natural to read the statute's word 'knowingly' as applying to all the subsequently listed elements of the crime."   556 U.S. at 650 (quoting 18 U.S.C. § 1028A(a)(1)).  Although the United States contended that the statute did not require it to prove that the defendant knew that the identification he possessed belonged to another person, the Supreme Court explained that

> the Government has not provided us with a single example of a sentence that, when used in typical fashion, would lead the hearer to believe that the word "knowingly" modifies only a transitive verb without the full object, i.e., that it leaves the hearer gravely uncertain about the subject's state of mind in respect to the full object of the transitive verb in the sentence.

Flores-Figueroa v. United States, 556 U.S. at 651-52 (quoting 18 U.S.C. § 1028A(a)(1)).  The Supreme Court noted that its interpretation of 18 U.S.C. § 1028A(a)(1) would create practical enforcement problems, because proving a defendant's knowledge that a means of identification belongs to another person is more difficult than proving a defendant's knowledge of possession without lawful authority.  See Flores-Figueroa v. United States, 556 U.S. at 655-56.  The Supreme Court stated, however, that, "had Congress placed conclusive weight upon practical enforcement, the statute would likely not read the way it now reads."  556 U.S. at 656-57.  The Supreme Court, thus, held that the United States must prove that the defendant had knowledge that "the means of identification at issue belonged to another person" to convict under 18 U.S.C. § 1028A(a)(1). Flores-Figueroa v. United States, 556 U.S. at 657.

Similarly, in United States v. X-Citement Video, Inc., the Supreme Court interpreted 18 U.S.C. § 2252 to require a defendant's knowledge of the subparts of the statute, which

criminalizes certain activities relating to material involving the sexual exploitation of minors and reads:

> **(a)** Any person who --
>
> > **(1)** knowingly transports or ships using any means or facility of interstate or foreign commerce or in or affecting interstate or foreign commerce by any means including by computer or mails, any visual depiction, if --
> >
> > > **(A)** the producing of such visual depiction involves the use of a minor engaging in sexually explicit conduct; and
> > >
> > > **(B)** such visual depiction is of such conduct;
> >
> > **(2)** knowingly receives, or distributes, any visual depiction using any means or facility of interstate or foreign commerce or that has been mailed, or has been shipped or transported in or affecting interstate or foreign commerce, or which contains materials which have been mailed or so shipped or transported, by any means including by computer, or knowingly reproduces any visual depiction for distribution using any means or facility of interstate or foreign commerce or in or affecting interstate or foreign commerce or through the mails, if --
> >
> > > **(A)** the producing of such visual depiction involves the use of a minor engaging in sexually explicit conduct; and
> > >
> > > **(B)** such visual depiction is of such conduct;

United States v. X-Citement Video, Inc., 513 U.S. at 67-68 (quoting 18 U.S.C. § 2252(a)(1)-(2)). The Supreme Court rejected what it determined was the most grammatically correct reading of the statute, which would apply "knowingly" only to the relevant verbs in subsections (1) and (2), and not to subparts (A) and (B).  United States v. X-Citement Video, Inc., 513 U.S. at 69.  The Supreme Court reasoned that such a reading would create an illogical distinction between "somebody who knowingly transported a particular package of film whose contents were unknown to him, and

someone who unknowingly transported that package." United States v. X-Citement Video, Inc., 513 U.S. at 69. The Supreme Court noted its "reluctance to simply follow the most grammatical reading of the statute is heightened by our cases interpreting criminal statutes to include broadly applicable scienter requirements, even where the statute by its terms does not contain them." United States v. X-Citement Video, Inc., 513 U.S. at 70 (citing Morissette v. United States, 513 U.S. at 70). The Supreme Court also explained that interpreting the statute as "bereft of a scienter requirement as to the age of the performers would raise serious constitutional doubts" and concluded that it was incumbent upon the Supreme Court to "read the statute to eliminate those doubts so long as such a reading is not plainly contrary to the intent of Congress." United States v. X-Citement Video, Inc., 513 U.S. at 78. For these reasons, the Supreme Court concluded that "the term 'knowingly' in § 2252 extends both to the sexually explicit nature of the material and to the age of the performers." United States v. X-Citement Video, Inc., 513 U.S. at 78.

## ANALYSIS

The Court concludes that Treasury Department regulation 19 C.F.R § 134.43 constitutes a law for 18 U.S.C. § 545's "contrary to law" provision's purposes. 18 U.S.C. § 545. The Court also concludes, accordingly, that the Indictment's Counts 2 and 3, and Count 1 to the extent it is based on a conspiracy to violate 18 U.S.C. § 545, state an offense against the Defendants, as rule 12(b)(3)(B)(v) requires. The Court denies the Motion.

I.    **A TREASURY DEPARTMENT REGULATION CONSTITUTES A LAW FOR 18 U.S.C. § 545's PURPOSES.**

The Defendants argue that 18 U.S.C. § 545's text, structure, history, and purpose do not illuminate whether Congress intended its contrary-to-law provision to extend to regulations and, specifically, to regulations providing only civil remedies.  See Motion at 15.  The Defendants contend that Courts of Appeals are split how to resolve 18 U.S.C. § 545's linguistic ambiguity and that only the Eleventh Circuit has addressed the question in the context of a civil regulation, so the Court should follow the Eleventh Circuit's approach and apply the rule of lenity, compelling an interpretation whereby regulations cannot constitute laws under 18 U.S.C. § 545's contrary-to-law provision.  See Motion at 16.  The United States urges the Court to adopt the Fourth Circuit's formulation instead, whereby regulations having the force and effect of law and passing a three-part test which Chrysler articulates, are "proper predicates for criminal prosecutions under 18 U.S.C. § 545."  Response at 4.  Congress' smuggling statute, 18 U.S.C. § 545, states:

> Whoever knowingly and willfully, with intent to defraud the United States, smuggles or clandestinely introduces or attempts to smuggle or clandestinely introduce into the United States any merchandise which should have been invoiced, or makes out or passes, or attempts to pass, through the customhouse any false, forged, or fraudulent invoice, or other document or paper; or

> Whoever fraudulently or knowingly imports or brings into the United States, any merchandise contrary to law, or receives, conceals, buys, sells, or in any manner facilitates the transportation, concealment, or sale of such merchandise after importation, knowing the same to have been imported or brought into the United States contrary to law --

> Shall be fined under this title or imprisoned not more than 20 years, or both.

> Proof of defendant's possession of such goods, unless explained to the satisfaction of the jury, shall be deemed evidence sufficient to authorize conviction

for violation of this section.

Merchandise introduced into the United States in violation of this section, or the value thereof, to be recovered from any person described in the first or second paragraph of this section, shall be forfeited to the United States.

The term "United States", as used in this section, shall not include the Virgin Islands, American Samoa, Wake Island, Midway Islands, Kingman Reef, Johnston Island, or Guam.

18 U.S.C. § 545.

### A.   COURTS OF APPEALS ARE SPLIT WHICH, IF ANY, REGULATIONS CONSTITUTE LAWS FOR 18 U.S.C. § 545's CONTRARY-TO-LAW PROVISION'S PURPOSES.

Although 18 U.S.C. § 545 contains the phrase "contrary to law" in two places, it does not define the term.  18 U.S.C. § 545.  The Fourth, Ninth, and Eleventh Circuits have split whether regulations constitute laws for the purposes of 18 U.S.C. § 545's "contrary to law" requirement. The Tenth Circuit has not reached the issue.

### i.   The Fourth Circuit's Force-and-Effect Approach.

In 1994, the Fourth Circuit held that "the 'contrary to law' provision of § 545 encompasses substantive or legislative-type regulations that have the force and effect of law."  United States v. Mitchell, 39 F.3d at 476 (quoting 18 U.S.C. § 545).  Beginning with the statute's language, the Fourth Circuit concluded that the word "law" is "commonly defined to include administrative regulations."  39 F.3d at 468 (citing Black's Law Dictionary 796 (5th ed. 1979);[4] The Random

---

[4]Black's Law Dictionary's fifth edition defines "law" as follows:

That which is laid down, ordained, or established.  A rule or method according to which phenomena or actions co-exist or follow each other.  Law, in its generic sense, is a body of rules of action or conduct prescribed by controlling

- 26 -

authority, and having binding legal force. United States Fidelity and Guaranty Co. v. Guenther, 281 U.S. 34, 50 S.Ct. 165, 74 L.Ed. 683. That which must be obeyed and followed by citizens subject to sanctions or legal consequences is a law. Law is a solemn expression of the will of the supreme power of the State. Calif. Civil Code, § 22.1.

In old English jurisprudence, "law" is used to signify an oath, or the privilege of being sworn; as in the phrases "to wage one's law," "to lose one's law."

The term is also used in opposition to "fact." Thus questions of law are to be decided by the court, while it is the province of the jury to resolve questions of fact.

The word may mean or embrace: body of principles, standards and rules promulgated by government, State ex rel. Conway v. Superior Court within and for Greenlee County, 60 Ariz. 69, 131 P.2d 983, 986; command which obliges a person or persons and obliges generally to acts or forebearances of a class; constitution or constitutional provision, Boston Elevated Ry. Co. v. Commonwealth, 310 Mass. 528, 39 N.E.2d 87, 109; Wickham v. Grand River Dam Authority, 189 Okl. 540, 118 P.2d 640, 643; county ordinance, People v. Ziady, 8 Cal.2d 149, 64 P.2d 425, 430; distinct and complete act of positive law; doctrine or procedure of the common law, from which equity is a departure; enrolled bill attested by presiding officers of two branches of General Assembly, Shannon v. Dean, 279 Ky. 279, 130 S.W.2d 812, 815; general rule of human action, taking cognizance only of external acts, enforced by determinate authority, which authority is human, and among human authorities is that which is paramount in a political society; grant by Legislature, City of Los Angeles v. Pacific Land Corporation, 41 Cal. App. 2d 223, 106 P.2d 242, 244; **administrative agency rules and regulations**, Columbia Broadcasting System v. United States, 316 U.S. 407, 62 S.Ct. 1194, 1200, 86 L.Ed. 1563; judicial decisions, judgments or decrees, West v. American Telephone & Telegraph Co., 311 U.S. 223, 61 S.Ct. 179, 183, 85 L.Ed. 139; Miller v. Huntington & Ohio Bridge Co., 123 W.Va. 320, 15 S.E.2d 687, 692; U.S. v. Pendergast, D.C. Mo., 35 F. Supp. 593, 599; Monteith Bros. Co. v. U.S., D.C. Ind., 48 F. Supp. 210, 211; law of the state; legislation by initiative method, Opinion of the Justices, 309 Mass. 676, 35 N.E.2d 676, 680; local rules of decision, National Fruit Product Co. v. Dwinell-Wright Co., D.C. Mass., 47 F. Supp. 499, 502; long-established local custom which has the force of law, Dubois v. Hepburn, 35 U.S. (10 Pet.) 1, 9 L.Ed. 325; Bush v. Brenner, D.C. Minn., 29 F.2d 844, 845; municipal ordinance; prescribed rules of action or conduct, U.S. Fidelity & Guaranty Co. v. Guenther, 281 U.S. 34, 50 S.Ct. 165, 166, 74 L.Ed. 683; proclamation of Governor, Williams v. State, 146 Tex. Cr. R. 430, 176 S.W.2d 177, 184; resolution passed by Legislature and approved by Governor, City of Bangor v. Inhabitants of Etna, 140 Me. 85, 34 A.2d 205, 208;

House College Dictionary 759 (rev. ed. 1980)).  The Fourth Circuit noted that, in "concluding that

the word 'law' in the 'authorized by law' provision of 18 U.S.C.A. § 1905[5] . . . included

> revised statutes, W.R. McCullough Life Ins. Co. v. Armstrong, Tex. Civ. App., 158
> S.W.2d 585, 586; rule of civil conduct commanding what is right and prohibiting
> what is wrong, Rich Hill Coal Co. v. Bashore, 334 Pa. 449, 7 A.2d 302, 312; City
> of Bangor v. Inhabitants of Etna, 140 Me. 85, 34 A.2d 205, 208; rule of civil
> conduct prescribed by the supreme power in a state, City of Bangor v. Inhabitants
> of Etna, 140 Me. 85, 34 A.2d 205, 208; rule of conduct prescribed by lawmaking
> power of state, Board of Education of Union Free School Dist. No. Six of Town of
> Greenburgh v. Town of Greenburgh, 277 N.Y. 193, 13 N.E.2d 768, 770; rules of
> court, Department of Finance v. Sheldon, 381 Ill. 256, 44 N.E.2d 863, 864;
> Goldston v. Karukas, 180 Md. 232, 23 A.2d 691, 692; State ex rel. Conway v.
> Superior Court within and for Greenlee County, 60 Ariz. 69, 131 P.2d 983, 986;
> rules of decision commonly accepted and acted upon by bar and inferior courts,
> West v. American Telephone & Telegraph Co., Ohio, 311 U.S. 223, 61 S.Ct. 179,
> 185, 85 L.Ed. 139; rules promulgated by government, State ex rel. Conway v.
> Superior Court within and for Greenlee County, 60 Ariz. 69, 131 P.2d 983, 986;
> science or system of principles or rules of human conduct; **Secretary of the
> Treasury regulations**, In re Deyo's Estate, 180 Misc. 32, 42 N.Y.S.2d 379, 386;
> statute laws as construed by highest courts of state, National City Bank v. National
> Sec. Co., C.C.A. Tenn., 58 F.2d 7, 9; statute or enactment of legislative body, Shute
> v. Frohmiller, 53 Ariz. 483, 90 P.2d 998, 1001; State ex rel. McKittrick v. Missouri
> Public Service Commission, 252 Mo. 29, 175 S.W.2d 857, 861; United States law,
> U.S. v. Wagner, C.C.A. Cal., 93 F.2d 77, 79; War Department regulations, Standard
> Oil Co. of California v. Johnson, Cal., 316 U.S. 481, 62 S.Ct. 1168, 1169, 86 L.Ed.
> 1611.
>
> A concurrent or joint resolution of legislature is not "a law", Koenig v.
> Flynn, 258 N.Y. 292, 179 N.E. 705, 707; Ward v. State, 176 Okl. 368, 56 P.2d 136,
> 137; a resolution of the house of representatives is not a "law", State ex rel. Todd
> v. Yelle, 7 Wash.2d 443, 110 P.2d 162, 165; an unconstitutional statute is not a
> "law", Flournoy v. First Nat. Bank of Shreveport, 197 La. 1067, 3 So.2d 244, 248.

Law, Black's Law Dictionary 795-96 (5th ed. 1979)(emphasis added).

> [5]The version of 18 U.S.C. § 1905, known as the Trade Secrets Act, in effect in 1979
> provided:
>
>> "Whoever, being an officer or employee of the United States or of any

administrative regulations," the Honorable William H. Rehnquist, then-Associate Justice of the

Supreme Court of the United States, observed that the doctrine that substantive agency regulations

have the force and effect of law is so well-established that to narrow the word "law" to exclude

substantive regulations would require a clear showing of contrary legislative intent:

> "It has been established in a variety of contexts that properly promulgated, substantive agency regulations have the 'force and effect of law.'  This doctrine is so well established that agency regulations implementing federal statutes have been held to pre-empt state law under the Supremacy Clause.  It would therefore take a clear showing of contrary legislative intent before the phrase 'authorized by law' in § 1905 could be held to have a narrower ambit than the traditional understanding."

Mitchell, 39 F.3d at 468 (first quoting 18 U.S.C. § 1905 and then quoting Chrysler, 441 U.S. at

295-96 (footnotes omitted)).   The Fourth Circuit concluded that the statutory phrase's clear

meaning is unambiguous, and that it controls "unless the legislative history demonstrates that

Congress clearly intended a contrary meaning."  Mitchell, 39 F.3d at 468-69 (citing Reves v. Ernst

---

> department or agency thereof, publishes, divulges, discloses, or makes known in any manner or to any extent not **authorized by law** any information coming to him in the course of his employment or official duties or by reason of any examination or investigation made by, or return, report or record made to or filed with, such department or agency or officer or employee thereof, which information concerns or relates to the trade secrets, processes, operations, style of work, or apparatus, or to the identity, confidential statistical data, amount or source of any income, profits, losses, or expenditures of any person, firm, partnership, corporation, or association; or permits any income return or copy thereof or any book containing any abstract or particulars thereof to be seen or examined by any person except as provided by law; shall be fined not more than $1,000, or imprisoned not more than one year, or both; and shall be removed from office or employment."

Chrysler, 441 U.S. at 294-95 (emphasis added)(quoting 18 U.S.C. § 1905).

& Young, 507 U.S. 170, 177 (1993)).  See Mitchell, 39 F.3d at 468 ("Thus, the plain meaning of 'law' includes regulations having the force and effect of law."  (quoting 18 U.S.C. § 545)).

Turning to the legislative history, the Fourth Circuit concluded that its review of the available history "disclose[d] nothing to indicate that Congress clearly intended for the 'contrary to law' provision to be limited to statutory violations."  Mitchell, 39 F.3d at 469 (quoting 18 U.S.C. § 545).  The Fourth Circuit cited to Maryland Casualty Co. v. United States, 251 U.S. 342 (1920), in which the Supreme Court concluded that the United States Court of Claims improperly rejected claimed deductions of reserves which state insurance department rules and regulations required, and only permitted deductions of reserves which express statutory provisions required. See 251 U.S. at 349.  The Supreme Court stated:

> It is settled by many recent decisions of this court that a regulation by a department of government, addressed to and reasonably adapted to the enforcement of an act of Congress, the administration of which is confided to such department, has the force and effect of law if it be not in conflict with express statutory provision.

251 U.S. at 349.  The Fourth Circuit reasoned that Maryland Casualty Co. v. United States settled that the word law included substantive regulations with the force and effect of law.  See Mitchell, 39 F.3d at 469.  The Fourth Circuit determined that, because Congress reenacted § 545's "contrary to law" provision in 1922 and in 1930, after the Supreme Court decided Maryland Casualty Co. v. United States, Congress reenacted the provision "with knowledge that [it] had been interpreted to include regulations having the force and effect of law," and, therefore, the Fourth Circuit could not "conclude that Congress evinced a clear intent that § 545 does not encompass administrative regulations."  Mitchell, 39 F.3d at 469 (citing Lorillard, a Div. of Loew's Theatres, Inc. v. Pons,

434 U.S. at 580 ("Congress is presumed to be aware of . . . judicial interpretation of a statute and to adopt that interpretation when it re-enacts a statute without change." (citations omitted))).  See Fordney-McCumber Tariff, ch. 356, § 593, [6] 42 Stat. 858, 982 (1922)("Tariff Act of 1922");[7] Smoot-Hawley Tariff Act, ch. 497, § 593, 46 Stat. 590, 751 (1930)("Tariff Act of 1930").[8] The

---

[6]Section 593 was later codified as 18 U.S.C. § 545.  See Act of June 25, 1948, ch. 645, § 545, 62 Stat. 683, 716 (1948).

[7]The smuggling provision in the Tariff Act of 1922 reads for the most part like the current version of the smuggling statute in 18 U.S.C. § 545, but mentioned the phrase "contrary to law" only in one instance.  Section 593 of the Tariff Act of 1922 reads as follows:

> (a) If any person knowingly and willingly, with intent to defraud the revenue of the United States, smuggles, or clandestinely introduces, into the United States any merchandise which should have been invoiced, or makes out or passes, or attempts to pass, through the customhouse any false, forged, or fraudulent invoice, every such person, his, her, or their aiders and abettors, shall be deemed guilty of a misdemeanor, and on conviction thereof shall be fined in any sum not exceeding $5,000, or imprisoned for any term of time not exceeding two years, or both, at the discretion of the court.

> (b) If any person fraudulently, or knowingly imports or brings into the United States, or assists in so doing, any merchandise, contrary to law, or receives, conceals, buys, sells, or in any manner facilitates the transportation, concealment, or sale of such merchandise after importation, knowing the same to have been imported or brought into the United States **contrary to law**, such merchandise shall be forfeited and the offender shall be fined in any sum not exceeding $5,000 nor less than $50, or be imprisoned for any time not exceeding two years, or both. Whenever, on trial for a violation of this section, the defendant is shown to have or to have had possession of such goods, such possession shall be deemed evidence sufficient to authorize conviction, unless the defendant shall explain the possession to the satisfaction of the jury.

Tariff Act of 1922, ch. 356, § 593, 42 Stat. at 982 (emphasis added).

[8]The smuggling provision in the Tariff Act of 1930 reads for the most part like the current version of the smuggling statute, in 18 U.S.C. § 545, and its contrary-to-law provisions are

Fourth Circuit determined that the "contrary to law" provision's meaning is unambiguous, and recognized that, had the court identified "grievous ambiguity, or uncertainty," Chapman v. United States, 500 U.S. 453, 463 (1991), after examining the statute's language, structure, and legislative history, the court would have applied the rule of lenity, see 39 F.3d at 470.

### ii.   The Ninth Circuit's Criminally-Punishable Approach.

The Ninth Circuit, on the other hand, adopted a narrower reading of 18 U.S.C. § 545's "contrary to law" provision. 18 U.S.C. § 545. See Alghazouli, 517 F.3d at 1183, 1187. The Ninth

---

identical. Section 593 of the Tariff Act of 1930 reads as follows:

> (a)   FRAUD ON REVENUE. -- If any person knowingly and willfully, with intent to defraud the revenue of the United States, smuggles, or clandestinely introduces into the United States any merchandise which should have been invoiced, or makes out or passes, or attempts to pass, through the customhouse any false, forged, or fraudulent invoice, or other document or paper, every such person, his, her, or their aiders and abetters, shall be deemed guilty of a misdemeanor, and on conviction thereof shall be fined in any sum not exceeding $5,000, or imprisoned for any term of time not exceeding two years, or both, at the discretion of the court.

> (b)   IMPORTATION CONTRARY TO LAW. -- If any person fraudulently or knowingly imports or brings into the United States, or assists in so doing, any merchandise **contrary to law**, or receives, conceals, buys, sells, or in any manner facilitates the transportation, concealment, or sale of such merchandise after importation, knowing the same to have been imported or brought into the United States **contrary to law**, such merchandise shall be forfeited and the offender shall be fined in any sum not exceeding $5,000 nor less than $50, or be imprisoned for any time not exceeding two years, or both.

> (c)   PRESUMPTIONS. -- Whenever, on trial for a violation of this section, the defendant is shown to have or to have had possession of such goods, such possession shall be deemed evidence sufficient to authorize conviction, unless the defendant shall explain the possession to the satisfaction of the jury.

Tariff Act of 1930, ch. 497, § 593, 46 Stat. at 751 (emphasis added).

Circuit concluded that "Congress intended the term 'law' in § 545 to include a regulation when, but only when, a statute (a 'law') specifies that a violation of that regulation constitutes a crime." Alghazouli, 517 F.3d at 1183.  The Ninth Circuit traversed the same interpretive route as the Fourth Circuit, analyzing law's plain meaning and 18 U.S.C. § 545's legislative history, and completed a lengthier historical analysis than the Fourth Circuit underwent.  See Alghazouli, 517 F.3d at 1184-87.

Whereas the Fourth Circuit concluded that law's plain meaning is unambiguously inclusive of administrative regulations having law's force and effect, the Ninth Circuit concluded that the term law "does not have a plain meaning that necessarily includes a 'regulation.'"  Alghazouli, 517 F.3d at 1184 (internal quotation marks in Alghazouli for emphasis and not for quotation). Whereas the Fourth Circuit consulted Black's Law Dictionary's fifth edition, the Ninth Circuit, which interpreted 18 U.S.C. § 545's "contrary to law" provision fourteen years after the Fourth Circuit interpreted the same provision, consulting Black's Law Dictionary's eighth edition, which was published twenty-five years after the fifth edition's publication, and which provides a significantly altered definition for the term "law."  See Alghazouli, 517 F.3d at 1184 (quoting Law, Black's Law Dictionary (8th ed. 2004)).[9]  The Ninth Circuit asserted that "[d]efinitions in earlier

---

[9]Black's Law Dictionary's eighth edition defines law as follows:

1.  The regime that orders human activities and relations through systematic application of the force of politically organized society, or through social pressure, backed by force, in such a society; the legal system <respect and obey the law>. 2.  **The aggregate of legislation, judicial precedents, and accepted legal principles; the body of authoritative grounds of judicial and administrative action; esp., the body of rules, standards, and principles that the courts of a particular jurisdiction apply** in deciding controversies brought before them <the

editions of *Black's* are similar." <u>Alghazouli</u>, 517 F.3d at 1184 (citing <u>Law</u>, <u>Black's Law Dictionary</u>

(5th ed. 1979).  The Ninth Circuit stated that, having concluded that "'law' does not have a single

---

law of the land>. 3.  The set of rules or principles dealing with a specific area of a legal system <copyright law>. 4.  The judicial and administrative process; legal action and proceedings <when settlement negotiations failed, they submitted their dispute to the law>. 5. **A statute** <Congress passed a law>. -- Abbr. L. 6. COMMON LAW <law but not equity>. 7.  The legal profession <she spent her entire career in law>.

"Some twenty years ago I pointed out two ideas running through definitions of law: one an imperative idea, an idea of a rule laid down by the lawmaking organ of a politically organized society, deriving its force from the authority of the sovereign; and the other a rational or ethical idea, an idea of a rule of right and justice deriving its authority from its intrinsic reasonableness or conformity to ideals of right and merely recognized, not made, by the sovereign." Roscoe Pound, "More About the Nature of Law," in Legal Essays in Tribute to Orrin Kip McMurray at 513, 515 (1935).

"All law is the law of a group of individuals or of groups made up of individuals.  No one can make a law purely for himself.  He may form a resolution, frame an ambition, or adopt a rule, but these are private prescriptions, not laws." Tony Honore, Making Law Bind: Essays Legal and Philosophical 33 (1987)."

"It will help to distinguish three senses of the word 'law.'  The first is law as a distinctive social institution; that is the sense invoked when we ask whether primitive law is really law.  The second is law as a collection of sets of propositions -- the sets we refer to as antitrust law, the law of torts, the Statute of Frauds, and so on.  The third is law as a source of rights, duties, and powers, as in the sentence 'The law forbids the murdering heir to inherit.'"  Richard A. Posner, the Problems of Jurisprudence 220-21 (1990).

<u>Law</u>, <u>Black's Law Dictionary</u> (8th ed. 2004)(emphases added).

clear meaning discernible from the text alone, we look to the history of § 545." Alghazouli, 517 F.3d at 1184 (quoting 18 U.S.C. § 545).

The Ninth Circuit considered the meaning of "law" in the 1866,[10] 1922, and 1930 Tariff Acts -- all three versions containing a contrary-to-law provision, in caselaw interpreting each of the three iterations of the Tariff Act, and in the USA PATRIOT Improvement and Reauthorization Act of 2005, Pub. L. No. 109-177, 120 Stat. 192 (2006)("Patriot Reauthorization Act"). Alghazouli, 517 F.3d at 1186. The Ninth Circuit acknowledged, but did not address, the Fourth Circuit's different rationale. See Alghazouli, 517 F.3d at 1187. The Ninth Circuit held that United States v. Eaton, 144 U.S. 677 (1892)("Eaton"), and United States v. Grimaud, 220 U.S. 506 (1911)("Grimaud"), both decided after the Tariff Act of 1866's enactment, the Supreme Court "made clear . . . that a criminal conviction for violating a regulation is permissible only if a statute explicitly provides that violation of that regulation is a crime." Alghazouli, 517 F.3d at 1184. The

_____

[10]The full text of the Tariff Act of 1866's smuggling provision, section 4, is as follows:

That if any person shall fraudulently or knowingly import or bring into the United States, or assist in so doing, any goods, wares, or merchandise, **contrary to law**, or shall receive, conceal, buy, sell, or in any manner facilitate the transportation, concealment, or sale of such goods, wares, or merchandise, after their importation, knowing the same to have been imported **contrary to law**, such goods, wares, and merchandise shall be forfeited, and he or she shall, on conviction thereof before any court of competent jurisdiction, be fined in any sum not exceeding five thousand dollars nor less than fifty dollars, or be imprisoned for any time not exceeding two years, or both. . . . .

An Act Further to Prevent Smuggling and for Other Purposes, 14 Stat. 178, 179 (1866)("Tariff Act of 1866")(emphases added).

defendant in Eaton, a wholesale oleomargarine[11] dealer, was convicted of violating a bookkeeping

regulation promulgated under the Oleomargarine Act of 1886, ch. 840, § 20, 24 Stat. 209, and,

based on that violation, was convicted of a crime under the Oleomargarine Act of 1886, ch. 840,

§ 18, 24 Stat. 209, which provided criminal penalties for anyone who "shall knowingly or willfully

omit, neglect, or refuse to do, or cause to be done, any of the things **required by law** in the carrying

on or conducting of his business."  Eaton, 144 U.S. at 685 (emphasis added).  The Ninth Circuit

noted that, in Eaton, the Supreme Court rejected the government's argument that the word "law"

in the Oleomargarine Act of 1886's § 18 included the bookkeeping regulation promulgated under

§ 20, writing:

> "It would be a very dangerous principle to hold that a thing prescribed by
> the Commissioner of Internal Revenue, as a needful regulation under the
> oleomargarine act, for carrying it into effect, could be considered as a thing
> 'required by law' . . . in such manner as to become a criminal offence punishable
> under § 18 of the act, . . .
>
> It is necessary that a sufficient statutory authority should exist for declaring
> any act or omission a criminal offence; and we do not think that the statutory
> authority in the present case is sufficient."

Alghazouli, 517 F.3d at 1185 (quoting Eaton, 144 U.S. at 688).  Grimaud involved a defendant's

violation of a regulation prohibiting driving and grazing sheep on a forest reserve without a permit,

---

[11]Oleomargarine, which the French chemist Hippolyte Mège-Mouriès invented in 1869 in competition for a financial prize that Emperor Louis Napoleon III of France offered, is a spread similar to butter, lower priced, and made from beef tallow.  See Rebecca Rupp, The Butter Wars: When Margarine Was Pink, Nat'l Geographic (Aug. 13, 2014), https://www.nationalgeographic.com/people-and-culture/food/the-plate/2014/08/13/the-butter-wars-when-margarine-was-pink/.  Oleomargarine arrived in the United States in the 1870s as margarine, and in 1886, "passionate lobbying from [the] dairy industry led to the federal Margarine Act, which slapped a restrictive tax on margarine and demanded that margarine manufacturers pay prohibitive licensing fees."  Rupp, supra.

promulgated under the Forest Reserve Act, ch. 561, 26 Stat. at L. 1103 (1891).  See Grimaud, 220

U.S. at 507-08.  The Ninth Circuit noted that the defendant in Grimaud argued that, based on

Eaton, "he could not be convicted of a crime based on the violation of a regulation."  Alghazouli,

517 F.3d at 1185.  The Ninth Circuit highlighted that the Supreme Court disagreed with the

defendant, holding that the Forest Reserve Act differed from the Oleomargarine Act of 1866,

because the Forest Reserve Act specified that the Secretary of Agriculture "may make such rules

and regulations," and that "any violation of the provisions of this act or such rules and regulations

of the Secretary shall be punished," as a Congressional statute provided.  Alghazouli, 517 F.3d at

1185 (internal quotation marks omitted)(quoting Grimaud, 220 U.S. at 515).  The Ninth Circuit

then turned to Estes v. United States, 227 F. 818 (8th Cir. 1915), a United States Court of Appeals

for the Eighth Circuit case analyzing Eaton and Grimaud, and concluding that regulations

promulgated under a statute governing livestock importation were "contrary to law" within the

Tariff Act of 1866's Section 4's -- the predecessor section to the current § 545 -- meaning:

> "[A]s these regulations were fully authorized by law, and their violation
> made punishable by law . . . , it must be held, we think, that it was proper to allege
> in the indictment that the cattle in question had theretofore been imported and
> brought into the United States from the republic of Mexico contrary to law, as
> specified in the indictment, so as to bring the charge within the language [of Section
> 4 of the 1866 Tariff Act]."

Alghazouli, 517 F.3d at 1186 (alterations in Alghazouli)(quoting Estes v. United States, 227 F. at

821-22).  Based on this survey of caselaw, the Ninth Circuit concluded that Congress repeatedly

reenacted the provision that is now § 545, "knowing that a criminal prohibition against violating a

'law' included a prohibition against violating a regulation when, but only when, a statute specified

that a violation of that regulation was a crime."  Alghazouli, 517 F.3d at 1186 (quoting 18

U.S.C. § 545).

The Ninth Circuit next considered the Patriot Reauthorization Act, which amended 18 U.S.C. § 545 "by increasing the maximum sentence . . .from five to twenty years," and which added a new provision, codified at 18 U.S.C. § 554, which prohibits the violation of any "law or regulation," while otherwise tracking § 545's language.  Alghazouli, 517 F.3d at 1186.  The Ninth Circuit determined that, because Congress simultaneously and in the same Patriot Reauthorization Act, amended § 545 while leaving its "contrary to law" language intact, and enacted § 554, referring to "law or regulation," the term "law" bears the same meaning in each statutory provision. See Alghazouli, 517 F.3d at 1187.  The Ninth Circuit analyzed the two provisions as closely related in that both regulate "movement across the borders of the United States."  Alghazouli, 517 F.3d at 1187.  The Ninth Circuit determined that the term "law" could not include all regulations, because

> § 554 uses the phrase "law or regulation" twice.  The conjunction "or" indicates that "law" as used in § 554 does not include all regulations.  If it did, the word "regulation" in § 554 would be superfluous. . . .  The logical conclusion, based on the proximity of § 545 and § 554, is that the term "law" in § 545 is not the equivalent of the broader "law or regulation" phrase in § 554.

Alghazouli, 517 F.3d at 1187.  Accordingly, the Ninth Circuit concluded that only regulations for which a statute punishes violation are laws for 18 U.S.C. § 545's "contrary to law" provision's purposes.  517 F.3d at 1187 (quoting 18 U.S.C. § 545).

### iii.        The Eleventh Circuit's Rule Of Lenity Approach.

In an Eleventh Circuit case considering 18 U.S.C. § 545, Anneri and Yuri Izurieta, founders and officers of a trading company importing cheese, butter, and bread from Central America for distribution within the United States, were charged with unlawful importation in

violation of 18 U.S.C. § 545 based on their alleged violations of a United States Bureau of Customs and Border Protection ("U.S. Customs") regulation "typically" engendering a civil remedy of liquidated damages. Izurieta, 710 F.3d at 1178. In Izurieta, the Eleventh Circuit addressed whether the U.S. Customs regulation that the Izurietas allegedly violated constituted a law for 18 U.S.C. § 545's contrary-to-law provision. See Izurieta, 710 F.3d at 1179. The Eleventh Circuit rejected the Ninth Circuit's "reasoning resulting in complete rejection of regulatory law absent a coordinate criminal statute," concluding that the Ninth Circuit's comparison of 18 U.S.C. § 545's language with 18 U.S.C. § 554's language was unpersuasive considering the decades between the two provisions' enactment and also concluding that the Ninth Circuit's approach was too "sweeping" a result. Izurieta, 710 F.3d at 1181. The Eleventh Circuit interpreted the Fourth Circuit's general interpretation of the term "law" as consistent with the former United States Court of Appeals for the Fifth Circuit -- now the Eleventh Circuit's precedent. Izurieta, 710 F.3d at 1181 (citing Babb v. United States, 252 F.2d 702, 707 (5th Cir. 1958)("There is nothing to indicate that the term 'contrary to law' as used in [18 U.S.C. § 545] is limited to laws for the violation of which a penalty is imposed."). Still, the Eleventh Circuit rejected the Fourth Circuit's approach, expressing concern that its three-pronged Chrysler test "derived from a non-criminal context." Izurieta, 710 F.3d at 1181. The Eleventh Circuit expressed concern about lenity "[w]hen a "regulation giving rise to what would appear to be civil remedies is said to be converted into a criminal law." Izurieta, 710 F.3d at 1181-82. Noting that lenity applies only where the statute at issue contains a "grievous ambiguity or uncertainty," Izurieta, 710 F.3d at 1182 (internal quotation marks omitted)(quoting Chapman v. United States, 500 U.S. 453, 456 (1991), the Eleventh Circuit

reasoned that "lack of reference in 18 U.S.C. § 545 to violations of regulations does create some ambiguity and such ambiguity should be considered grievous where the text or history of the regulation creates a strong perception that a violation of the regulation will give rise to civil remedies only," Izurieta, 710 F.3d at 1181-82.   The Eleventh Circuit concluded that 18 U.S.C. § 545 is grievously ambiguous "at least with respect to its effect of criminalizing conduct in violation of" regulations producing purely civil remedies for their violation. Izurieta,  710 F.3d at 1184.   The Eleventh Circuit, therefore, arrived at the result, under principles of lenity, that "charges of violations of [the] regulation" which the Izurietas allegedly violated "do not charge a crime." Izurieta, 710 F.3d at 1184.

> **B.**     **THE COURT CONCLUDES, HAVING EXAMINED THE PLAIN MEANING OF 18 U.S.C. § 545's LANGUAGE AND ITS LEGISLATIVE HISTORY, THAT A TREASURY REGULATION CONSTITUTES A LAW FOR 18 U.S.C. § 545's CONTRARY-TO-LAW PROVISION.**

This is a case of first impression in the Tenth Circuit.   Resolving 18 U.S.C. § 545's "contrary to law" provision's meaning requires employing the "well-established principles of statutory construction."   Colo. High Sch. Activities Ass'n v. Nat'l Football League, 711 F.2d 943, 945 (10th Cir. 1983).   The Court begins with 18 U.S.C. § 545's text.   See, e.g., United States v. Turkette, 452 U.S. 576, 580 (1981)("In determining the scope of a statute, we look first to its language.").   Unless otherwise defined, words in the statute "will be interpreted as taking their ordinary, contemporary, common" meaning "at the time Congress enacted the statute."   Perrin v. United States, 444 U.S. 37, 42 (1979).

The Court considers 1866 the statute's date of enactment, because subsequent reenactments have been "recodifications with only slight changes in phraseology."   Roseman v. United States,

364 F.2d 18, 25 n.9 (9th Cir. 1966).  The Ninth Circuit addressed in which year Congress enacted

18 U.S.C. § 545:

> The history of the statute reveals that its predecessors date back to the previous century at which time it had substantially the same appearance as it has now.  The Clandestine importation provision was codified in Rev. Stat. § 2865 (1875), and the contrary-to-law provision was codified in Rev. Stat. § 3082 (1875).  In the Tariff Act of 1922, the two provisions were united under section 593 of that act, 42 Stat. 982, 19 U.S.C. § 497 (1926).  The section was reenacted in the Tariff Act of 1930, section 593, 46 Stat. 751, 19 U.S.C. § 1953 (1940).  The next and most recent reenactment was of June 25, 1948, 62 Stat. 716, as amended, 18 U.S.C. § 545 (1964).  Each enactment left the substantive provisions of the act substantially intact.
>
> From this history it could be argued that section 545 was enacted in 1948 . . . .
>
> However, we do not reach this conclusion because for the purposes of this case we shall consider one of the enactment dates prior to 1948 as being the relevant date of enactment.  We do this for two reasons: first, we feel that a thorough analysis of legislative purpose is necessary; and secondly, the 1948 reenactment appears to be a recodification with only slight changes in phraseology undertaken by Congress without consideration of its substantive impact.

Roseman v. United States, 364 F.2d at 25 n.9.  Although the Ninth Circuit determined that the

contrary-to-law provision was enacted in 1875, in 1866, Congress passed an Act which is 18

U.S.C. § 545's predecessor and which also contains the contrary-to-law language now at issue.

See Alghazouli, 517 F.3d at 1184 (stating that "[s]ection 545 is the latest version of a provision

that was first enacted as Section 4 of the Tariff Act of 1866."); Mitchell, 39 F.3d at 469 (stating

that Congress enacted § 545's contrary-to-law provision in 1866).  But see Izurieta, 710 F.3d at

1180 n.6 (stating that 18 U.S.C. § 545's general content "has remained substantially unchanged

since 1930.").  A side-by-side comparison of the Tariff Act of 1866's § 4 and today's 18

U.S.C. § 545 reveals that the sections are substantially the same.  See Tariff Act of 1866 § 4; 18

U.S.C. § 545.  Both sections punish the knowing and willful importation into the United States of merchandise or goods which the importer knows to have been imported contrary to law, both provide that such goods shall be forfeited, both provide that the importer shall be fined, and both provide that proof of the defendant's possession, unless adequately explained to the jury's satisfaction, shall be deemed evidence sufficient to authorize conviction.  See Tariff Act of 1866  § 4; 18 U.S.C. § 545.  As early as 1870, the Supreme Court held that "change of language in a revised statute will not change the law from what it was before, unless it be apparent that such was the intention of the legislature."  Stewart v. Kahn, 78 U.S. 493, 502 (1870).  "This canon of statutory construction has remained undisturbed since that time."  In re Bayou Shores SNF, LLC, 828 F.3d 1297, 1315 (11th Cir. 2016)(collecting cases).

Looking to the ordinary meaning of law in 1866, the Court consults An American Dictionary of the English Language (rev. ed. 1865), which provides that a law is "[a] rule of order or conduct established by authority; an edict of a ruler or a government; a fixed regulation; an expressed command; a decree; an order."  An American Dictionary of the English Language, at 756.  The definition also states:

> Law is generic, and, when used with reference to, or in connection with, the other words here considered, denotes whatever is commanded by one who has a right to require obedience.  A statute is a particular law drawn out in form, and distinctly enacted and proclaimed.  Common law is a rule of action founded on long usage and the decisions of courts of justice.  A regulation is a limited and often temporary law, intended to secure some particular end or object.  An edict is a command or law issued by a sovereign, and is peculiar to a despotic government. A decree is a permanent order either of a court or of the executive government.

An American Dictionary of the English Language, at 756.  In 1866, the ordinary meaning of law encompassed regulations as well as statutes.  See Mitchell, 39 F.3d at 469 (rejecting the argument

that, in 1866, when Congress enacted the contrary-to-law provision, regulations were fairly uncommon and thus Congress could not have intended the term "law" to encompass regulations, and stating that nothing in the legislative history indicates that Congress clearly intended to limit the provision to statutory violations). Nor does the first edition of Black's Law Dictionary, published in 1891, confine the definition of law to statutory law. See Law, Black's Law Dictionary (1st ed. 1891). Various courts that have considered the meaning of "contrary to law" within any of 18 U.S.C. § 545's predecessor versions or within 18 U.S.C § 545 have concluded that Congress did not limit the meaning of "law" to statutes. See Estes v. United States, 227 F. at 819 (interpreting an 1875 version of 18 U.S.C. § 545's contrary-to-law provision to encompass both statutes and also regulations that are fully authorized and made punishable by law). See also Callahan v. United States, 285 U.S. 515, 517 (1932)(holding that "contrary to law" in the Tariff Act of 1922 is an unqualified phrase meaning contrary to any law). Although the Ninth Circuit did not directly confront whether "contrary to law" encompasses regulations in Petley v. United States, 427 F.2d 1101 (9th Cir. 1970), the Ninth Circuit suggested that violations of either statutes or regulations could constitute sufficient proof of importation contrary to law for 18 U.S.C. §545's purposes. Petley v. United States, 427 F.2d at 1105. The Court agrees that, if Congress had intended to limit the "contrary to law" provision's scope to violations of statutes, it could have said so. 18 U.S.C. § 545. Because Congress did not limit this phrase, and because, at the time of the statute's original enactment in 1866, the plain meaning of "law" included regulations within its ambit, the Court concludes that the plain meaning of "contrary to law" includes violations of either

statutes or regulations.

The next question to address is which regulations may constitute a law for 18 U.S.C. § 545's purposes. The three cases that define the bounds of the Courts of Appeals split regarding the contrary-to-law provision's interpretation agree that, at least in some instances, a regulation may constitute a law under 18 U.S.C. §545. The Fourth Circuit concluded that substantive regulations having the force and effect of law constitute laws. See Mitchell, 39 F.3d at 469. The Ninth Circuit concluded that regulations are included within "law" for 18 U.S.C. § 545's purposes only if a statute punishes violation of that regulation as a crime. See Alghazouli, 517 F.3d at 1187. The Eleventh Circuit concluded that 18 U.S.C. § 545 is grievously ambiguous regarding whether civil regulations constitute laws and advocated for the rule of lenity's application to avoid charging violation of a civil regulation as a crime under 18 U.S.C. §845. See Izurieta, 710 F.3d at 1183-84.

The Court concludes that the statute's plain meaning at the time of enactment unambiguously indicates that "law" for 18 U.S.C. § 545's purposes is an unqualified term that encompasses all statutes and agency-promulgated regulations. Congress did not specify that it intended to restrict "law" to Customs-related laws, or to criminal regulations, or even to regulations with the force and effect of law according to Mitchell's understanding of Chrysler's three-part test. The Court notes that 18 U.S.C. § 545 punishes an importer's or smuggler's knowing and willful disregard for the law in bringing merchandise into the United States, and concludes that Congress, by the statute's text, created criminal liability for the willful or knowing violation of civil or

criminal statutes or regulations.

Deference to the term's ordinary meaning at the time the statute was enacted does not leave the Court "trapped in a monetary time warp, forever limited to" the regulations in place in 1866. Wisconsin Central Ltd. v. United States, 138 S. Ct. 2067, 2074 (2018)(internal quotation marks omitted)(quoting Wis. Cent. Ltd. v. United States, 138 S. Ct. at 2076 (Breyer, J., dissenting)).  The Supreme Court stated that, although "every statute's *meaning* is fixed at the time of enactment, new *applications* may arise in light of changes in the world." Wis. Cent. Ltd. v. United States, 138 S. Ct. at 2074 (emphasis in Wis. Cent. Ltd. v. United States).  Here, "law," as 18 U.S.C. § 545 uses that word, must always mean a "rule of order or conduct established by authority; an edict of a ruler or a government; a fixed regulation; an expressed command; a decree; an order." An American Dictionary of the English Language, at 756.  What qualifies as a rule of order or conduct may depend on the facts of the day.  See Wis. Cent. Ltd. v. United States, 138 S. Ct. at 2074. Regulations that did not exist in 1866, but that have since been promulgated, therefore, constitute laws for 18 U.S.C. § 545's purposes.

The Court acknowledges that "there is no errorless test for identifying or recognizing 'plain' or 'unambiguous' language." United States v. Turkette, 452 U.S. at 580 (internal quotation marks signifying emphasis and not quotation).  "[A]uthoritative administrative constructions should be given the deference to which they are entitled, absurd results are to be avoided, and internal inconsistencies in the statute must be dealt with." United States v. Turkette, 452 U.S. at 580.  Applying 18 U.S.C. § 545 where any law or regulation has been willfully or knowingly violated does not produce an absurd or surprising result.  Congress acted within its power in

criminalizing an attempt to willfully evade either legislative or administrative pronouncement when attempting to bring merchandise into the United States. The Ninth Circuit argued that interpreting "law" in 18 U.S.C. § 545 to include regulations would create an internal inconsistency, because 18 U.S.C. § 554 prohibits the violation of any "law or regulation":

> § 554 uses the phrase "law or regulation" twice. The conjunction "or" indicates that "law" as used in § 554 does not include all regulations. If it did, the word "regulation" in § 554 would be superfluous. . . . The logical conclusion, based on the proximity of § 545 and § 554, is that the term "law" in § 545 is not the equivalent of the broader "law or regulation" phrase in § 554.

Alghazouli, 517 F.3d at 1187. Congress enacted § 554 "well over a hundred years after the original version of the smuggling statute," which contained 18 U.S.C. § 545. United States v. Place, 693 F.3d at 229. Although the Ninth Circuit argued that Congress' views when enacting § 554 suggest Congress understood laws and regulations to mean different things, and that, accordingly, Congress in enacting § 545 must have intended that law mean something other than regulations, the "views of a subsequent Congress form a hazardous basis for inferring the intent of an earlier one." Consumer Prod. Safety Comm'n v. GTE Sylvania, Inc., 447 U.S. 102, 117-18 (1980). The United States Court of Appeals for the First Circuit suggested that Congress, in adding "or regulation" to the phrase "contrary to law" in § 554, perhaps intended to head off the argument that law excludes regulations, but that Congress' addition of "or regulation" does not suggest that, in § 545, "contrary to law" excludes regulations. 18 U.S.C. §§ 545, 554. See United States v. Place, 693 F.3d at 228-29. Because a later legislature cannot change the meaning of an earlier statute, how the later legislature may interpret the earlier statute is not dispositive or even particularly persuasive. See In re Roser, 613 F.3d 1240, 1247-48 (10th Cir. 2010). Furthermore,

as the First Circuit noted:

> [W]e presume Congress is aware of judicial interpretations of existing statutes when it passes new laws.  *Lorillard v. Pons*, 434 U.S. 575, 580[ . . . ](1978), and in reenacting the smuggling statute multiple times Congress has never sought to exclude regulations despite almost a century of circuit-court precedent holding that the word "law" in the statute includes regulations.

United States v. Place, 693 F.3d at 229.  Even if § 545 and § 554 were enacted in the same statutory scheme around the same time -- and they were not -- the inclusion of the word "regulation" in § 554 does not indicate its exclusion in § 545, which makes mention only of law and not specifically of regulation.  It is a "cardinal principle of statutory construction" that "a statute ought, upon the whole, to be so construed that, if it can be prevented, no clause, sentence, or word shall be superfluous, void, or insignificant." TRW Inc. v. Andrews, 534 U.S. 19, 31 (2001)(internal quotation marks omitted)(quoting Duncan v. Walker, 533 U.S. 167, 174 (2001)).  However, the canon against surplusage "is not absolute; it 'is sometimes offset by the canon that permits a court to reject words "as surplusage" if inadvertently inserted or if repugnant to the rest of the statute.'" Marx v. Gen. Revenue Corp., 668 F.3d 1174, 1183 (10th Cir. 2011)(quoting Chickasaw Nation v. United States, 534 U.S. 84, 94 (2001)(quotation marks around the phrase "as surplusage" in Chickasaw Nation v. United States for emphasis and not quotation)).  "A court should not apply the superfluity canon unless it first determines that the term being construed is ambiguous." Marx v. Gen. Revenue Corp., 668 F.3d at 1183.  Here, neither the word "law" nor the word "regulation" is ambiguous, and the appropriate canon of construction to invoke "is that of *ex abundanti cautela* (abundance of caution), which teaches that Congress may on occasion repeat language in order to emphasize it." Marx v. Gen. Revenue Corp., 68 F.3d at 1183  (emphasis in Marx v. Gen. Revenue

Corp.)(citing <u>Fort Stewart Sch. v. FLRA</u>, 495 U.S. 641, 646 (1990)).

If statutory language is unambiguous, as it is here, "in the absence of 'a clearly expressed legislative intent to the contrary, that language must ordinarily be regarded as conclusive.'" <u>United States v. Turkette</u>, 452 U.S. at 580 (quoting <u>Consumer Prod. Safety Comm'n v. GTE Sylvania, Inc.</u>, 447 U.S. at 108).  The Fourth Circuit determined that, because Congress reenacted § 545's "contrary to law" provision in 1922 and in 1930, after the Supreme Court decided <u>Maryland Casualty Co. v. United States</u>, Congress reenacted the provision "with knowledge that [it] had been interpreted to include regulations having the force and effect of law," and, therefore, the Fourth Circuit could not soundly "conclude that Congress evinced a clear intent that § 545 does not encompass administrative regulations." <u>Mitchell</u>, 39 F.3d at 469 (citing <u>Lorillard, a Div. of Loew's Theatres, Inc. v. Pons</u>, 434 U.S. at 580).  Legislative history dating to 1866 is sparse, but the Court notes, as the Fourth Circuit did, that no legislative history indicates that Congress did not intend "law" to include "regulations."  39 F.3d at 469.  In <u>Estes v. United States</u>, the Eighth Circuit considered whether regulations which the Secretary of Agriculture promulgated constituted laws for the Tariff Act of 1866's purposes and concluded:

> The defendants in the case at bar were not indicted for violating the regulations of the Secretary of Agriculture, but as these regulations were fully authorized by law, and their violation made punishable by law (section 3, supra), it must be held, we think, that it was proper to allege in the indictment that the cattle in question had theretofore been imported and brought into the United States from the republic of Mexico contrary to law, as specified in the Indictment, so as to bring the charge within the language of section 3082, above mentioned.

<u>Estes v. United States</u>, 227 F. at 821-22.  Although, in <u>Estes</u>, a statute apart from the Tariff Act of 1886 made the regulations at issue punishable by law, the Court concludes that it is not necessary

that a separate statute make the regulations at issue criminally punishable, for them to qualify as laws for the contrary-to-law provision.  In United States v. Chesbrough, 176 F. 778 (D.N.J. 1910)(Rellstab, J.), the defendant was charged with smuggling under Rev. Stat. § 3082 (1875), which codified the Tariff Act of 1866's contrary-to-law provision.  See United States v. Chesbrough, 176 F. at 780.  The defendant was charged with violating Rev. Stat. § 2802 (1901), violation of which, if done fraudulently or knowingly, constituted an action "contrary to law" for Rev. Stat. § 3082's purposes.  United States v. Chesbrough, 176 F. at 780.  Section 2802 read:

> "Whenever any article subject to duty is found in the baggage of any person arriving within the United States, which was not, at the time of making entry for such baggage mentioned to the collector before whom such entry was made, by the person making entry, such article shall be forfeited, and the person in whose baggage it is found shall be liable to a penalty of treble the value of such article."

United States v. Chesbrough, 176 F. at 780 (quoting Rev. Stat. § 2802).  Section 2802 prescribed only civil penalties, and yet its violation was "contrary to law" for § 3082's purposes.  United States v. Chesbrough, 176 F. at 780.  In United States v. Merriam, 26 F. Cas. 1237 (E.D. Mich. 1871)(Longyear, J.), the Honorable John Wesley Longyear, then-United States District Judge for the United States District Court for the Eastern District of Michigan, stated that the Tariff Act of 1866 sought to target both unlawful importation and unlawful bringing of goods into the United States:

> To import goods, wares, and merchandise into the United States, in the connection in which the words are here used, evidently means an importation in the ordinary manner, so far as the means and manner of importation are concerned, but contrary to law.  'To bring' goods, etc., into the United States, in the connection in which the words are used, means the introduction of goods, etc., into the United States by any other means or in any other manner than that of importation proper, contrary to law; and in this sense will not those words cover any smuggling or clandestine introduction into the United States of any goods, wares or merchandise,

subject to duty by law, without attempting to effect an entry at all, and without paying or accounting for the duty?

United States v. Merriam, 26 F. Cas. at 1239.  Judge Longyear's contemporaneous interpretation of the original smuggling statute suggests that it intended to target importation or entry of goods into the United States done by means or in a manner contrary to proper importation.  United States v. Merriam, 26 F. Cas. at 1239.  Considering this intention and the fact that Congress has reenacted the smuggling statute multiple times since 1866 without excluding regulations, despite almost a century of Courts of Appeals precedent holding that "law" in the statute includes regulations, United States v. Place, 693 F.3d at 229, the Court concludes that the legislative history does not contradict the statute's plain meaning, which unambiguously indicates that "law" includes "regulations" for 18 U.S.C. § 545's purposes.

## II.   THE TREASURY REGULATION AT ISSUE CONSTITUTES A LAW FOR 18 U.S.C. § 545's PURPOSES.

Treasury Regulation 19 C.F.R. § 134.43 provides in relevant part:

(c)  Native American-style jewelry --

(1)  Definition.  For the purposes of this provision, Native American-style jewelry is jewelry which incorporates traditional Native American design motifs, materials and/or construction and therefore looks like, and could possibly be mistaken for, jewelry made by Native Americans.

(2)  Method of marking.  Except as provided in 19 U.S.C. 1304(a)(3) and in paragraph (c)(3) of this section, Native American-style jewelry must be indelibly marked with the country of origin by cutting, die-sinking, engraving, stamping, or some other permanent method.  The indelible marking must appear legibly on the clasp or in some other conspicuous location, or alternatively, on a metal or plastic tag indelibly marked with the country of origin and permanently attached to the article.

(3)  Exception.  If it is technically or commercially infeasibly to mark in the manner specified in paragraph (c)(2) of this section, or in the case of a good of a NAFTA country, the article may be marked by means of a string tag or adhesive label securely affixed, or some other similar method.

19 CFR § 134.43(c).  The Defendants, who argue for the Eleventh Circuit's approach, posit that 19 C.F.R. § 134.54 is an exclusively civil regulation, and that the Court should therefore employ the rule of lenity and not permit the imposition of criminal liability for its violation.  See Motion at 19-24.  The United States, which advocates for the Court adopting the Fourth Circuit's approach, contends that 19 C.F.R. § 134.43 constitutes a law for 18 U.S.C. § 545's purposes, because it passes Chrysler's test and meets Mitchell's requirements.

The Court concludes that, because Congress did not qualify 18 U.S.C. § 545's "contrary to law" provision, all agency-promulgated regulations fall within its ambit, including 19 C.F.R. § 134.43.  18 U.S.C. § 545.  The Court also concludes that 19 C.F.R. § 134.43 constitutes a law for the "contrary to law" provision under either the Fourth or the Eleventh Circuit's analysis.  18 U.S.C. § 545.  Accordingly, the Court concludes that violations of 19 C.F.R. § 134.43 provide an adequate basis for charges brought under 18 U.S.C. § 545.

Because Congress did not qualify 18 U.S.C. § 545's "contrary to law" provision, its plain meaning indicates that all agency-promulgated regulations fall within its ambit, including 19 C.F.R. § 134.43.  18 U.S.C. § 545.  The fifth edition of Black's Law Dictionary expressly includes Secretary of the Treasury regulations within its definition of law.  Law, Black's Law Dictionary.  Treasury regulations have the force and effect of federal law.  See, e.g., United States v. Sacks, 257 U.S. 37, 42 (1921).  The Ninth Circuit, which interpreted 18 U.S.C. § 545's "contrary to law"

provision fourteen years after the Fourth Circuit interpreted the same provision, consulted Black's Law Dictionary's eighth edition, which was published twenty-five years after the fifth edition's publication, and which provides a significantly altered definition for the term "law."   See Alghazouli, 517 F.3d at 1184 (quoting Law, Black's Law Dictionary (8th ed. 2004)).   Unless otherwise defined, words in the statute "will be interpreted as taking their ordinary, contemporary, common" meaning "at the time Congress enacted the statute," when "law" by its plain meaning included regulations.   Perrin v. United States, 444 U.S. at 42.

   In United States v. Chesbrough, the Honorable John Rellstab, then-United States District Judge for the District of New Jersey, considered whether a purely civil regulation could be "relied upon as embodying the prohibited act" which the smuggling statute, a predecessor to 18 U.S.C. § 545, "denounces as a crime, if done fraudulently or knowingly."   United States v. Chesbrough, 176 F. at 780.   Judge Rellstab concluded that Congress, in enacting the smuggling statute, justifiably distinguished between innocent and willful violations, and that to eliminate that distinction would disregard Congress' intent and hobble Congress' administration of law:

> [N]o distinction will exist in the penalties prescribed between the prohibited introduction in baggage of dutiable articles by the innocent and that of those having a criminal intent.   An immunity from imprisonment to the latter can have but a disastrous effect upon the administration of those laws.   The criminal will play the role of the innocent, and baggage will become the favorite means in the attempt to defraud the government revenues.

United States v. Chesbrough, 176 F. at 783.   The Defendants argue that 19 C.F.R. § 134 imposes criminal penalties for obfuscating or removing a country-of-origin marking but imposes only civil remedies for failure to add a country-of-origin marking.   See Reply at 8.   The Defendants do not

address, however, that the regulation does not impose a scienter requirement before punishing violators. Even an importer who, without knowledge of the regulation, fails to add a country-of-origin marking, is subjected to additional duties. See 19 U.S.C. § 1304(i). 18 U.S.C. § 545, on the other hand, criminalizes only the willful or knowing attempt to evade laws or regulations in importing goods. See 18 U.S.C. § 545.

The Defendants argue that Congress provided fair warning in 19 U.S.C. § 1304 that removal or obfuscation of a legally required country-of-origin marking would result in criminal liability,[12] whereas Congress provided no warning that failing to add a country-of-origin marking would result in criminal liability. See Motion at 22. Congress' imposition of criminal penalties, in 19 U.S.C. § 1304, for removing or obfuscating a country-of-origin marking, but not for failing to add a country-of-origin marking, is not inconsistent with Congress' provision of additional criminal penalties in 18 U.S.C. § 545 for the willful or knowing failure to add a country-of-origin

---

[12]In subsection l, 19 U.S.C. § 1304 provides:

> Any person who, with intent to conceal the information given thereby or contained therein, defaces, destroys, removes, alters, covers, obscures, or obliterates any mark required under the provisions of this chapter shall --
>
> (1) upon conviction for the first violation of this subsection, be fined not more than $100,000, or imprisoned for not more than 1 year, or both; and
>
> (2) upon conviction for the second or any subsequent violation of this subsection, be fined not more than $250,000, or imprisoned for not more than 1 year, or both.

19 U.S.C. § 1304(l).

marking, and for the willful and knowing removal or obfuscation of an existing country-of-origin

marking.  See United States v. Chesbrough, 176 F. at 784.  See also United States v. Nine Trunks,

27 F. Cas. 161, 162 (D.N.J. 1877)(Strong, J.).  Congress provided fair warning, in 18 U.S.C. § 545,

that willfully or knowingly violating any law or regulation when importing merchandise into the

United States opens an individual to criminal liability.  Furthermore, "[i]t cannot be doubted that

at this point in the development of the statute, there was no intention to provide the importer with

an option either to mark or pay increased duties.  The Congressional intent was clear and

unmistakable: all goods were to be marked . . . ."  Globemaster, Inc. v. United States, 68 Cust. Ct.

77, 81 (Cust. Ct. 1972).

>	Those who import goods into the United States accept certain
> responsibilities that have been laid on them by Congress.  One such responsibility,
> and an important one, is to see that imported merchandise of foreign origin is
> properly marked to show the country of origin, before it enters into the commerce
> of the United States.  There may be question as to whether or not particular marking
> meets the statutory requirements, or whether in a particular case merchandise is
> exempted from the marking requirement. If not marked, and not exempted, and if
> in such case the merchandise is not destroyed or exported under customs
> supervision, the marking duties may *not* be remitted or avoided for any cause.  That
> is the law as Congress enacted it.

A.N. Deringer, Inc. v. United States, 51 Cust. Ct. 21, 26 (Cust. Ct. 1963).

The Defendants rely heavily on the Tenth Circuit's decision in Baldwin, in which the

Honorable Neil M. Gorsuch, then-United States Circuit Judge for the Tenth Circuit, "analyzed

whether an agency-promulgated regulation properly may provide a sufficient basis for the

imposition of a criminal penalty."  Reply at 2.  The Defendants' reliance on Baldwin is inapposite.

Baldwin addressed when agency officials may, through a regulation, prescribe criminal penalties

and concluded that agency officials may impose criminal penalties when Congress expressly delegates to them that ability.  See Baldwin, 745 F.3d at 1030-31.  Here, the Treasury Department is not imposing criminal penalties for a failure to add a country-of-origin marking; rather, Congress imposes a criminal penalty for a willful violation of law, including of Treasury Regulations such as 19 C.F.R. § 134.43.  See 18 U.S.C. § 545.  Unlike in Baldwin, this case is not one wherein a regulatory agency is attempting "to announce new crimes by fiat."  Baldwin, 745 F.3d at 1030.  The Defendants argue that Baldwin suggests that the Court should follow Alghazouli's guidance that § 545's "law" does not include all regulations, but only regulations accompanied by statutes specifying that violation of those regulations is a crime.  See Reply at 8.  Here, however, 19 C.F.R. § 134.43 itself does not impose a criminal penalty for its violation, but rather, 18 U.S.C. §545, a Congressional statute, imposes a criminal penalty for the willful or knowing violation of a law when importing merchandise -- and the plain meaning of law in the statute encompasses regulations.

The Defendants also argue that the Court should decline to follow the Mitchell majority's guidance, because the Mitchell majority did not first look at § 545's plain language to analyze whether the statute is ambiguous.  See Reply at 10.  Here, the Court began with § 545's plain language and concluded that it is not ambiguous.  Therefore, any purported "perversion of statutory interpretation" that the Fourth Circuit effectuated does not affect the Court's analysis, which began, properly, with the text.  Reply at 11.

The Defendants make no mention in their briefing of the scienter element which 18 U.S.C. § 545 adds, and instead, the Defendants urge the Court to interpret the remedial scheme

related to § 134.43 as "exclusively civil."  Reply at 14.  The Court concludes that it is within Congress' power and discretion to impose additional criminal penalties where violation of a civil regulation is willful.  See, e.g., Violations & Penalties, Auburn U. Off. of Audit, Compliance & Privacy, http://www.auburn.edu/administration/oacp/orscViolations.php (last visited May 16, 2019)(stating that willful violations of the Export Administration Regulations[13] carry criminal penalties, whereas only civil penalties apply to unknowing or innocent violations).

The Defendants do not address whether, if the Mitchell test applies, 19 C.F.R. § 134.43 would pass it.  The United States argues that the regulation meets all three Mitchell/Chrysler requirements: "First, this regulation is substantive in mandating" that "Native American-style jewelry, arts, and craft" must be indelibly marked with a country-of-origin, imposing "an obligation on importers and subsequent recipients to deal in properly marked goods," and affecting "their individual rights with respect to importation and possession."  Response at 4.  Second, 19 C.F.R. § 134.43 was promulgated pursuant to 19 U.S.C. § 66's grant of quasi-legislative authority to the Secretary of the Treasury.  See Response at 4.  Third, the regulation "was promulgated in conformity with congressionally imposed procedural requirements," and its amendments "were

---

[13]The Export Administration Regulations are

a set of regulations found at 15 C.F.R. § 730[-74 ("EAR")].  They are administered by the Bureau of Industry and Security, which is part of the US Commerce Department.  In general, the EAR govern whether a person may export a thing from the U.S., reexport the thing from a foreign country, or transfer a thing from one person to another in a foreign country.  The EAR apply to physical things as well as technology and software.

Export Administration Regulations, Wikipedia, https://en.wikipedia.org/wiki/Export_Administration_Regulations (last visited May 16, 2019).

adopted following public notice and opportunity for comment." Response at 4. The Court agrees that 19 C.F.R. § 134.43 affects importers' individual rights with respect to importation and possession, that Congress granted the Secretary of the Treasury quasi-legislative authority to prescribe rules and regulations relating to raising revenue from imports or to duties on imports, and that 19 C.F.R. § 134.43 was promulgated in conformity with Congressionally-imposed procedural requirements. See Response at 4. Accordingly, if the Mitchell test applies, although the Court concludes it does not, 19 C.F.R. § 134.43 would constitute a regulation having the force and effect of law, and its violation would provide an adequate basis for an 18 U.S.C. § 545 charge.

Because the Court concludes that the statute's text and legislative history unambiguously indicate that "contrary to law" encompasses all laws and regulations, the Court declines to follow the Eleventh Circuit's approach and apply the rule of lenity. 18 U.S.C. § 545. "Because we find the text of the statute unambiguous, we need not apply the rule of lenity." United States v. Lanier, 520 U.S. 259, 266 (1997).

> [T]hat 'rule,' as is true of any guide to statutory construction, only serves as an aid for resolving an ambiguity; it is not to be used to beget one . . . . The rule comes into operation at the end of the process of construing what Congress has expressed, not at the beginning as an overriding consideration of being lenient to wrongdoers.

Callahan v. United States, 364 U.S. 587, 596 (1961)(footnote omitted). There being no ambiguity in the "contrary to law" provision at issue, the rule of lenity does not come into play. 18 U.S.C. § 545.

A "court may grant a motion to dismiss an indictment if the allegations therein are legally inadequate." United States v. Pope, 613 F.3d 1255, 1260 (10th Cir. 2010)(stating that "a court may always ask whether the allegations in the indictment, if true, are sufficient to establish a

violation of the charged offence and dismiss the indictment if its allegations fail that standard."). Here, the Court concludes that the allegations in the Indictment's Counts 2 and 3, and in Count 1 to the extent it is based on a conspiracy to violate 18 U.S.C. § 545, are legally adequate.  The Court concludes that "contrary to law" for 18 U.S.C. § 545's purposes unambiguously includes both laws and agency-promulgated regulations, and that 19 C.F.R. § 134.43 is one such regulation.

**IT IS ORDERED** that the Defendants' Joint Opposed Rule 12(b) Motion to Dismiss Counts 2 and 3, and to Partially Dismiss Count 1, of the Indictment, filed February 15, 2019 (Doc. 34), is dismissed.

_____
UNITED STATES DISTRICT JUDGE

_Counsel:_

John C. Anderson
    United States Attorney
Sean J. Sullivan
Kristopher N. Houghton
    Assistant United States Attorneys
United States Attorney's Office
Albuquerque, New Mexico

        _Attorneys for the Plaintiff_

Mark T. Baker
Carter B. Harrison, IV
Peifer, Hanson & Mullins, P.A.
Albuquerque, New Mexico

     *Attorneys for Defendants Sterling Islands, Inc. and Jawad Khalaf*

Ahmad Assed
Richard J. Moran
Law Office of Ahmad Assed
Albuquerque, New Mexico

     *Attorneys for Defendant Nader Khalaf*

John W. Boyd
Marry (Molly) E. Schmidt-Nowara
Karen Grohman
Freedman, Boyd, Hollander, Goldberg, Urias & Ward, P.A.
Albuquerque, New Mexico

     *Attorneys for Defendant Nashat Khalaf*

Matthew M. Beck
Rodey, Dickason, Sloan, Akin & Robb, P.A.
Albuquerque, New Mexico

     *Attorney for Defendant Zaher Mostafa*