IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | CRIMINAL NO. 18-4176 JB |
| | ) | |
| vs. | ) | |
| | ) | |
| **STERLING ISLANDS, et al.,** | ) | |
| | ) | |
| Defendants. | ) | |

**UNITED STATES RESPONSE TO DEFENDANTS'
JOINT OPPOSED MOTION TO DISMISS COUNT 1
OF THE INDICTMENT PURSUANT TO FED. R. CRIM. P. 12(b) (DOC. 50)**

The United States respectfully requests the Court deny the defendants' motion to

dismiss Count 1 of the indictment, Doc. 50, for the reasons set forth below.

INTRODUCTION

Defendants ask the Court to dismiss Count 1 of the indictment.  Doc. 50.

According to Defendants, this count "fails to sufficiently allege the factual basis for two

elements of conspiracy required under 18 U.S.C. § 371 – an agreement to commit a crime

and interdependence."  *Id*. at 22.  Defendants claim this alleged defect is "fatal" to the

pleading and requires the Court to dismiss the indictment pursuant to Fed. R. Crim. P.

12(b)(3)(B)(v) for failure to state an offense.  *Id*.  The Court should deny Defendants'

motion to dismiss.

ARGUMENT

Defendants' motion misses the mark entirely.   As a starting point, an indictment is only required to include a "plain, concise, and definite written statement of the essential facts constituting the offense charged[.]"  Fed. R. Crim. P. 7(c)(1).  An indictment "need not go further and allege in detail the factual proof that will be relied upon to support the charges" at trial.  *United States v. Boutte*, No. 17-CR-03338-JMC, 2018 WL 3999566, at *4 (D.N.M. Aug. 21, 2018) (Carson, J.) (quoting *United States v. Doe*, 572 F.3d 1162, 1173-74 (10th Cir. 2009)).  Stated another way, an indictment adequately states an offense for purposes of Fed. R. Crim. P. 12(b)(3)(B)(v) when it "quotes the language of [the] statute and includes the date, place, and nature of illegal activity[.]"  *Id*. (quoting *Doe*, 572 F.3d at 1173).[1]

Count 1 of the indictment clearly meets these requirements.  Doc. 2 at 2-7.  The indictment charges, in pertinent part, that Defendants "knowingly, unlawfully, and willfilly combined, conspired, confederated, *agreed*, and *acted interdependently* with one another and with others known and unknown to the grand jury[.]"  *Id*. at 2 (emphasis added).  The indictment further charges that this criminal conduct occurred in the District of New Mexico "[f]rom at least as early as 2009 to October 2015[.]"  *Id*.  The indictment

---

[1] Furthermore, an indictment's description of certain overt acts does not limit Defendant's offense to those acts.  *See United States v. Holland*, 956 F.2d 990, 993 (10th Cir. 1992). It is the agreement, separate and apart from the overt acts themselves, that make up the crime of conspiracy.  *Id*.  Therefore, Defendants are mistaken when they try to limit the evidence in this case to the overt acts charged in the indictment.  Doc. 50 at 1 ("the government has been able to drum up only three alleged illegal sales of Southwestern-style jewelry[.]")

further charges that the conspiracy involved the object crimes of smuggling goods into

the United States, in violation of 18 U.S.C. § 545, and violating the Indian Arts and

Crafts Act, contrary to 18 U.S.C. § 1159. *Id.* This is all the law requires to properly state

an offense under Fed. R. Crim. P. 7(c)(1) and 12(b)(3)(B)(v). Accordingly, Defendants

claim for relief under Fed. R. Crim. P. 12(b) is meritless.

Essentially, Defendants have disguised their effort to obtain a pretrial adjudication

of the merits of the case as a Fed. R. Crim. P. 12(b) motion. However, Fed. R. Crim. P.

12(b) is expressly limited to matters that "can be determined without a trial on the

merits[.]" Therefore, Fed. R. Crim. P. 12(b) is unavailing for Defendants' purposes.

"Generally, the strength and weakness of the government's case, or the sufficiency

of the government's evidence to support a charge, may not be challenged by a pretrial

motion." *United States v. DeLeon*, 287 F.Supp.3d 1175, 1182 (D.N.M. 2017) (Browning,

J.) (quoting *United States v. Hall*, 20 F.3d 1084, 1087 (10th Cir. 1994)). Rather, "an

indictment is legally sufficient so long as it: (1) contains the essential elements of the

offense intended to be charged, (2) sufficiently apprises the accused of what he must be

prepared to defend against, and (3) enables the accused to plead an acquittal or conviction

under the indictment as a bar to any subsequent prosecution for the same offense." *Id.* at

1183 (quoting *Hall*, 20 F.3d at 1087). Importantly, "[w]hen testing the indictment's

sufficiency before trial, an indictment's allegations are taken as true, and courts should

not consider evidence outside the indictment." *Id.* (quoting *Hall*, 20 F.3d at 1087).

By these standards, Count 1 of the indictment is legally sufficient to proceed to a

trial on the merits.   Defendants know the elements of the conspiracy offense so they can

prepare their defenses and claim double jeopardy if appropriate in the future.   Indeed,

Defendants have already begun to focus their defenses around questioning the connection

between the co-conspirators and how the sales of merchandise benefitted each of the co-

conspirators individually.  *See* Doc. 50 at 2.  This should assure the Court that Defendants

have adequate notice of the charges against them.

However, only "[t]he jury is charged with determining a defendant's [ultimate]

guilt or innocence[.]"  *Id.* at 1184 (quoting *United States v. Pope*, 613 F.3d 1255, 1259

(10th Cir. 2010)).  A district court "is not free to determine, like on a motion for summary

judgment under the Federal Rules of Civil Procedure, whether a genuine issue of material

fact exists."  *United States v. Leal*, 330 F.Supp.3d 1257, 1272 (D.N.M. 2018) (Browning,

J.) (quoting *United States v. China Star, Inc.*, 375 F.Supp.2d 1291, 1293 (D.N.M. 2005)

(Browning, J.)).  Indeed, any "fact-finding [by a district court] 'based on evidence that

goes to this question can risk trespassing on territory reserved to the jury.'"  *DeLeon*, 287

F.Supp.3d at 1184 (quoting *Pope*, 613 F.3d at 1259).[2]

---

[2] Defendants' motion to dismiss relies heavily on *United States v. Evans*, 970 F.2d 663
(10th Cir. 1992).  Doc. 50 at 2, 6-8, 14.  However, *Evans* looked back at the evidence at
trial to determine whether it was legally sufficient to support the charged offense of
conspiracy to distribute crack cocaine.  *Evans*, 970 F.2d at 668-675.  *Evans* did not
examine the case pretrial and try to assess the prosecution's ability to prove the charged
conspiracy.  Such an endeavor would have undoubtedly trespassed into the jury's
territory.  *DeLeon*, 287 F.Supp.3d at 1184.

The narrow exception to the general rule allowing infrequent pretrial challenges to

the sufficiency of the evidence does not apply in the Defendants' case.  *See Leal*, 330

F.Supp.3d at 1273 (citing *Hall*, 20 F.3d at 1087-88).  In *Hall*, the indictment charged the

defendant with knowingly using or carrying a firearm during a drug trafficking crime.

20 F.3d at 1085.  The parties did not dispute that agents found a pistol in a bedroom

closet at the defendant's home.  *Id*.  They also agreed that agents found cocaine and drug

paraphernalia "on the main floor and garage" of the residence.  *Id*.  The only issue in the

case was whether possession of the gun and drugs in separate locations could support the

charged offense of using or carrying a firearm during a drug trafficking crime.  *Id*.  The

Court concluded:

> Under this scenario, a pretrial dismissal is essentially a determination
> that, *as a matter of law*, the government is incapable of proving its
> case beyond a reasonable doubt.  We note, however, that such a
> scenario is not likely to recur and we caution both the trial courts and
> counsel that the procedure here employed is indeed the rare exception.

*Id*. at 1088.

Defendants' case is entirely different from *Hall*.  In the instant matter, the parties

have conflicting opinions about the Defendants' criminal culpability and participation in

the charged conspiracy.  Much of Defendants' motion involves factual allegations outside

the pages of the indictment.  This is not a situation "where the underlying facts [are]

essentially undisputed and the government fail[s] to object to the district court's resort to

evidence beyond the four corners of the indictment."  *United States v. Olivas-Perea*, 297

F.Supp.3d 1191, 1203 (D.N.M. 2017) (Browning, J.) (quoting *Hall*, 20 F.3d at 1087).

Accordingly, the general rule forbidding pretrial challenges to the sufficiency of the

evidence applies in the Defendants' case.

Nevertheless, the evidence set forth in the indictment is sufficient to prove the

charged conspiracy at trial, including the elements of agreement and interdependence

among the parties.  To prove a conspiracy, the government must show:

> (1) that two or more people agreed to violate the law[,] (2) that the defendant
> knew at least the essential objectives of the conspiracy, (3) that the defendant
> knowingly and voluntarily became a part of it, and (4) that the alleged co-
> conspirators were interdependent.

*Leal*, 330 F.Supp.3d at 1269 (quoting *United States v. Small*, 423 F.3d 1164, 1182-83

(10th Cir. 2005)).  Importantly:

> What is required is a shared single criminal objective, not just similar or
> parallel objectives between similarly situated people.  On the other hand, a
> defendant need not have knowledge of all the details or all the members of
> the conspiracy and may play only a minor role in the conspiracy.  The
> government need only prove by direct or circumstantial evidence that the
> defendant knew at least the essential objectives of the conspiracy and the
> defendant knowingly and voluntarily became part of it.

*Id*. (quoting *Small*, 423 F.3d at 1182-83).

Often, a conspiracy takes the form of a "chain" or "wagon wheel."  *United States*

*v. Leal*, 921 F.3d 951, 959 (10th Cir. 2019).  "In a chain conspiracy, 'there is successive

communication and cooperation in much the same way as with legitimate business

operations between manufacturer and wholesaler, then wholesaler and retailer, and then

retailer and consumer.'"  *Id*. (quoting *United States v. Evans*, 970 F.2d 663, 668 n.8 (10th

Cir. 1992).  "In a wagon-wheel conspiracy, 'a single person or group (the 'hub') deal[s] individually with two or more other people or groups (the 'spokes')."  *Id.*  (quoting *Evans*, 970 F.3d at 668 n.8).

Based on these standards, the United States can prove the charged conspiracy beyond a reasonable doubt based on competent and admissible evidence.  Indeed, the Defendants' conspiracy is similar to a typical "chain" involving one or more manufacturers, wholesalers, retailers, and customers.  In this case, as alleged in the Indictment, Fashion Accessories 4U manufactured the Native-American style jewelry, arts, and crafts in the Philippines without indelible markings.  Sterling Islands imported it contrary to law and distributed it to wholesalers, including Al-Zuni Global, and to retailers, such as Taha Shawar.  Eventually, customers purchased the jewelry, arts, and crafts based on misrepresentations that it was authentic Native American-made.  This distribution chain had all the hallmarks of a typical vertically-integrated criminal enterprise.  *See Evans*, 970 F.2d at 668 n.8 (quoting *United States v. Brewer*, 630 F.2d 795, 799 (10th Cir. 1980) ("This circuit has noted that "[m]ost narcotics networks involve loosely knit vertically-integrated combinations.'").  The interdependence of the various participants at different levels of the distribution chain was the "tie that binds the various transactions and co-conspirators into a single conspiracy."  *United States v. Carnegie*, 2007 WL9676997 (D. Co. Mar. 6, 2007).[3]

---

[3] This conspiracy also had attributes of a "wagon-wheel" with Sterling Islands acting as the "hub" for the manufacturer, Fashion Accessories 4U, and wholesalers and retailers,

Contrary to Defendants' assertions, the grouping of co-conspirators was not "arbitrary." Doc. 50 at 2. Indeed, it is readily apparent from the organizational structure of the conspiracy that the various co-conspirators relied and depended on each other to deliver the goods to the consumers and share the profits from the sales of the jewelry, arts, and crafts. *See Small*, 423 F.3d at 1184 (finding sufficient evidence of conspiracy where co-conspirators shared common goal of profits). Obviously, misrepresentation of the jewelry as authentic Native American allowed the retailers to charge higher prices and increase profits at all levels of the distribution chain. Indeed, the co-conspirators "intended to act *together* for the *shared mutual benefit* within the scope of the conspiracy charged." *Id*. at 671.

Defendants' specifically argue that "[t]here is no allegation that 'the [Defendant Shawar-Sterling Islands] transactions . . . benefitted from or depended upon the success of the [Al-Zuni-Sterling Islands' transactions, and vice versa.'" Doc. 50 at 16. However, a member of a conspiracy does not need to know all the other details and members of the conspiracy. *Small*, 423 F.3d at 1182-83. Moreover, a criminal venture such as this would not have been successful with only one retail outlet. It took many retailers to generate the volume of sales necessary to keep a factory and importer in business. Therefore, each member of the conspiracy benefitted from the distinct roles of the others.

---

including Al-Zuni Global and Shawar. Sterling Islands is the "rim" that encloses the "spokes." *See Kotteakos v. United States*, 328 U.S. 750, 755 (1946).

More specifically, each co-conspirator had a specific role in the illegal business, as set forth in the indictment.   Each member of the conspiracy needed access to merchandise without indelible markings in order to pass the merchandise along the distribution chain to the ultimate unwitting purchaser.  This is not a case of an innocent family business or some members not knowing of others' criminal acts.  Jawad Khalaf owned the importer, Sterling Islands.  Doc. 2. at 1.  He received payment from Taha Shawar, a retailer, and took an order for the silver canteens.  *Id*. at 2.  Nader Khalaf, a Sterling Islands manager, took orders from Shawar and Mostafa for manufacture in the Philippines.  *Id.* at 4.  He was personally involved in an order for counterfeit jewelry with initials imitating the work of a genuine Navajo artist.  *Id*. at 5-6.  Nashat Khalaf, the owner of Al-Zuni Global, wrote numerous checks to Sterling Islands for merchandise and misled federal investigators about the origin of the jewelry.  *Id*. at 7.  Zaher Mostafa, vice president of Al-Zuni Global, and Shawar made false representations to law enforcement agents posing as customers by claiming the merchandise they displayed and sold was genuine Native American-made.  *Id*. at 6.

In this case, it was not enough to receive jewelry without indelible markings.  The jewelry, arts, and crafts needed to be misrepresented and sold as Native American-made in order to reap the highest profits.  "[B]ecause a criminal conspiracy by its very nature is usually shrouded in a further conspiracy of silence, the common plan or purpose must often be, and may legitimately be, proved by circumstantial evidence."  *Evans*, 863 F.3d at 1252.  The direct and circumstantial evidence in this case will show at trial, as properly

alleged in the Indictment, that Defendants made an agreement to work together to import

and sell counterfeit Native American-style jewelry, arts, and crafts to unwitting buyers

for profit.  They also acted interdependently to achieve their goals in a "shared, single

criminal objective[.]"  *Evans*, 970 F.2d at 670.  At trial, the jury will be instructed to

"separately consider the evidence against each defendant and return a separate verdict for

each."  Tenth Circuit Criminal Pattern Jury Instruction 1.21.  This will assure each

defendant is only convicted based on his individual and personal criminal responsibility.

Based on the information in the Indictment, within which the Court should focus its

analysis, Defendants' motion to dismiss is wholly without merit.

## CONCLUSION

For the reasons set forth above, the Court should deny the defendants' motion.


Respectfully submitted:
JOHN C. ANDERSON
United States Attorney

/s/ *Filed electronically*_____
SEAN J. SULLIVAN
KRISTOPHER N. HOUGHTON
Assistant United States Attorneys
PO Box 607
Albuquerque, NM 87103
(505) 346-7274

I HEREBY CERTIFY that I filed the foregoing
pleading electronically through the CM/ECF system
which caused the opposing party of record to be
served by electronic means, as reflected on the Notice
of Electronic Filing, and other methods of service as
indicated therein on May 24, 2019:

____/s/____
Sean J. Sullivan
Assistant United States Attorney