**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF NEW MEXICO**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | CRIMINAL No. 18-4176 JB |
| | ) | |
| **STERLING ISLANDS, et al.**, | ) | |
| | ) | |
| Defendants. | ) | |

**UNITED STATES' RESPONSE IN OPPOSITION TO DEFENDANTS' JOINT
MOTION TO COMPEL DISCOVERY (DOC. 49)**

The United States respectfully submits this response in opposition to the Defendants'
Joint Motion to Compel Discovery. *See* Doc. 49. The majority of Defendants' joint motion,
which references their discovery request letter, largely asks this Court for an unnecessary order
directing the United States to fulfill its obligations under Rule 16, *Brady*/*Giglio*, and the Jencks
Act. The United States is already obligated to do so by the Constitution, the Rules of Criminal
Procedure, United States Code, Department of Justice policy, and a court order in this case (Doc.
22). Another order from this Court directing the United States to fulfill its legal obligations is
unnecessary. To the extent, Defendants request specific items related to this case, the United
States agrees in part as outlined below. Many of Defendants' requests, however, ask for a broad
range of discovery to which neither the Federal Rules of Criminal Procedure nor the United
States Constitution entitles them, including materials wholly unrelated to the criminal case
against them. Accordingly, the United States asks this Court to deny the requests for the
materials requested that the United States has not agreed to disclose as outlined further below.

1

## I.      THE RELEVANT LAW

### A.  Rule 16 of the Federal Rules of Criminal Procedure

Rule 16 of the Federal Rules of Criminal Procedures guides the discovery process in criminal proceedings. Rule 16(a)(1)(E) provides the Government's obligation to disclose documents and objects:

> (E) Documents and Objects. Upon a defendant's request, the government must permit the defendant to inspect and to copy or photograph books, papers, documents, data, photographs, tangible objects, buildings or places, or copies or portions of any of these items, if the item is within the government's possession, custody, or control and:
>
> (i) the item is material to preparing the defense;
>
> (ii) the government intends to use the item it its case-in-chief at trial; or
>
> (iii) the item was obtained from or belongs to the defendant.

Fed. R. Crim. P. 16(a)(1)(E).

Rule 16 does not authorize a defendant to engage in a fishing expedition, nor does it grant defendants access to the prosecution's file: "Although rule 16's language is permissive, it does not authorize 'a blanket request to see the prosecution's file,' and a defendant may not use the rule to engage in a 'fishing expedition.'" *United States v. Hykes*, No. CR 15-4299 JB, 2016 WL 1730125, at *5 (D.N.M. Apr. 11, 2016) (Browning, J.) (quoting *United States v. Maranzino*, 860 F.2d 981, 985-86 (10th Cir. 1988)). Rule 16 does not require the Government to discover information that it does not have. And Rule 16 does not require the Government to secure information from third parties. *See id.* (citing *United States v. Badonie*, No. CR 03-2062 JB, 2005 WL 2312480, at *2 (D.N.M. Aug. 29, 2005) (Browning, J.)).

With regard to Rule 16(a)(1)(E)(i), an item is material to the defense's preparation "if 'there is a strong indication that it will play an important role in uncovering admissible evidence, aiding witness preparation, or assisting impeachment or rebuttal.'" *Id.* (quoting *United States v. Graham*, 83 F.3d 1466, 1474 (D.C. Cir. 1996)). "'[T]he Government need disclose rule 16 material only if it enables the defendant significantly to alter the quantum of proof in his favor.'" *Id.* (quoting *United States v. Graham*, 83 F.3d at 1474).

## B.  Constitutional Criminal Disclosure Obligations

Aside from the criminal procedural rules, the United States Constitution's Due Process clause also imposes disclosure obligations on the Government. It requires the Government to disclose "any evidence that 'is material either to guilt or to punishment,'" including "evidence that is useful to the defense in impeaching government witnesses, even if the evidence is not inherently exculpatory." *United States v. Hykes*, 2016 WL 1730125, at *6 (quoting *Brady v. Maryland*, 373 U.S. 83, 87 (1963); *citing Giglio v. United States*, 405 U.S. 150, 153 (1972)).

"'[T]he mere possibility that evidence is exculpatory does not satisfy the constitutional materiality standard.'" *United States v. Rivas*, 26 F. Supp. 3d 1082, 1110 (D.N.M. 2014) (Browning, J.) (quoting *United States v. Fleming*, 19 F.3d 1325, 1331 (10th Cir. 1994)). Duplicative impeachment evidence isn't material; nor is inadmissible information. *See id.* "Favorable evidence is only material and thus subject to mandated disclosure when it 'could reasonably be taken to put the whole case in such a different light as to undermine confidence in the verdict.'" *Id.* at 1111 (quoting *Cone v. Bell*, 556 U.S. 449, 470 (2009)).

The timing when the Government must disclose materials under *Brady* and *Giglio* varies. But "[a]s a general matter, 'some limitation on disclosure delay is necessary to protect the principles articulated in *Brady v. Maryland*.'" Id. at 1106-07 (quoting *United States v. Burke*,

3

571 F.3d 1048, 1054 (10th Cir. 2009)). The Supreme Court articulated a bright-line rule that

*Brady* does not require "preguilty plea disclosure of impeachment information." *United States v.*

*Ruiz*, 536 U.S. 622, 629 (2002). The United States Court of Appeals for the Tenth Circuit

recently affirmed this Court's conclusion in *United States v. Harmon*, 871 F. Supp. 2d 1125,

1151 (D.N.M. 2012) (Browning, J.), that the Government is not required to disclose

impeachment information before a suppression hearing. *See United States v. Harmon*, 742 F.3d

451 (10th Cir. 2014).

### C.  The Jencks Act

In response to the Supreme Court of the United States' decision in *Jencks v. United*

*States*, 353 U.S. 657 (1957), Congress enacted the Jencks Act, 18 U.S.C. § 3500, which requires

the Government to disclose a government witness's statements after that witness's trial

testimony. *See United States v. Lujan*, 530 F. Supp. 2d 1224, 1232-33 (2008) (Brack, J.) (quoting

18 U.S.C. §§ 3500(a) & (b)) (cited in *Hykes*, 2016 WL 1730125, at *11). While the Tenth Circuit

held that "[i]nterview notes could be 'statements' under the [Jencks] Act if they are substantially

verbatim," *United States v. Smith*, 984 F.2d 1084, 1086 (10th Cir. 1993), this Court has required

the Government to turn over law enforcement agents' reports and even investigative and

interview notes that contain statements from a testifying Government witness. *See United States*

*v. Tarango*, 760 F. Supp. 2d 1163, 1164, 1167 (D.N.M. 2009) (Browning, J.); *United States v.*

*Harry*, No. CR 10-1915 JB, 2013 WL 684671, at *11-12 (D.N.M. Feb. 6, 2013) (Browning, J.).

## II.    AREAS OF AGREEMENT

As noted above, Defendants' joint motion largely requests this Court issue an order for the United States to do what it is already obligated to do by policy, rule, statute, the Constitution, and court order in this case (Doc. 22). Specifically, Defendants request an order from the Court directing the United States to (1) review the files of the agencies of the prosecution team for *Brady* material, (2) produce the information in the Defendants' discovery request letter, and (3) produce any other information required under Rule 16 or the United States Constitution. Items 1 and 3 are clearly already required by those authorities and an additional order further requiring them is unnecessary.

As for Defendants' 26-page discovery letter requesting in excess of 100 categories of material, it too largely requests what the United States is already obligated to disclose under Rule 16, *Brady/Giglio*, and *Jencks*. Many of the requests, in fact, simply restate the language of certain provisions of Rule 16.

For the Court's benefit, the United States lists the categories requested by Defendants' with which it agrees are discoverable. These materials have either been disclosed, are being processed for disclosure, are being sought for disclosure from the various agencies that form the prosecution team, or do not exist. Thus, a discovery order from the Court is unnecessary as to the following categories.

A.  The substance of any oral statement made by any of these Defendants in response to interrogation by any person then known by them to be a government agent if the government intends to use that statement at trial. Fed. R. Crim. P. 16(a)(l)(A).

B.  Any relevant written or recorded statements made by any of these Defendants within the possession, custody, or control of the government, the existence of which is known, or by the exercise of due diligence could be known, to the attorneys for the government. Fed. R. Crim. P. 16(a)(l)(B)(i).

C.   That portion of any written record containing the substance of any relevant oral statement made by any of these Defendants in response to interrogation by any person then known to him to be a government agent. Fed. R. Crim. P. 16(a)(l)(B)(ii).

D.   Any of these Defendants' recorded testimony (if any) before a grand jury relating to the charged offenses. Fed. R. Crim. P. 16(a)(l)(B)(iii).

E.   A copy of any of these Defendants prior criminal records (if any) as is within the possession, custody, or control of the government, the existence of which is known, or by the exercise of due diligence could be known, to the attorneys for the government. Fed. R. Crim. P. 16(a)(l )(D).

F.   As to Defendants Sterling Islands, Inc. and Al-Zuni Global Jewelry, Inc. (the Organizational Defendants"), any statement described in Rule 16(a)(l)(A) and (B) if the government contends that the person making the statement:

   i.   was legally able to bind the defendant regarding the subject of the statement because of that person's position as the defendant's director, officer, employee, or agent; or

   ii.   was personally involved in the alleged conduct constituting the offense and was legally able to bind the defendant regarding that conduct because of that person's position as the defendant's director, officer, employee, or agent.

The above areas the United States agrees are discoverable, with the exception provided

by Rule 16(a)(2), Information Not Subject to Disclosure, which provides:

Except as permitted by Rule 16(a)(1)(A)-(D), (F), and (G), this rule does not authorize the discovery or inspection of reports, memoranda, or other internal government documents made by an attorney for the government or other government agent in connection with investigating or prosecuting the case. Nor does this rule authorize the discovery or inspection of statements made by prospective government witnesses except as provided in 18 U.S.C. §3500.

Defendants request disclosure of the following items (Doc. 49-1 at 2-3):

G.   All books, papers, documents, data, photographs, tangible objects, buildings or places, or copies or portions thereof (collectively "materials") that are material to preparing the defense and are within the government's possession, custody, or control. Fed. R. Crim. P. 16(a)(l)(E)(i). This request includes:

   1.   All hard drives, computers, or other electronic storage devices searched or seized by the government, including any materials related to the government's ability or request to gain access to the device, materials or information retrieved from device, and any materials or analysis produced from inspection of the device;

The United States agrees to allow Defendants to "inspect and to copy," Rule 16(a)(1)(E), but not to disclose these items, as these items constitute original evidence for which chain of custody must be maintained.

Defendants' request disclosure of the following items under category "G":

> 2.  All materials that relate to the execution of the Al-Zuni search warrant 332 (see Bates No. 1458-61), including:
>
>> a. FBI 302s and evidence logs from on or about October 28, 2015;
>>
>> b. Photographs, the log or inventory of those photographs of Al-Zuni and the evidence seized;
>>
>> c. The entire FBI case file 415K-AQ-2388815-ML; and
>>
>> d. All documents and evidence of any kind downloaded from the searches of the telephones seized on or about October 28, 2015.

The United States agrees to provide these items with the exception of the request for "[t]he entire FBI case file 415K-AQ-2388815-M." The United States does agree, however, to examine that case file and disclose any items that fall under its discovery obligations pursuant to Rule 16, *Brady/Giglio*, and *Jencks*.

## III.   SPECIFIC AREAS OF DISAGREEMENT AND ARGUMENT

The remaining 23 pages of Defendants' 26-page discovery request letter requests the following categories of material: (1) material related to separate investigations; (2) material related to this investigation that the United States does not intend to use in its case-in-chief, is not exculpatory, and is not otherwise material; (3) internal government documents and memoranda; (4) *Brady/Gigli*o material; (5) *Jencks* material and (6) disclosures required by the Federal Rules of Evidence.[1] The United States addresses each of these broad categories in turn.

---

[1] This request is also already dealt with by the Court's Scheduling Order. See Doc. 42.

## A.  Material Related to Separate Inquiries

Defendants' request "[t]he entire file for the 'related investigation' of Effie Calavaza style jewelry." Doc. 49-1 at 3.  In this case, Defendants have not been charged with selling counterfeit Effie Calavaza jewelry, which was the subject of a separate investigation.  Material the United States or its prosecution team members produced in relation to that case is immaterial to Defendants in this case. Furthermore, Defendants' make no specific arguments as to how that information is material or discoverable. "[B]ald assertions" pursuant to Rule 16 are insufficient "to make a prima facie case of materiality to entitle appellants to the requested documents." *United States v. Little*, 753 F.2d 1420, 1445 (9th Cir. 1984); *see also United States v. Rodella*, No. CR 14-2783 JB, 2015 WL 711931, at *24 (D.N.M. Feb. 2, 2015) (Browning, J.) ("The Constitution of the United States of America, however, 'does not grant criminal defendants the right to embark on a 'broad or blind fishing expedition among documents possessed by the Government.''") (citing *United States v. Mayes*, 917 F.2d 457, 461 (10th Cir.1990) (quoting *Jencks v. United States*, 353 U.S. 657, 667 (1957))).

Similarly, Defendants' request for "[a]ny and all documents in the possession of the government . . . related to the following individuals and/or entities:

      i.   Gene, Abdin (see Bates No. 474);

      ii.   Silver Star Jewelry (see Bates No. 474);

      iii.   Kevin Nguyen (see Bates No. 476);

      iv.   Jennifer Nguyen (see Bates No. 476);

      v.   Zeed Ayesh (see Bates No. 474);

      vi.   Indian Touch of Gallup (see Bates No. 474);

      vii.   Michael Scruggs (see Bates No. 476);

viii. The Great American Eagle and Native Company (see Bates No. 476);

ix.   Mohammed Jasser (see Bates No. 476);

x.    Rebecca Jasser (see Bates No. 475);

xi.   Lazuli Designs (see Bates No. 476);

First, the request is far too broad. Second, Defendants do not explain how such information is material to their case or otherwise discoverable. Third, to the extent any of these individuals may be called as witnesses in the United States' case, the United States is aware of its obligations under Jencks and will provide those according to the Court's scheduling order. See Doc. 42 at 2 (requiring Jencks disclosure on September 20, 2019).

### B.  Material Related to This Investigation Not Subject to Disclosure

The government is not obligated to produce in discovery all information concerning the investigation of the case. As the Supreme Court has recognized, there is "no constitutional requirement that the prosecution make a complete and detailed accounting to the defense of all police investigatory work on a case." *Moore v. Illinois*, 408 U.S. 786, 795 (1972). While the United States readily acknowledges its continuing duty to satisfy particular discovery obligations—under *Brady*, *Giglio*, Rule 16, the Jencks Act, and so forth—the government has no affirmative obligation to disclose all information or items connected to the investigation of a case.

The lion's share of these broad requests lack any facts or even beliefs whatsoever to support that disclosure of the information sought would provide any relevant evidence, let alone evidence "material to preparing the defense." Fed. R. Crim. P. 16(a)(1)(E)(i). Accordingly, the Court need not mire itself in Defendants' 26-page request letter without specific guidance from Defendants as to the relevance of these items. The United States therefore opposes Defendants'

joint motion to the extent that most of their requests are "sending the United States on a fishing expedition" without any "demonstrat[ion]" that the requested files contain information in any way relevant to their defense. *Hykes*, 2016 WL 1730125, at *20.

In *Hykes*, the defendant was charged with being a felon in possession of a firearm after three Bernalillo County New Mexico Sheriff's Office ("BCSO") officers found a firearm in the back of his truck. The defendant moved to compel the United States to disclose impeachment material inside the personnel files of the three BCSO officers who would testify at the defendant's suppression hearing. *See id.* at *1. The defendant contended that he had "'a good faith basis'" to believe that the personnel files included useful impeachment information, and, because these officers would be the only witnesses against him at a suppression hearing and at trial, anything that goes to their credibility is exculpatory and admissible. *Id.* at *3. The defendant requested this information in advance of a hearing on his motion to suppress evidence, which he filed the same day as the motion to compel discovery. *See id.* at *1-2.

To support the good faith basis for the requested discovery, the defendant came forward with actual facts to support his contention that the personnel files included useful impeachment information. The Court pointed out specifically that "Hykes explained that, after only a simple Internet search, he found 'at least' two excessive force cases filed against Koppman, and another excessive force case against Koppman and Funes together." *Id.* at *4 (citation omitted). The Court later used the defendant's specific support for the request in concluding that the United States must search these officers' files for possible impeachment materials:

> Hykes is not sending the United States on a fishing expedition. Hykes demonstrates that the officers' personnel files may contain impeachment evidence. As support, Hykes points to the officers' involvement in several excessive-force lawsuits, discrepancies between the officers' story and eyewitnesses' stories, and evidence that the officers had a personal feud with Hykes.

10

*Id.* at \*20 (citation omitted). And rather than a broad request, the Court was also swayed to grant the motion for discovery as "Hykes also requested specific information within the personnel files." *Id.* That may be why when the Court granted in part the motion and ordered the United States to search the personnel files, "[t]he Court directed Hykes to send a letter to the United States with the case names [that he found on the internet] and 'as much information as you can so that he can trigger the officers' memory.'" *Hykes*, 2016 WL 1730125, at \*5 (citation omitted).

Viewed through the lens of the specificity of the requests in *Hykes*, and the support with which the defendant made those specific requests, *Hykes* counsels this Court to deny the Defendants overly broad and unsupported requests in their joint motion to compel discovery.

### C.  Internal Government Documents And Memoranda

Rule 16(a)(2) of the Federal Rules of Criminal Procedure exempts two categories of materials from the broad disclosure requirements of Rule 16: "reports, memoranda, or other internal government documents made by an attorney for the government or other government agent in connection with investigating or prosecuting the case," Fed. R. Crim. P. 16(a)(2); and statements of government witnesses. *Id.* As discussed in more detail below, these two exemptions do not override and are always subject to the government's constitutional obligation to turn over material evidence that is favorable to the accused, including exculpatory and impeachment evidence. *See United States v. Fort*, 472 F.3d 1106, 1110 (9th Cir. 2007) (clarifying, "nothing in this opinion should be interpreted to diminish or dilute the government's *Brady* obligations"); *Gov't of Virgin Islands v. Fahie*, 419 F.3d 249, 257 (3d Cir. 2005) (stressing, "the contours of Rule 16's exceptions should be interpreted to minimize conflict with the government's constitutional disclosure obligations under *Brady*").

The first exemption, for reports, memoranda, or other internal government documents "clearly recognizes the prosecution's need for protecting communications concerning legitimate trial tactics," *United States v. Koskerides*, 877 F.2d 1129, 1133-34 (2d Cir. 1989) (internal citations and quotation marks omitted), and it serves "to ensure that government attorneys' litigation preparations are protected from discovery." *United States v. Mann*, 61 F.3d 326, 331 (5th Cir. 1995). The provision, in other words, performs a function similar to that performed by the common law work product doctrine, and courts frequently commingle Rule 16(a)(2) and work product analyses when adjudicating discovery disputes. *See, e.g.*, *United States v. Armstrong*, 517 U.S. 456, 463 (1996) (noting, "under Rule 16(a)(2), [a defendant] may not examine Government work product in connection with his case"); *United States v. Fernandez*, 231 F.3d 1240, 1247 (9th Cir. 2000); *United States v. Furrow*, 100 F.Supp.2d 1170, 1175 (C.D. Cal. 2000); *cf. United States v. Noble*, 422 U.S. 225, 238 (1975) (describing as "vital" the role of the work product doctrine in "assuring the proper functioning of the criminal justice system"); *Hickman v. Taylor*, 329 U.S. 495, 510 (1947) (work product doctrine affords a qualified protection that entitles an attorney to withhold from discovery "written statements, private memoranda and personal recollections prepared or formed by ... counsel" in anticipation of litigation ). Some courts, however, have been careful to point out that the contours of Rule 16(a)(2) and the work product doctrine are not identical. *See Fort*, 472 F.3d at 1115-16 (stating, "Rule 16(a)(2)'s protection of investigative materials extends beyond the work product privilege as defined in the civil context" and noting that Rule 16(a)(2)'s drafters intended the Rule to be "related to the work product doctrine but not synonymous or coextensive with it"); *see also Mann*, 61 F.3d at 331; *cf. In re Grand Jury Subpoenas*, 318 F.3d 379, 383 (2d Cir. 2003); *United States v. Taylor*, 608 F.Supp.2d 1263, 1269 (D.N.M. 2009) (finding information "protected by

the deliberative process and work product privileges as well as Rule 16(a)(2)" (emphasis

added)). For example, whereas police reports are unlikely to be protected as work product in the

course of civil litigation, *see, e.g., Miller v. Pancucci*, 141 F.R.D. 292, 303 (C.D. Cal. 1992),

such reports may be covered by Rule 16(a)(2) in the criminal context. *See, e.g., United States v.*

*Sileven*, 985 F.2d 962, 966 (8th Cir. 1993) (per curiam).

To qualify for protection under the first exemption of Rule 16(a)(2), materials must have

been created by a government attorney or a government agent to support a federal prosecution of

the defendant, must be in the possession of the federal government, and must constitute an

internal, non-public document. *Fort*, 472 F.3d at 1120 n.15; *cf. United States v. Green*, 144

F.R.D. 631, 641 (W.D.N.Y. 1992) (holding government documents discoverable "unless they

have become the work product of the federal investigators"). The phrase "government agent"

need not designate a federal official and may include "non-federal personnel whose work

contributes to a federal criminal 'case.'" *Fort*, 472 F.3d at 1113. Some courts have held that

investigatory reports prepared by state and local law enforcement may be covered by Rule

16(a)(2) if they are used by federal prosecutors in a case that is a "direct outgrowth of

investigations by local authorities," regardless of whether those reports were compiled before or

after commencement of the federal role. *United States v. Cherry*, 876 F.Supp. 547, 551-52

(S.D.N.Y. 1995) (holding state investigatory files fell within Rule 16(a)(2) where state

investigations "covered the same conduct by the same defendants charged in the federal

indictment" and should therefore be considered part of the same "case"); *see also Fort*, 472 F.3d

at 1119-20 (holding "Rule 16(a)(2) extends to . . . San Francisco police reports created prior to

federal involvement but relinquished to federal prosecutors to support a unified prosecution").

Other courts have held, however, that Rule 16(a)(2) may be extended to state and local police

reports only if those reports were prepared after the investigation became a joint effort between local and federal authorities. *See, e.g., United States v. Jones*, 149 F.R.D. 139, 141 (N.D. Ohio 1993); *Green*, 144 F.R.D. at 641; *United States v. DeBacker*, 493 F.Supp. 1078, 1082 (W.D. Mich. 1980) (holding state police reports generated during an investigation "initiated by the state alone" were discoverable under Rule 16(a)(2)). Rule 16(a)(2) does not embrace government materials that were not prepared specifically in connection with the prosecution of the defendant's case. *See United States v. Gatto*, 729 F.Supp. 1478, 1481 (D.N.J. 1989) (holding Rule 16(a)(2) "excludes [from disclosure] reports prepared in connection with the investigation or prosecution of the case, not of other cases that may have come prior to it" (emphasis in original)).

Rule 16(a)(2)'s first category has been read to protect a wide variety of reports, memoranda, and internal government documents prepared in connection with a particular prosecution. For example, one court has held that Rule 16(a)(2) makes it unnecessary for the government to disclose internal FBI logs of items seized from a defendant. *See United States v. Amlani*, 111 F.3d 705, 713 (9th Cir. 1997) (adding, "Rule 16(a)(2) clarifies that a defendant has an interest in the actual evidence in the government's control, not the government's records of that evidence"). Case files and police reports from a government investigation of the defendant likewise have been held to fall under the Rule's protection, so long as their disclosure would not be constitutionally mandated. *See, e.g.*, *Sileven*, 985 F.2d at 966; *United States v. Dunca*n, 586 F.Supp. 1305, 1313 (W.D. Mich. 1984). Courts have held that documents created by the government in computing a defendant's tax liability or assessing the strengths of the prosecution's case are similarly within the scope of Rule 16(a)(2). *See United States v. Robinson*, 439 F.3d 777, 780 (8th Cir. 2006); *Mann*, 61 F.3d at 332- 33; *Koskerides*, 877 F.2d at 1133-34.

14

Some courts have held that Rule 16(a)(2) also protects from discovery any notes made by the government during pretrial witness interviews, provided those notes would not later be deemed witness "statements" under the Jencks Act and would not be subject to disclosure as *Brady* or *Giglio* material. *Compare, e.g.*, *United States v. Jordan*, 316 F.3d 1215, 1227 n.17 (11th Cir. 2003) (finding "the interview summaries made by the government agents were exempt from discovery" under Rule 16(a)(2)), with *United States v. Lujan*, 530 F.Supp.2d 1224, 1265 (D.N.M. 2008) (noting, "[a]n agent's rough interview notes may nevertheless be discoverable under Brady if the defendant shows that the notes are exculpatory and material").

The second sentence of Rule 16(a)(2) states: "Nor does this rule authorize the discovery or inspection of statements made by prospective government witnesses except as provided in 18 U.S.C. § 3500 [the Jencks Act]." Fed. R. Crim. P. 16(a)(2). Because the Jencks Act applies only to statements of testifying witnesses, the logical implication of this provision is that statements of non-testifying witnesses are not subject to disclosure under Rule 16. *See United States v. Edelin*, 128 F.Supp.2d 23, 35 (D.D.C. 2001); *cf. United States v. Nevels*, 490 F.3d 800, 803 (10th Cir. 2007) (noting the Jencks Act requires disclosure of witness statements "only after the witness has testified on direct examination at trial" (emphasis in original)).

 For example, the Defendants' request "[a]ll materials that were produced by the government, from 2009 to the present, related to any and all Trade Shows investigated by the government or attended by any agents, undercover agents, or informants, that relate to arts, crafts, or jewelry, which are Southwestern-style or otherwise in a style such that it could possibly have been confused by the purchaser as being Native American-style, i.e., in violation of 19 C.F.R. § 134.43 or 18 U.S.C. § 1159. Doc. 49-1 at 7. This request for a decade of material relating to every investigation conducted in this subject area is the quintessential fishing

expedition. The Defendants provide no evidence or contention that demonstrates that each and every one of these dozens or even hundreds of investigations contain evidence to which they'd be entitled under Rule 16 or the United States Constitution. *Compare Hykes*, 2016 WL 1730125, at *20 (requiring the United States to look through BCSD's files where "Hykes is not sending the United States on a fishing expedition. Hykes demonstrates that the officers' personnel files may contain impeachment evidence."). In accordance with this Court's decision in *Hykes*, therefore, the Government asks this Court to deny the Defendants' second specific discovery request.

### D.  Brady and Its Progeny

Admittedly, Rule 16(a)(2) offers only limited protection from discovery and does not affect the scope of the government's constitutional duties of disclosure, as noted above.  *See, e.g., Fort*, 472 F.3d at 1110. That said, however, the government need not disclose information that is neutral, irrelevant, or inculpatory. The constitutional obligation to disclose impeachment evidence reaches only information that is favorable to the defendant. *See, e.g., United States v. Johnson*, 581 F.3d 320, 331 (6th Cir. 2009).

Because *Brady* did not create a right of access to a prosecutor's file, the defendant must adequately demonstrate the materiality of requested material. *United States v. Guzman-Padilla*, 573 F.3d 865, 890 (9th Cir. 2009); *cf. United States v. Volpe*, 42 F.Supp.2d 204, 226 (E.D.N.Y. 1999) (assurance by government that it has no undisclosed evidence that would tend to exculpate defendant justifies denial of motion for inspection that does not make some particularized showing of materiality and usefulness).

"Simply suggesting," *United States v. Rodriguez-Rivera*, 473 F.3d 21, 26 n.1 (1st Cir. 2007), or "[m]ere speculation," *United States v. Parks*, 100 F.3d 1300, 1307 (7th Cir. 1996), by defense counsel does not trigger a duty to produce files relating to witnesses.  *See also United*

*States v. Morris*, 957 F.2d 1391, 1402-03 (7th Cir. 1992) (defense motion for disclosure of FBI

302s on general and unsupported assertion that *Brady* entitled them to have the reports properly

denied by trial court).

Here, Defendants' only explanation specific to this case is found in their joint motion. *See*

Doc. 49 at 1-2. There, Defendants' claim that the industry was rife with other violators of the

import laws. As a result, they claim they are entitled to evidence in the United States' possession

of other violators in the industry. Tenth Circuit Criminal Pattern Jury Instruction 1.19 prohibits

the jury from even considering such an argument. See Tenth Cir. Crim. Pattern Jury Instr. 1.19

("The fact that another person also may be guilty is no defense to a criminal charge."); *see also*

*United States v. Oberle*, 136 F.3d 1414, 1422-23 (10th Cir. 1998) (approving instruction

directing jury not to concern themselves with the guilt of anyone except the defendant over

objection that it directed jurors to ignore defendant's defense of mistaken identity.). In short,

evidence that others may have imported in violation of law is not exculpatory as to Defendants.

Accordingly, the United States should not be obligated to amass a list of all individuals and

entities that are in violation of the import laws.

To be sure, the Due Process Clause requires the government to disclose to a criminal

defendant any known information that is both favorable and material to the defense (hereinafter

"the *Brady* doctrine").  *Kyles*, 514 U.S. 419, 432 (1995); *Bagley*, 473 U.S. at 675-76; *Agurs*, 427

U.S. at 106-7; *Giglio*, 405 U.S. at 153-54; *Brady*, 373 U.S. at 87. Failing to make the required

disclosures may result in the reversal of any affected conviction. Generally, "favorable"

information is either exculpatory or impeaching of the government's witnesses. (Impeachment

information is commonly referred to as "*Giglio*" information.) "Material" information is

information of such significance that, had it been disclosed, there is a reasonable probability that

17

the result would have been different, *i.e.*, that confidence in a guilty verdict would be undermined. The government must produce all such information in its possession (even if it is unknown to the prosecutor himself) in time for the defendant to make effective use of it *at trial*. *See United States v. Smith*, 534 F.3d 1211, 1223 (10th Cir. 2008).

The government is aware of its continuing duty to assess and disclose such information. To the extent that the government is in possession of any *Brady*/*Giglio* information, such information will be provided to defendants in time for them to make effective use of the information at trial.

### E.  Jencks Requests

The Jencks Act and Rule 26.2 require disclosure of witness statements no later than the beginning of cross-examination of that witness.[2] Earlier production may be made voluntarily, but the Jencks Act was enacted, in part, "to clarify that the Government need not disclose such statements to the defense until after the Government witness has testified against the defendant on direct examination in open court." *United States v. Coppa*, 267 F.3d 132, 145 n.10 (2d Cir. 2001). *See also* S. Rep. No. 981, 85th Cong., 1st Sess. 4 (1957) ("[I]t is the specific intent of the bill to provide for the production of statements, reports, transcriptions or recordings, as described in the bill, after the Government witness has testified against the defendant on direct examination in open court, and to prevent disclosure before such witness has testified."). This timing rule was initiated "out of concern for witness intimidation, subornation of perjury, and other threats to the integrity of the trial process." *Tarantino*, 846 F.2d at 1414.

---

[2] Defense counsel Matthew Beck acknowledged as much before this very Court. *See United States v. DeLeon*, No. CR 15-4268 JB, 2017 WL 2271430, at *18 (D.N.M. Feb. 8, 2017) (with respect to Jecks disclosure, acknowledging the United States' "obligation is not to do so until trial. See Tr. at 18:21-19:18 (Beck).").

Case 1:18-cr-04176-JB   Document 62   Filed 06/05/19   Page 19 of 20

Unless limited or abrogated by Rule 26.2 or another provision of the Federal Rules of Criminal Procedure, however, courts are required to follow the timing requirements described in the Jencks Act. *See Tarantino*, 846 F.2d at 1414 (congressional determination as to timing "is not to be disregarded by the courts"); *United States v. Cerna*, 633 F. Supp. 2d 1053, 1056 (N.D. Cal. 2009) ("District courts in this circuit have no authority to override strict observance of the Jencks Act."). If the district court refuses to comply with these requirements, the government may file an interlocutory appeal under 18 U.S.C. § 3731, *see, e.g.*, *United States v. Mavrokordato*s, 933 F.2d 843, 846 (10th Cir. 1991) (§ 3731 jurisdiction based on discovery sanctions).

In this case, with the parties' agreement, the Court entered a date of disclosure of Jencks material on September 20, 2019. Doc. 42 at 2. Accordingly, this Court should deny Defendants' request for statements and handwritten notes that constitute Jencks material should the United States' call the author of those statements and/or notes.

IV.   **CONCLUSION**

The United States has already disclosed an enormous amount of material to Defendants in excess of its disclosure obligations. The United States will continue to faithfully discharge its disclosure duties. Defendants' joint motion is without merit, unnecessary, and should be denied.

Respectfully submitted,

JOHN C. ANDERSON
United States Attorney


/s/_____
KRISTOPHER N. HOUGHTON
SEAN P. SULLIVAN
Assistant U.S. Attorneys
P.O. Box 607
Albuquerque, New Mexico 87103
(505) 346-7274

19

<u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on the 5th day of June, 2019, I filed the foregoing pleading electronically through the CM/ECF system, which is designed to cause counsel of record for the defendant to be served by electronic means.

/s/_____
KRISTOPHER N. HOUGHTON
Assistant U.S. Attorney