IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

    Plaintiff,

v.     No. CR 18-4176 JB

STERLING ISLANDS, INC.,
AL-ZUNI GLOBAL JEWELRY, INC.,
JAWAD "JOE" KHALAF,
NADER KHALAF,
NASHAT "NASH" KHALAF,
ZAHER MOSTAFA, and
TAHA "TOM" SHAWAR,

    Defendants.

### AL-ZUNI GLOBAL JEWELRY, INC., NASHAT "NASH" KHALAF AND ZAHER MOSTAFA'S REPLY IN SUPPORT OF THEIR JOINT OPPOSED RULE 12(b) MOTION TO DISMISS COUNT III OF THE INDICTMENT AND/OR FOR A BILL OF PARTICULARS

### INTRODUCTION

The United States' Response to the Al-Zuni Global Defendants' Motion to Dismiss Count 3 reveals the frailty of this claim. The United States admits that these defendants did not aid or abet the actual importation. Doc. 60 at 2, n.3.[1] By the United States' own admission, it bases the entire prosecution of this claim on the sentence in 18 U.S.C. § 545 that makes it a crime to "receive[], conceal[], buy[], sell[], or in any manner facilitate[] the transportation,

---

[1] The fact that these defendants spent much of their motion arguing against such direct aiding and abetting accentuates the lack of clarity inherent in the Indictment as to Count 3. In their response, albeit unclear, the United States seems to be claiming that the Al-Zuni Defendants aided and abetted each other in Count 3, further speaking to the need for a bill of particulars, *infra*.

concealment, or sale of such merchandise after importation, knowing the same to have been imported or brought into the United States contrary to law." The United States ignores, however, the specific intent it is required to prove. To attempt to bolster this defective claim, the United States continues to try to paint a picture for the Court of a massive misrepresentation scheme. Doc. 60 at 3-4. In its decision denying Defendants' Motion to Dismiss the allegations based on 18 U.S.C. § 545, the Court's recitation of facts followed this illusion of ongoing and substantial misrepresentation. *See* Doc. 55 at 2-3. However, the discovery, including the recording of the supposed misrepresentation of a canteen, which is a key to the government's case, does not support the allegations on which the Court relied in reaching its decision; nor does it support Count 3. In fact, it shows quite the opposite of what the government has claimed it shows.

      Contrary to the implications that the jewelry at issue was being implicitly or explicitly sold as "Native American" by the Al-Zuni Global Defendants, the Al-Zuni Global Defendants properly identified imported items time and time again. At the 2013 Tucson Gem Show, Special Agent Stanford noted that "AL ZUNI was selling both imported and genuine Indian pieces and they were marked, as such. When asked, the attendant told SA Stanford which pieces were genuine." (Report #006 at p.4, Bates No. 00467, attached as Ex. D.)  Again, at the 2014 JOGS Gem and Mineral Show, the attendant at the Al-Zuni Global booth was candid and truthful with SA Sanford. In discussions with the employee, "Baker LNU (a salesperson at the booth) told SA Stanford that some of the jewelry in the booth was native made and some was non-native made. The non-native made jewelry is made in the Philippines," and, "[w]hen SA Stanford purchased the items he asked Baker LNU for the identity of the artist who made the items. Baker LNU told SA Stanford that the items were imported." (Report #009 at p.3, Bates No. 00726, attached as Ex. E.) Yet again, during the undercover buy in this matter, rather than misrepresent the origin of

jewelry as the Indictment and the United States allege, Mr. Mostafa goes out of his way to not only explain the jewelry's country of origin, but explain to the agents how they may distinguish Native American-made from overseas Southwestern-style jewelry. Transcript at p. 2 (Ex. F).[2] When SA Sanford asked Mr. Mostafa if some inlayed items were Zuni, Mr. Mostafa told him now, they were from overseas. Transcript at p.14. Mr. Mostafa continued to point out numerous overseas items. *Id.* Mr. Mostafa explained that the price would be much higher if the items were Zuni. *Id.* at 15. When SA Sanford baited Mr. Mostafa by telling him that items could pass as Zuni, Mr. Mostafa began to make additional exculpatory statement, that he "[has] to tell you," but was immediately cut off by SA Sanford, who promptly ended the conversation. *Id.* In other words, the conversation during the key transaction demonstrated honesty and not misrepresentation on the part of Al Zuni and Mr. Mostafa, contrary to the government's indictment.

All that the United States has factually alleged is that some canteens were misrepresented during that same undercover buy. Indictment ¶ 26. But this defies logic once the recording of the transaction is considered. The context of the purchase makes clear that Mr. Mostafa clearly identified imported versus non-imported items.[3] Why would he do that for every piece of jewelry except the for one canteen as to which Agent Stanford asserts that he misrepresented it, even though the misrepresentation is not apparent from the recording that Agent Sanford was making? What's equally conspicuous is that this report in discovery is unique; it lacks any invoice associated with this key purchase. Further, there's no video or photos to show which items were

---

[2] The actual audio will be lodged with the Court.
[3] The fact that SA Sanford was moving various items in and out of the purchase, further muddied the waters of what was being identified when. *See* Transcript at p. 13 ("…we have to cull some stuff out here").

or were not included in this purchase in which SA Stanford cut off Mr. Mostafa when it was clear that Mr. Mostafa was in the process of making an additional statements that would have further exculpated him.

The three Al-Zuni Global Defendants face several serious felony charges based on this one unsubstantiated and, at best, highly questionable transaction. What the recording of this key transaction actually shows is a business, Al-Zuni Global, whose name suggests it sells overseas jewelry), and whose practice is to inform its customers which items are imported and which are made by Native Americans, as Mr. Mostafa did in the transactions with agents, as the recordings reveal. Even if, *arguendo*[4], a single item was somehow mistakenly misrepresented, this does not and cannot satisfy the specific intent requirement and create liability for violating the importation statute, 18 U.S.C. § 545, as to the Al-Zuni Global Defendants.

## **ARGUMENT**

I. **THE COURT MAY, AND SHOULD, RELY ON FACTS THAT THE GOVERNMENT DOES NOT DISPUTE IN RULING ON THIS 12(b) MOTION TO DISMISS.**

Plaintiff United States of America acknowledges that, when faced with a Rule 12(b) motion to dismiss such as this, the Court may rule on the motion by reference to facts outside the indictment, so long as the government doesn't object. *See* Response to MTD Count 1 [Doc. 59], at 5-6 (quoting *United States v. Olivas-Perea*, 297 F. Supp. 3d 1191, 1203 (D.N.M. 2017) (Browning, J.)). And the government points out here that "Defendants ask the Court to consider evidence not alleged in the indictment." Doc. 60 at 3. Defendants, of course, agree with both of these points. But the government never objects to any of the facts included in the motion to dismiss; nor does it contend that any of the factual assertions are incorrect. Because of this lack

---

[4] Again, Defendants vehemently deny the veracity of this claim.

4

of either an explicit objection or contradiction, the Court may and should consider these undisputed, relevant parts of the United States' own investigation in deciding this motion to dismiss.

## II.     THE INDICTMENT LACKS FACTUAL ALLEGATIONS OF MENS REA.

The United States, in its Response, has narrowed Count 3 to 18 U.S.C. § 545's criminal liability for one who "receives, conceals, buys, sells, or in any manner facilitates the transportation, concealment, or sale of such merchandise after importation, ***knowing the same to have been imported or brought into the United States contrary to law***." (emphasis added). Significantly, when citing to this section, the United States ended its quotation before the italicized scienter requirement. Doc. 60 at 2 ("…or sale of such merchandise after importation[.]'"). However, as the United States then acknowledged, the alleged aider must know the imported merchandise was imported "contrary to law." This *mens rea* requirement has not been alleged, other than in the conclusory recitation of the statute. *See generally* Indictment; *see id.* ¶ 33. No factual support appears in the Indictment, which is fatal.

This Court thoroughly explored the *mens rea* requirement of 18 U.S.C. § 545 in its Memorandum Opinion and Order, explaining: "The Supreme Court has long recognized a 'presumption' grounded in our common law tradition that a *mens rea* requirement attaches to 'each of the statutory elements that criminalize otherwise innocent conduct.'" *United States v. Sterling Islands, Inc.*, No. CR 18-4176 JB, Memorandum Opinion and Order [Doc. 55] at 18 (quoting *United States v. Games-Perez*, 695 F.3d 1104, 1119 (10th Cir. 2012); *United States v. X-Citement Video, Inc.*, 513 U.S. 64, 72 (1994); citing *Staples v. United States*, 511 U.S. 600, 610-12 (1994)) (additional internal citations omitted).

Criminal conviction for the facilitation of the crime of another requires the government to

prove the scienter of every part of the crime. *See United States v. Rufai*, 732 F.3d 1175, 1190 (10th Cir. 2013); *Wiseman v. United States*, No. 96-CR-00072-JAP, Memorandum Opinion and Order, at 11, 2018 WL 3621022, *6 (D.N.M. July 27, 2018) (Parker, J.). Here, the government must prove, therefore, that the Al-Zuni Global Defendants *knew* both that the jewelry was imported *and* that it was imported (allegedly) contrary to law. *See United States v. Geronimo*, 330 F.3d 67, 72-73 (5th Cir. 2003) (must know merchandise is imported); *Liparota v. United States,* 471 U.S. 419, 421 (1985) (must know illegal nature). Receiving merchandise that one does not know is "contrary to law" is not a crime. *See United States v. Butler*, 494 F.2d 1246, 1253 (10th Cir. 1974) (crime of receiving stolen government property requires knowledge that the property was stolen); *United States v. Smith,* 461 F.2d 246, 247 (10th Cir. 1972) (conviction for receiving and concealing stolen vehicle requires knowledge the vehicle was stolen); *United States v. Koran,* 453 F.2d 144, 146 (10th Cir. 1972) ("It is, of course, essential that a defendant charged with possession of stolen goods must be shown to have had guilty knowledge.").

The import of a specific intent requirement is highlighted by the differences in the parts of the statute. A violation of the first section of § 545 - smuggling with intent to defraud the United States - is "unlawful and evil per se," but a violation of the second part (with which the government charges Defendants) – bringing in items "contrary to law" – is not evil in and of itself, but criminalized due to a failure to comply with other law(s). *United States v. Claybourn*, 180 F. Supp. 448, 451 (S.D. Cal. 1960). *See also United States v. Huff*, 273 F.2d 56, 59 (5th Cir. 1959) ("There is a vast difference between smuggling, clandestinely introducing, using false or forged documents, etc., on the one hand, and importing, bringing in or receiving, etc., merchandise, since the first is manifestly unlawful and evil per se, while importing, bringing in, receiving, etc., after importation, is not."). This is why the law requires that a defendant have a

specific intent to violate the second section. *Claybourn*, 180 F.Supp at 451.

The Indictment is devoid of any factual allegations to support its conclusory statement that the Al-Zuni Global Defendants aided the alleged illegal importation "knowing that said merchandise had been brought into the United States contrary to law." Indictment ¶ 33. There is not a single fact in the Indictment or the discovery that supports the allegation that Al-Zuni Global or its agents knew the alleged "contrary to law" nature of the importation. While the government alleges that Al-Zuni Global displayed a few items made in the Philippines, Indictment ¶ 24, that allegation in no way implies that Al-Zuni Global knew the importation was "contrary to law." In fact, it argues against it, as the items were openly being displayed and consistently identified as imported, not "concealed" as to imply a guilty frame of mind.

The fact that Defendants have put forth legal arguments that the importation is not "contrary to law" in the first place (though rejected by this Court in its Memorandum Opinion), further weakens any allegations that the alleged aiders had the required *mens rea* to violate the law. If there is a true question as to the legality of the underlying act, it is impossible to "know" it is contrary to law. *See United States v. Games-Perez*, 667 F.3d 1136 (10th Cir. 2012) (Gorsuch, J., concurring) (explaining that mistakes of law or fact "can preclude a criminal conviction so long as the mistake negates the *mens rea* required for the offense in question") (citing 1 Wayne LaFave, *Substantive Criminal Law* § 5.6(a), at 394–95 (2d ed. 2003)). Nothing in the Al-Zuni Global Defendants' behavior support **knowledge** of the alleged illegal nature of the merchandise it was openly selling. *Compare United States v. Minneci*, 142 F.2d 428, 429 (2d Cir. 1944)("From what we have said it is plain that both of the accused had 'received' the four 'buttons' of gold, and were **surreptitiously** engaged in 'transporting' them.")(emphasis added).

Further, the Code of Federal Regulations and United States agencies' interpretations of

those regulations do not support that the canteens, or any of the jewelry or arts and crafts on which the government relies in this case, required the jewelry, arts or crafts in this case to be indelibly marked with the country of origin. Section 134.43 of Title 19 of the Code of Federal Regulations requires indelible marking for "traditional Native American-style" arts and crafts only. Importantly, when Customs enacted this regulation, it made the deliberate choice to require that the Native American-style arts and crafts be "traditional." Country of Origin Marking of Native American-style Arts and Crafts, Final Rule, 55 FR 38316-01 (Sept. 19, 1990). [5] The Indian Arts and Crafts Board's regulations are not precise about what may be considered traditional Native American-style, but they provide specific examples of traditional Native American designs and motifs. See, e.g., 25 C.F.R. §§ 309.10, 309.11. These regulations certainly do not support that a canteen or canteens are "traditional Native American-style" arts and crafts. 19 C.F.R. § 134.43.

While this Court concluded that regulations constitute "law" for § 545's purposes, it also recognized the circuit split on that question. See Doc. 55 at 26. Since the importation here would not be considered a criminal act in other circuits, even if it could be considered a criminal here, this split establishes that reasonable minds differ. Thus, the government must make some

---

[5] This Final Rule comment by Customs is telling. Customs denied the Navajo Nation's request in relation to the proposed rule that Customs develop guidelines to help identify what jewelry and arts and crafts fall into the definition of "traditional Native American-style." Customs' position was that, "only through experience" can the best methods for identification of these items be determined. Final Rule, 55 FR 38316-01. Instead, it's clear that the lack of any definition and guidelines regarding what constitutes traditional Native American-style jewelry, arts and crafts under 19 C.F.R. § 134.43 has led to Customs' decades-long disregard of § 134.43's requirements. Thus, Customs, and the government, consistently have failed to adhere to 19 U.S.C. § 1304's requirements that any importer who imports items without the proper country-of-origin markings shall be notified and given an opportunity to cure. And Customs, USFWS, and the government failed to comply with § 1304(g)'s requirement that the government *not deliver* items found to be marked improperly.

allegation that the Al-Zuni Global Defendants had the requisite *mens rea* of facilitating a crime. The government has not provided a single fact – such as surreptitious concealment, discussions about illegality, or even a single discussion about country-of-origin marking requirements – to suggest there was any ***knowledge*** of illegality on the part of the Al-Zuni Global Defendants (or any of the Defendants for that matter). This puts the allegation against these defendants factually on par with any of the major retailers who sell imported Southwestern-style jewelry without permanent marking, and even on a par with individual retail purchasers – who happen to buy such non-indelibly marked jewelry. Without any allegation that the Al-Zuni Global Defendants had the requisite *mens rea* to violate § 545, the Al-Zuni Global Defendants certainly could not have the requisite *mens rea* to aid and abet a violation of § 545 – regardless what theory the government may put forth for how that violation of § 545 took place. Thus, the Court properly should dismiss, under Rule 12(b), Count 3.

### III. IN THE ALTERNATIVE, THE GOVERNMENT'S INCONSISTENCIES IN ITS RESPONSE DEMANDS THE GOVERNMENT PROVIDE A PLAIN, CONCISE BILL OF PARTICULARS.

The lack of clarity as to the actual allegation(s) in Count 3 is highlighted by the government's inconsistencies in its Response to this motion. The government, in its Indictment, alleged the Al-Zuni Global Defendants were culpable pursuant to 18 U.S.C. § 2, but in the face of a motion contesting that allegation,[6] the United States abandoned that theory. The government now states that they aren't alleging the Al-Zuni Defendants aided and abetted the actual importation. *See* Doc. 60 at 2 n.3.

Yet the government later contends that "[t]here is also evidence that Zaher Mostafa, the

---

[6] The fact that the Al-Zuni Defendants spent almost the entirety of their Motion arguing against a direct "aiding and abetting" theory is a direct result of this lack of clarity.

vice president of Al-Zuni Global, ordered reproductions of Native American arts and crafts from Sterling Islands without indelible markings. Mostafa then sold some of this imported merchandise to customers while representing the merchandise as Native American made." *Id.* at 4. But that's not what the Indictment alleges -- and that contention finds no support in the discovery. Mr. Mostafa sent Defendant Nader Khalaf a bag of three pewter canteens that he received from a non-Native American customer from Oregon. The outside of the bag states: "Nader Can uncle Joe make these *silver* instead 20 each Zaher." Bates No. 01470, Ex. G. There is nothing in the discovery that supports that Mr. Mostafa "ordered reproductions . . . *without indelible markings*." Doc. 60 at 4.

The fact that the government needed to provide explanation that it does not allege that the Al-Zuni Global Defendants aided and abetted the importation, and then reverses course when discussing the bill of particulars to allege -- without any support -- the opposite: that Mr. Mostafa did aid in the importation contrary to law, leaves the actual allegations as clear as mud. That inconsistency in the government's contentions and representations about what is its theory in Count 3 against the Al-Zuni Global Defendants is precisely why the Court should require a bill of particulars in this case.

The United States' entire argument supporting the sufficiency of the charge rests on its argument that it included the statutory language in its indictment. Doc. 60 at 3. But nowhere in its recitation of the statutory language, or in the overt acts or means and manners allegations, does the Indictment "inform" the Al-Zuni Global Defendants "of the charges against [them] with sufficient precision to allow [them] to prepare [their] defense." *United States v. Dunn*, 841 F.2d 1026, 1029 (10th Cir. 1988).

If the government isn't pursuing the theory in Count 3 that the Al-Zuni Global

Defendants aided and abetted the importation contrary to law, a simple bill of particulars can inform the Defendants of that theory. If, instead, the government contends that Mr. Mostafa (and the Al-Zuni Global Defendants) did, in fact, aid and abet the importation contrary to law, as the government contends in page 4 of its Response, then a simple bill of particulars can inform the Defendants of that theory. As the Tenth Circuit holds, that's the purpose of a bill of particulars. The government's inconsistent and contrary position in their response supports that the Court should order them to provide that bill of particulars.

As discussed in the Al-Zuni Global Defendants' Motion, the Tenth Circuit held that, while a defendant is not entitled "to notice of all of the evidence the government intends to produce," a defendant is entitled to "the theory of the government's case." *United States v. Ivy*, 83 F.3d 1266, 1281 (10th Cir. 1996). The foregoing discussions and pleadings on this count make it clear that, if the government has a theory how the Al-Zuni Global Defendants violated 18 U.S.C. § 545 or 18 U.S.C. § 2, as Count 3 alleges, then they haven't informed the Al-Zuni Defendants of that theory. Despite the "thousands of pages in discovery from the United States," Doc. 60 at 6, neither the Indictment, the discovery, nor the government has provided to the Al-Zuni Defendants a "plain, concise, and definite written statement of the essential facts constituting the offense charged." Fed. R. Crim. P. 7(c).  Rule 7(c) entitles the Al-Zuni Global Defendants to this plain, concise, and definite statement of the essential facts as they prepare to defend these serious felony charges at trial.

## **CONCLUSION**

The Indictment fails to sufficiently allege against the Al-Zuni Global Defendants the factual basis of a violation of 18 U.S.C. § 545. The Court properly should dismiss, under Rule 12(b), Count 3, or in the alternative, order the government to provide a plain, concise, and

definite bill of particulars to the Al-Zuni Global Defendants.

        Respectfully submitted,

        FREEDMAN, BOYD, HOLLANDER, GOLDBERG,
        URIAS & WARD, P.A.

        By    */s/ Nancy Hollander*
                John Boyd
                Nancy Hollander
        P.O. Box 25326
        Albuquerque, New Mexico 87125-0326
        Telephone: 505.842.9960
        Facsimile: 505.842.0761
        Email: jwb@fbdlaw.com
                   nh@fbdlaw.com

*Attorneys for Defendants Nashat Khalaf and Al-Zuni Global Jewelry, Inc.*

RODEY, DICKASON, SLOAN, AKIN & ROBB, P.A.

By    */s/ Matthew M. Beck*
       Matthew M. Beck
P.O. Box 1888
Albuquerque, New Mexico  87103
Telephone: (505) 765-5900
Facsimile:  (505) 768-7395
Email: mbeck@rodey.com

*Attorneys for Defendant Zaher Mostafa*

CERTIFICATE OF SERVICE

    I hereby certify that on June 13, 2019, I filed the foregoing pleading electronically through the CM/ECF system, which caused all parties or counsel to be served by electronic means, as more fully reflected on the Notice of Electronic Filing.

RODEY, DICKASON, SLOAN, AKIN & ROBB, P.A.

By    */s/ Matthew M. Beck*
       Matthew M. Beck